**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARTEC EUROPE S.À R.L.,<br><br>           Plaintiff,<br><br>    v.<br><br>SHENZHEN CREALITY 3D<br>TECHNOLOGY CO., LTD., AND<br>KICKSTARTER PBC,<br><br>          Defendants. | **Civil Case No. _____**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Artec Europe S.à r.l. (hereinafter, "Artec" or "Plaintiff") alleges as follows against Defendants Shenzhen Creality 3D Technology Co., Ltd. ("Creality") and Kickstarter PBC ("Kickstarter") (together, "Defendants").

## I.      NATURE OF ACTION

1.      This is an action for copyright infringement under the Berne Convention for the Protection of Literary and Artistic Work ("The Berne Convention") and the copyright laws of the United States, title 17 of the United States Code, for patent infringement under the patent laws of the United States, title 35 of the United States Code, and for such other preliminary and continuing relief as the Court deems just and proper.

## II.      THE PARTIES

2.      Plaintiff Artec is a business entity organized under the laws of Luxembourg and headquartered at 20 rue des Peupliers, L-2328, Luxembourg.  Artec is a global leader in 3D scanning technologies that develops, manufactures, and markets award-winning, market-leading, and game-changing innovative 3D scanners and 3D software, including the Artec Leo and Artec Eva 3D Scanners and the Artec Studio 3D software suite. Artec owns U.S. Patent 7,768,656 (the

'656 Patent) relating to a system and method for scanning, measurement, and capture of objects in three dimensions, which issued on August 3, 2010.

3.      On information and belief, Defendant Creality is a 3D scanning and printing company based in Shenzhen, China with its headquarters located at 18F, JinXiuHongDu Building, Meilong Boulevard, Longhua Dist., Shenzhen, China 518131.  Creality manufactures the CR-Scan 01 Portable 3D Scanner ("CR-Scan 01 Scanner") and accompanying CR Studio software suite. On information and belief, Creality markets, offers for sale, and sells its products throughout the United States.

4.      On information and belief, Defendant Kickstarter is a Delaware corporation headquartered in New York, at 58 Kent Street, Brooklyn, NY 11222.

5.       On information and belief, Creality and Kickstarter are currently collaborating on a campaign to market, sell, and distribute a new 3D scanner, the "CR-Scan Lizard" (the "Lizard") and its operating software, and to share the revenues from those sales between them.

6.      As depicted on Kickstarter's website, the Lizard scanner relies on Creality's CR Studio software to operate, as does Creality's existing 3D scanner, the CR-Scan 01 Scanner. *See* https://www.kickstarter.com/projects/3dprintmill/creality-cr-scan-lizard-capturing-fine-details-of-view.



### III.   JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental and pendent jurisdiction over any related state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Kickstarter has a regular and established place of business in this District and a principal place of business in this District, and because Defendants have transacted business in this District and have committed acts of infringement in this District, entitling Plaintiffs to relief in this District.  Venue is proper against Creality under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) pursuant to the alien-venue rule.

9. This Court has general jurisdiction over Kickstarter because the company is headquartered in Brooklyn, New York, and engages in substantial, systematic and continuous contacts with New York.

10. This Court has specific personal jurisdiction over Kickstarter because its principal place of business is located in this District and by virtue of its transacting, doing business and soliciting business in this District—including by way of its website, Kickstarter.com—and because a substantial part of the relevant events including alleged acts of infringement were directed from this District.

11. This Court has specific personal jurisdiction over Kickstarter and Creality because Defendants have collaborated and transacted business together in this District and have marketed, offered for sale, sold, and/or distributed accused infringing products in and to the forum state, including through their joint marketing, sales, and distribution campaign on Kickstarter's website https://www.kickstarter.com/projects/3dprintmill/creality-cr-scan-lizard-capturing-fine-details-of-view.

12. Moreover, Defendants are planning to distribute imminently their infringing scanners and software to over 9400 Kickstarter account holders who have committed to purchase the new Lizard scanner, which relies on CR Studio software to operate, and to distribute among Defendants the funds collected by Kickstarter from those account-holders for those infringing products. On information and belief, at least some of these account-holders are from New York, creating an additional basis of jurisdiction in this forum.

13. This Court has personal jurisdiction over Creality because it has distributed the accused product to the forum state through established distribution channels, including Walmart, Microcenter, and other retailers present in New York, and online-only vendors, like Newegg.com.

Creality could therefore reasonably expect that its product would be purchased by New York residents. Moreover, at least one Creality scanner infringing Artec's patent was sold to a disinterested resident in New York.

14.     This Court also has jurisdiction over Creality because on information and belief, Creality has distributed copies of its Creality Studio software to New York residents directly from its own website (www.creality.com/download).  Creality's website is interactive and includes links to purchase devices and download supporting software.

15.     On information and belief, a significant portion of Creality's U.S. sales of the accused products were made and will be made to residents in New York.  Thus, should this Court be inclined to find that there are insufficient bases for jurisdiction in this District, Artec requests jurisdictional discovery into the sales of Creality scanners and the distribution of Creality software in New York.

16.     For all these reasons, exercising personal jurisdiction comports with traditional notions of fair play and substantial justice because Defendant Kickstarter resides in this District, Defendants have transacted business in this District and have engaged in infringing activities in this District, and they could also reasonably anticipate that their products would be sold to citizens of New York.  Moreover, Plaintiff has an interest in preventing infringement in one of its markets, and the state of New York has an interest in enforcing its laws and preventing infringement occurring within its boundaries.

## IV.     FACTUAL BACKGROUND

17.     Artec incorporates all allegations above, as if fully restated herein.

18.     Artec is a global leader in 3D scanning technologies.

19.     Artec develops, manufactures, and markets award-winning, market-leading, and game-changing innovative 3D scanners and 3D software like the Artec Leo 3D Scanner, the Artec Eva 3D Scanner, and the Artec Studio 3D software suite.

20.     Artec owns U.S. Patent 7,768,656 (the '656 Patent) relating to a system and method to scan, measure, and capture the shape of objects in three dimensions.

21.     Artec has acquired patents, copyrights, and other intellectual property in the United States, Asia (including China), the EU, and worldwide.  Artec's intellectual property is one of its most valuable assets.

22.     Artec owns and sells software known as the Artec Studio suite (the "Artec Software" or the "Artec Studio Software"). Artec's Artec Studio Software is used in conjunction with Artec's 3D scanners to render a 3D image from the raw data received from the scanners. Artec's software allows the user to explore and manipulate the 3D image and communicate it in a readable form to 3D printers and other devices.  The Artec Studio software has been called "the secret sauce that takes 3D scanning to the next level."

23.     The Artec Software contains material wholly original to Artec and is copyrightable subject matter under the laws of Luxembourg and the United States. Artec owns the copyright in the Artec Studio Software in Luxembourg and throughout the world.

24.     The Artec Studio Software was first released in 2010.

**A.     Creality's CR Studio Software infringes Artec's copyright.**

25.     Creality's CR Studio software—which Defendants provide and which is necessary for Defendants' scanners to operate—directly infringes Artec's copyright in its Artec Studio software.

26. On information and belief, Creality did not independently develop CR Studio, the 3D software that is used with Creality's current scanner product (the CR-Scan 01 Portable 3D Scanner) and the soon-to-be-released Lizard.

27. Creality had access to the Artec Software, which is distributed worldwide.

28. Creality improperly created CR Studio software by copying (and making minor modifications to) the Artec Software.

29. On information and belief, Creality gained access to the Artec Studio software and source code through a company called Shenzhen Jimuyida Technology Co., Ltd. ("Jimuyida"). Several former Artec employees (including Andrey Klimov, Alexandr Lomakin, and Anna Zevelyov) left Artec and improperly copied and misappropriated, among others, Artec's Artec Studio software. Thereafter, Artec was involved in litigation over the misappropriation of its intellectual property, and the case ultimately settled, with Artec retaining exclusive rights to its software and copyrights. On information and belief, former Artec employees including Andrey Klimov joined Jimuyida, who copied Artec's Studio Software and distributed it under the "Magic Wand" name.

30. On information and belief, Creality also accessed and copied Artec Studio directly, which is distributed worldwide.

31. Creality's CR Studio software is copied from and substantially similar to Artec Studio software. *See* Declaration of Gleb Gusev, attached hereto as Exhibit A, and incorporated by reference herein.

32. On information and belief, important parts of CR Studio copied from the Artec Studio software include software architecture and algorithms used to render a 3D image of a scanned object from the raw data received from the scanner using structured light.

33.     On information and belief, CR Studio copied original portions of the Artec Software. The same, specific, unique and irregular behavior can be observed in both the Artec Studio program and in the CR Studio program caused by an artifact in the code—creating an inference that such code was copied by CR Studio.

34.     On information and belief, Creality's CR Studio software code is substantially similar to Artec Studio software code, infringing Artec's copyright. In the alternative, CR Studio software code is a derivative work of Artec Studio, infringing Artec's copyright.

### B.     CR-Scan 01 Scanner infringes Artec's '656 Patent.

35.     Creality's CR-Scan 01 Portable Scanner (and CR Studio software, on which it depends to operate) infringes Artec's '656 patent because it practices Artec's patented system and method to scan, measure, and create a three-dimensional digital representation of the shapes of material objects.

36.     Creality's CR-Scan 01 Portable Scanner includes a light projector that projects a structured light pattern onto the object being scanned, a sensor that captures an image of the structured light pattern projected onto the object, and a computing device that uses a triangulation algorithm to determine measurements between points in the slide pattern and the image.

37.     The algorithm uses at least two groups of coded elements in the slide pattern which are arranged along virtual lines.

### C.     Artec contacts Kickstarter to halt Creality Lizard Campaign.

38.     On information and belief, Creality and Kickstarter began collaborating on a campaign to market, sell, and distribute the CR-Scan Lizard and its operating software, and to share the revenues from those sales between them.

39.     On or around March 2022,  Creality and Kickstarter launched a campaign and began promoting and offering for sale the CR-Scan Lizard on Kickstarter's website and seeking customers, called "backers," who would commit to purchasing the product (or supporting the campaign or project) if the campaign met a targeted goal or level of sales.

40.     At the time of this filing, Creality and Kickstarter have raised over $4,000,000 in their campaign from over 9400 backers who will each receive a Lizard scanner that runs on CR Studio software.

41.     On or about March 11, 2022, Artec emailed and messengered a cease-and-desist letter to Kickstarter notifying it about the above information and requesting that Kickstarter and Creality immediately cease and desist from marketing and selling the Lizard and CR Studio software on Kickstarter's website, that they halt the Creality CR-Scan Lizard campaign, and that they not collect or distribute any funds pledged or committed during the campaign, pending the resolution of the issues raised in the letter.  Artec explained in its letter that if Defendants proceeded with the campaign, Defendants' actions would result in the marketing, sale, and distribution of over 9100 scanners and the CR Studio infringing software that the scanners use to operate, damaging Artec and causing Artec irreparable harm.

42.     On information and belief, consistent with Kickstarter's policy, Kickstarter notified Creality about Artec's letter and notification and provided Creality a copy.  On information and belief, Defendants have knowledge about the matters alleged in this complaint.

43.     Defendants did not respond to Artec's letter or request any further information. Even after receiving Artec's letter and knowing the facts relating to infringement, Defendants proceeded with the campaign.  On information and belief, Defendants have arranged to sell the Lizard, together with infringing CR Studio software that the scanners need to operate, to over 9400

backers, and they are about to collect over $4,000,000 in revenue for these infringing sales, much of which they intend to transfer imminently to Creality in China.



**CLAIMS FOR RELIEF**

**V.    COUNT ONE:  COPYRIGHT INFRINGEMENT OF SOFTWARE**

**(Against Defendant Creality)**

44.    Plaintiff incorporates all allegations above, as if fully restated herein.

45.     Artec owns and sells the Artec Studio Software. The Artec Studio Software is used in conjunction with a 3D scanner to render a 3D image from the raw data received from the scanner. It further allows the user to explore and manipulate the 3D image, and communicate it in a readable form to 3D printers and other devices.

46.     The Artec Software contains material wholly original to Artec and is copyrightable subject matter under the laws of Luxembourg and the United States.  Artec owns the copyright in the Artec Studio Software.

47.     The Artec Software was first released in 2010.

48.     Under The Berne Convention for the Protection of Literary and Artistic Work, which has been adopted by the United States of America, Artec, as a Luxembourg entity, has the right to enforce its intellectual property rights, namely, its copyrights in the United States without the formality of registration of the software with the United States Copyright Office.

49.     Under the Berne Convention's national treatment principle, set forth in Article 5, a foreign copyright owner is provided in the United States Courts the same protection as a citizen owner, but without the formality of registration with the United States Copyright Office.

50.     On information and belief, beginning on or about 2018, Creality obtained a copy of the Artec Software and/or source code through Jimuyida (aka Magic Wand) and copied Artec's copyrighted material without Artec's permission or knowledge.

51.     On information and belief, Creality's CR Studio software contains material that directly copies protectable portions of Artec's copyrighted work. *See* Ex. A, Declaration of Gleb Gusev.

52.     Creality's software performs the same function—namely, it renders a digital representation of the shape of an object in 3 dimensions and allows the user to manipulate the shape of the object. This is not concerning.

53.     Creality's software, however, accomplishes these tasks in the same ways. First, Creality CR Studio renders a 3D image from scanner data using the specific methods and techniques described in Artec's patent by rendering a 3D image of a scanned object from the raw data received from the scanner using structured light.

54.     Second, the software not only allows the user to manipulate the digital representation of the object in a similar way—it has a near identical toolset displayed through a graphical user interface that is highly similar and, perhaps more importantly, operates in a near-identical manner.

55.     This goes beyond mere visual similarity. Evidence suggests that Creality directly copied protectable portions of the Artec Software source code.

56.     For example, an anomalous artifact in the Artec Studio software also appears in CR-Studio software that causes the user to observe the same specific, unique, counterintuitive behaviour in both programs. When a user "drags" an object by performing a circular motion with the mouse, it shifts the angle from which the object is viewed. When one returns the mouse to the original position, the angle likewise returns to its original position. This is normal and intuitive behavior. Yet, when one repeatedly performs this circular motion (and returns the cursor to the same position), it not only shifts the user's angle of view but rotates the *entire x, y, and z axes themselves*—effectively turning the object (and the vector space within which it exists) upside down. This counterintuitive and arguably dysfunctional result in Artec Studio

also appears in CR-Studio, as can be viewed in Artec Studio in the following movie: https://tinyurl.com/y88pr5ra and in CR Studio: https://tinyurl.com/y75j836u

57. On information and belief, Creality's CR Studio contains material that is substantially similar to the Artec Software so as to constitute copyright infringement. On information and belief, this includes, copying the Artec Software code's main purpose, architecture/structure, sequence in analyzing data received from the scanner, and the modules, algorithms and data structures used to render and manipulate a 3D image. *See* Ex. A, Declaration of Gleb Gusev.

58. From left to right in CR Studio, the menu items read: Home; Fit to View; Grid on/off; Light on/off; Representation Mode (Point / Wireframe / Surface / Surface with edge) – (corresponds to *Rendering mode* in AS); Texture; New buttons. In Artec Studio, the menu, from left to right has: Home; Fit to View; Grid on/off; Lighting on/off; Texture and Color; Rendering mode: (Solid / Wireframe / Points, etc.); Shading and Back surface culling mode.

59. Features and tools—but also the objects (data types)—in CR Studio are assigned the same arbitrary names as in Artec Studio: "Scan# -" for unprocessed data captured from scanner and "Fusion_#" for processed meshes.

60. On information and belief, Creality has created derivative works based on the Artec Studio Software for its own profit and advantage, without Artec's permission.

61. Evidence suggests that Creality gained access to the Artec Studio source code through a company called Shenzhen Jimuyida Technology Co., Ltd. ("Jimuyida"). Several former Artec employees (Andrey Klimov, Alexandr Lomakin, and Anna Zevelyov) left Artec and improperly copied and misappropriated Artec's Artec Studio software. Thereafter, Artec was involved in litigation over the misappropriation of its intellectual property, and the case ultimately

settled, with Artec retaining exclusive rights to its software and copyrights. Andrey Klimov joined Jimuyida, who copied Artec's Studio Software and distributed it under the "Magic Wand" name.

62.     Creality Studio's software installation contains numerous artifacts suggesting that it obtained Artec's source code from Jimuyida, who distributed it under the "Magic Wand" name. Over 90% of the files and libraries in the CR Studio installation folder are identical to the Magic Wand software installation.

63.     For example, the Obj file exported from CR Studio has the header: "Exported by WandStudioPro"

64. The folder, "CR Studio/Config" contains the file named "WandStudio" after installation.



65. Folders "rvePlugins" are the same in CR Studio and "Magic Wand" software.



66.     Creality's CR Studio software—which Creality provides to all its customers and is necessary for the operation of its scanners—infringes Artec's copyright in the Artec Studio Software.

67.     Creality has distributed—and continues to distribute—copies of the infringing software on its website to customers all over the world, including New York.

68.     Each copy of CR Studio software that Creality distributes to its customers—be it through the sale of a new scanner or to a pre-existing customer—is a separate violation of Artec's copyrights.

69.     As a result, Creality's actions constitute copyright infringement in that Creality has copied and displayed a work substantially similar to Artec's copyrighted work and/or created a work derivative thereof.

## VI.     COUNT TWO: CONTRIBUTORY COPYRIGHT INFRINGEMENT

### (Against Defendant Kickstarter)

57.     Plaintiff incorporates all allegations above, as if fully restated herein.

58.     Defendant Creality has committed acts of direct copyright infringement relating to Artec's copyrights.

59.     Creality and Kickstarter are collaborating on a campaign to market, sell, and distribute the CR-Scan Lizard and its operating software, CR Studio, and to share the revenues from those sales.

60.     Through that campaign, Creality and Kickstarter raised over $4,000,000 from over 9,400 backers (Kickstarter account holders) who will each receive a Lizard scanner that runs on CR Studio software.

61.     On information and belief, Kickstarter expects to receive over $200,000 from the sales of the CR-Scan Lizard scanners and accompanying infringing CR Studio software.

62.     Prior to the end of the campaign, on March 11, 2022, Artec sent Kickstarter a cease-and-desist letter outlining the key facts in this complaint. This letter placed Kickstarter on notice that the software driving Creality's Lizard scanner infringes Artec's copyright.

63.     Artec explained in its letter that if Kickstarter proceeded with the campaign, it will be facilitating the marketing, sale, and distribution of over 9100 scanners and CR Studio infringing software that the scanners use to operate. Artec provided significant further detail regarding Creality's patent infringement and its continuing copyright infringement and directed Kickstarter to Artec's '656 Patent for additional information.

64.     Defendant Kickstarter was properly notified and has knowledge of the acts of copyright infringement committed by Creality, including based upon Artec's cease-and-desist letter.

65.     Kickstarter declined, however, to exercise its right to stop or limit the campaign on its website relating to marketing, sales, and distribution of the Lizard scanner and the CR Studios software that is needed to operate the Lizard scanner and Creality's associated acts of infringement.

66.     By allowing the campaign to continue and distributing the funds to Creality, Kickstarter has induced, participated, and aided and abetted in, and profited from, this copying of and making of derivative works of the Artec Software, by helping Creality find buyers and raise funds necessary to manufacture Creality's infringing product.

67.     Despite knowing about Creality's acts of infringement, Kickstarter has taken affirmative steps and has made a material, significant, and knowing contribution to and/or induced and encouraged the acts of copyright infringement by Defendant Creality; it continued to do so even after receiving information about Creality's infringement of Artec's copyrights.

68.     On information and belief, Defendant Kickstarter has actual knowledge that it is promoting, marketing, offering for sale, and participating in the sale and distribution of infringing products using its website, name, systems, and resources, and could take simple measures to discontinue these actions by terminating the campaign relating to the Lizard scanner and its accompanying CR Studio software. Instead, Kickstarter continues to promote and encourage these infringing activities.

69.     The Creality Lizard Kickstarter campaign ended on March 12, 2022.

70.     As a result of its activities, Defendant Kickstarter has committed and is continuing to commit contributory copyright infringement.

## VII.     COUNT THREE: INFRINGEMENT OF ARTEC'S '656 PATENT

### (Against Defendant Creality)

71.     Plaintiff incorporates all allegations above, as if fully restated herein.

72.     Artec owns the '656 Patent, which is directed to and claims a system and method for the three-dimensional measurement of the shape of material objects using the triangulation of structured light.

73.     The system includes a light projector for projecting a structured light pattern on the surface of the object to be scanned, a device for capturing the image, and a computing device for determining the 3D measurement of the surface shape of the illuminated object through a triangulation algorithm, based on a calculated correspondence between the projected structured light and the captured image.

74.     The light projector includes a light source and a slide pattern that structures the light.

75.     The structured light includes coded elements or patterns that pass through vertices of the central projection areas of the projector and camera, and through the space of the object being measured.

76.     The shape of the surface of the object being measured can be made by analyzing the movement and/or position of the coded elements along the camera meridians with respect to the movement and/or position of the other coded elements, or with respect to other coded elements along the same or different camera meridians.

77.     Creality's CR-Scan 01 Portable Scanner infringes at least one claim of the '656 Patent.

78.     By way of example only, and without limitation, independent Claim 1 describes "A system for the 3D measurement of the shape of a material object, comprising:

> a light projector for projecting a structured light pattern onto a surface of said object, wherein said light projector comprises a light source, a slide with a slide pattern located on a slide surface, and a projector lens characterized by a projector lens vertex;
>
> a device for capturing an image of said structured light pattern reflected on said object, wherein said device for capturing an image comprises a device lens characterized by a device lens vertex; and
>
> a computing device for determining a measurement relating to the shape of said object using a triangulation algorithm based on a correspondence between points in said slide pattern and said image, and
>
> wherein said slide pattern comprises a plurality of coded elements, where each of said coded elements is characterized by at least one parameter and, where said at least one parameter defines a spatial or temporal distribution of an amplitude or a wavelength of said structured light, and
>
> wherein said coded elements are assigned to one of at least first group or second group, each of which first group and second group comprising at least two of said coded elements, and
>
> wherein at least a first slide virtual line and a second slide virtual line are defined on said slide surface, where said first slide virtual line is defined by an intersection between said slide Surface and a first plane passing through said projector lens vertex and through said device lens vertex, and said second slide virtual line is defined by an intersection between said slide surface and a second plane passing through said projector lens vertex and through said device lens vertex, and

wherein said coded elements of said first group are located along said first virtual line and said coded elements of said second group are located along said second virtual line.

79.   Creality's CR-Scan 01 Portable Scanner practices Artec's patented system and method to scan, measure, and capture the 3D shapes of objects.

80.   For example, Creality's CR-Scan 01 Scanner includes a light projector that projects a structured light pattern onto the object being scanned, a sensor that captures an image of the structured light pattern projected onto the object, and a computing device that uses a triangulation algorithm to determine the shape based on measurements between points in the projected structured light and captured image of the object. Moreover, it uses at least two groups of coded elements in the slide pattern which are arranged along virtual lines.

81.   Creality has imported, continuously offered for sale, and sold the accused product to customers in the United States since on or around 2020.

## VIII.   APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

82.   Plaintiff incorporates all allegations above, as if fully restated herein.

83.   As set forth above, Defendants' actions, in violation of the United States Copyright Act and patent laws, have caused, and are continuing to cause, substantial damages to Artec.

84.   Defendants are jointly marketing, offering for sale, and selling – and are about to distribute – the Lizard scanner with Creality's CR Studio, which the device depends upon to function. Creality's CR Studio software infringes Artec's copyright.

85.   On information and belief, the yet-to-be-released Lizard scanner that, on information and belief infringes Plaintiff's patent.

86.   The release of these infringing products will cause Artec to lose market share and good will for which there is no remedy at law and will cause Artec irreparable harm.

87.     Moreover, Defendants are planning to distribute over $4,000,000 collected from over 9400 backers and soon thereafter to transfer a large part of that amount to Creality in the People's Republic of China (PRC).  On information and belief, it will be virtually impossible for Artec to recover any portion of these funds once they are transferred to the PRC.

88.     On information and belief, Creality's Kickstarter campaign ended on March 12, 2022 after raising over $4 million selling over 9400 infringing Lizard scanners. Pursuant to Kickstarter's terms of service, Kickstarter will distribute the funds on March 26, 2022. Pursuant to Kickstarter's terms of service and/or policies, funds are sent "14 days after the project's deadline, to the bank account originally linked to the project." https://help.kickstarter.com/hc/en-us/articles/360010120934-If-my-project-is-successfully-funded-how-do-I-receive-my-funds-

89. Creality's sale and distribution of over 9000 infringing Creality Lizard scanners will introduce an infringing low-cost product to enter the market, resetting consumer expectations for price based on goods created by a company that did not incur the research and development costs necessary to develop their product and instead infringes Plaintiff's patent and copies its copyrighted software. *See* Ex. A, Declaration of Gleb Gusev.

90. On information and belief, Creality is a Chinese company that distributes its goods throughout the country, yet has no footprint in the United States, no registered agent for service of process, or identifiable assets in the United States other than the funds currently in Kickstarter's possession. If Kickstarter distributes those funds to Creality prior to the resolution of this dispute— it will not only fund and fuel Creality's patent and copyright infringement—Artec will have no way to hold Creality accountable for these violations.

91. Allowing Kickstarter to transfer the funds to Creality will directly fund the manufacturing, distribution, and dissemination of low-cost infringing devices into the U.S. market,

irreversibly harming Artec's market-share and creating pricing pressure on Artec that cannot be reversed.

92. As explained more fully in its Memorandum In Support of Motion for Temporary Restraining Order and Preliminary Injunction, Artec requests that this Court grant a temporary restraining order and injunction to restrain Kickstarter from transferring any funds collected from backers during the Lizard campaign (and/or any payment or transfer of the funds to Creality in the PRC related to the Lizard campaign) until this Court can reach a determination on the merits of the issues raised in this lawsuit.

## IX.    PRAYER FOR RELIEF

Artec respectfully requests an order and/or judgment against Defendants granting:

A.    Damages against Creality for patent infringement relating to Creality's CR-01 scanner, in an amount to be determined by the jury;

B.    Damages against Kickstarter for contributory copyright infringement, including actual damages and/or loss of profits, in an amount to be determined by the jury;

C.    Damages against Creality for copyright infringement including actual damages and/or disgorgement of profits, in an amount to be determined by the jury;

D.    A temporary restraining order that (1) restrains and enjoins Defendant Kickstarter PBC from  transferring, paying, or sending directly or indirectly to Shenzhen Creality 3D Technology Co., Ltd. (or to any other third party beyond Kickstarter PBC's own bank accounts) any funds, payments, money, or items of value received in connection with, from, or relating to its campaign with  Shenzhen Creality 3D Technology Co., Ltd. involving the CR-Scan Lizard, pending a hearing on motion for temporary injunction, and (2) requires Defendant Kickstarter PBC

to retain and not disburse any and all funds or payments received or collected in connection with its campaign relating to  the CR-Scan Lizard;

      E.      A temporary injunction that (1) enjoins Defendant Kickstarter PBC from transferring, paying, or sending directly or indirectly to Shenzhen Creality 3D Technology Co., Ltd. in the PRC or to any other third party (other than Kickstarter PBC's own bank accounts) any funds, payments, money, or items of value received in connection with, from, or relating to its campaign with Shenzhen Creality 3D Technology Co., Ltd. involving the CR-Scan Lizard, and (2) requires Defendant Kickstarter PBC to retain and not disburse any and all funds or payments received or collected in connection with its campaign relating to  the CR-Scan Lizard, until this Court can reach a determination on the merits of the issues raised in this lawsuit;

      G.      A permanent injunction barring Defendants from the unauthorized copying or distribution of works infringing Artec's '656 Patent or Artec's copyrights in Artec Software through its scanners and/or CR Studio software; and

      H.      Any other relief that may be proper.

## **DEMAND FOR JURY TRIAL**

      Pursuant to Fed. R. Civ. P. 38(b), Artec hereby demands a trial by jury on all issues triable in this action.

March 25, 2022                    Respectfully submitted,

/s/ _Barry J. Alexander_____
Barry J. Alexander
Schnader Harrison Segal & Lewisk LLP
140 Broadway, Suite 3100
New York, New York 10005-1101
Telephone:  (212) 973-8099
balexander@schnader.com

Richard de Bodo (*pro hac vice app. pending*)
CA State Bar No. 128199
Charles T. Zerner *(Pro hac vice app. pending)*
LA State Bar No. 34832
Munck Wilson Mandala, LLP
1925 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone:  (310) 287-0377
rdebodo@munckwilson.com
czerner@munckwilson.com

*Attorneys for Plaintiff*
*Artec Europe S.À.R.L.*