UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTEC EUROPE S.À.R.L., <br><br> Plaintiff, <br><br> v. <br><br> SHENZHEN CREALITY 3D TECHNOLOGY CO., LTD., AND KICKSTARTER PBC, <br><br> Defendants. | 1:22-2676 (WFK)(VMS) <br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF ARTEC EUROPE S.A.R.L.'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ................................................................................. 1

II. PERSONAL JURISDICTION .................................................................................. 2

III. STATEMENT OF FACTS ........................................................................................ 3

    A. Artec develops and sells 3D scanners and software and holds patents and copyrights protecting its work. ................................................................. 3

    B. Defendant Creality is a Chinese company selling inexpensive scanners and software products that infringe Artec's IP. ............................................. 4

        (i) Creality's CR-Scan 01 Scanner and accompanying software infringe Artec's '656 Patent. ............................................................ 4

        (ii) The software that Creality scanners depend on to operate infringes Artec's copyright in the Artec Studio Software. ................ 6

    C. Defendant Kickstarter is helping Creality market and sell over $4 million of infringing products. ................................................................................ 7

    D. Artec asked Kickstarter to cease and desist but Kickstarter ignored its request. ..... 7

    E. Kickstarter's distribution of the more than $4 million collected during the campaign is imminent. ............................................................................ 8

    F. Artec will suffer price erosion and a loss of market share as a result of Defendants' sale of knockoff devices that infringe Artec's IP. ............... 9

IV. LAW AND ARGUMENT ........................................................................................ 9

    A. The Standard. ........................................................................................... 9

| | | |
|---|---|---|
| | B. | Preliminary Injunctive Relief is Necessary to Protect Against Irreparable Harm. 10 |
| | | (i) Artec will suffer a loss of market share and irreparable price erosion in the absence of the Preliminary Injunction. ...................................................... 10 |
| | | (ii) A Preliminary Injunction is necessary to prevent the dissipation of assets and preserve Artec's only means to hold Creality accountable. ................ 12 |
| | C. | At A Minimum, The Evidentiary Record Establishes Sufficiently Serious Questions Going to the Merits, And The Balance of Hardships Tips Decidedly In Artec's Favor, Warranting Preliminary Injunctive Relief ................................... 14 |
| | D. | Balance of hardships. ....................................................................................... 14 |
| | E. | The public interest weighs in favor of the Preliminary Injunction ....................... 15 |
| | F. | The Motion for a Preliminary Injunction can be resolved without an evidentiary hearing............................................................................................................ 16 |
| V. | CONCLUSION............................................................................................................ 16 |

Plaintiff Artec Europe S.à.r.l. (hereinafter, "Artec" or "Plaintiff") submits this memorandum of law in support of its application for a temporary restraining order and preliminary injunction against defendant Kickstarter PBC ("Kickstarter") under Rule 65 of the Federal Rules of Civil Procedure, the U.S. Copyright Act, 17 U.S.C. § 502(a), and the U.S patent laws under title 35.

## I. PRELIMINARY STATEMENT

This action arises from defendants Creality's and Kickstarter's unlawful marketing and sale of a 3D scanner and accompanying 3D software that infringes Artec's patent and copyrights using the Kickstarter website.

Artec is a market leader in 3D scanning technologies – it was named the world's leading 3D scanning company a few years ago. Artec develops, manufactures, and markets award-winning, market-leading, and game-changing innovative 3D scanners and 3D software, including the Artec Leo 3D Scanner, the Artec Eva 3D Scanner, and the Artec Studio 3D software suite. Artec owns U.S. Patent 7,768,656 (the '656 Patent) relating to a system and method for scanning, measurement, and capture of objects in three dimensions, which issued on August 3, 2010.

Artec's Artec Studio software was first published and released in 2010. The Artec Studio Software is used in conjunction with Artec's 3D scanners to render a 3D image from the raw data received from the scanners. The Artec Studio software also allows the user to explore and manipulate the 3D image and communicate it in a readable form to 3D printers and other devices. The Artec Studio software has been called "the secret sauce that takes 3D scanning to the next level." The Artec Studio Software contains material wholly original to Artec and is copyrightable subject matter under the laws of Luxembourg and the United States. Artec owns the copyright in

the Artec Studio Software. Artec's copyright in its software is enforceable under the Berne Convention.

Recently, Kickstarter began marketing a new Creality scanner on its website.

Kickstarter is a crowdfunding website that allows users to commit to purchasing a device (and thereby "fund" the manufacturing of that device) if the Kickstarter campaign meets its funding goal. Creality is a Chinese company marketing 3D scanners and 3D software that infringe Artec's patent and copyright. Creality's Kickstarter Lizard campaign successfully closed after raising $4 million from the sale of over 9000 Lizard scanners. Creality is selling its infringing Lizard scanner at a small fraction of the cost customers are accustomed to paying for comparable Artec device.

Because Creality is headquartered in China with no registered agent for service of process, headquarters, or other assets in the United States, Artec asks this court to grant a temporary injunction temporarily prohibiting Kickstarter from disbursing the over $4 million it collected for the manufacture and sale of Creality's new infringing "Lizard" 3D Scanner. Once the funds are distributed, Artec will have no reasonable way to prohibit Creality from continuing to manufacture and distribute infringing products or to litigate its claims in this Court, and Artec will suffer irreparable harm and market share loss in price support.

## II. PERSONAL JURISDICTION

Pursuant to Federal Rule of Civil Procedure 65, a federal court has the authority to issue a preliminary injunction in a case where it has personal jurisdiction over the defendant as well as subject matter jurisdiction to issue the injunction. *In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001); *Nike, Inc. v. Liu*, 21-cv-248 (SHS), at *1 (S.D.N.Y. Dec. 16, 2021).

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental and pendent jurisdiction over any related state law claims pursuant to 28 U.S.C. § 1367.

This Court has specific personal jurisdiction over Kickstarter because its principal place of business is located in this District and by virtue of its transacting, doing business and soliciting business in this District—including by way of its website, Kickstarter.com—and because a substantial part of the relevant events including alleged acts of infringement were directed from this District.

This Court has specific personal jurisdiction over Kickstarter and Creality because Defendants have collaborated and transacted business together in this District and have marketed, offered for sale, sold, and/or distributed accused infringing products in and to the forum state, including through their joint marketing, sales, and distribution campaign on Kickstarter's website https://www.kickstarter.com/projects/3dprintmill/creality-cr-scan-lizard-capturing-fine-details-of-view.

Moreover, Kickstarter is planning to imminently distribute roughly $4 million collected from Kickstarter accountholders (known as "backers") who have committed to purchase the new Lizard scanner—funds Creality will then use to manufacture and distribute to these Kickstarter accountholders the infringing Lizard device and software. On information and belief, at least some of these backers are from New York, creating an additional basis of jurisdiction in this forum. Indeed, on information and belief, a significant portion of Creality's U.S. sales of the accused products were made and will be made to residents in New York.

### III. STATEMENT OF FACTS

**A. Artec develops and sells 3D scanners and software and holds patents and copyrights protecting its work.**

Artec is a global leader in 3D scanning technologies that develops, manufactures, and markets award-winning and market-leading 3D scanners and 3D software, including the Artec Eva 3D Scanner and the Artec Studio software suite.

3

Artec created, owns and sells software known as the Artec Studio suite (the "Artec Software" or the "Artec Studio Software"). The Artec Software was first published in Luxembourg in 2010, with updated versions released periodically, thereafter. Plaintiff Artec has owned the copyright in the Artec Software continuously since its creation. The Artec Software contains material wholly original to Artec and is copyrightable subject matter under the laws of the United States. Artec's Artec Studio Software is used in conjunction with its 3D scanners to render a 3D image from the raw data received from the scanners. It further allows the user to explore and manipulate the 3D image and communicate it in a readable form to 3D printers and other devices.

Artec also owns U.S. Patent 7,768,656 (the '656 Patent), a patent relating to a system and method for scanning, measurement, and capture of objects in three dimensions, which issued on August 3, 2010.

**B.  Defendant Creality is a Chinese company selling inexpensive scanners and software products that infringe Artec's IP.**

On information and belief, Defendant Creality is a 3D scanning and printing company based in Shenzhen, China with its headquarters located at 18F, JinXiuHongDu Building, Meilong Boulevard, Longhua Dist., Shenzhen, China 518131.  Creality manufactures the CR-Scan 01 Portable 3D Scanner ("CR-Scan 01 Scanner") and accompanying CR Studio software suite.  On information and belief, Creality markets, offers for sale, and sells its products throughout the United States.

**(i)   Creality's CR-Scan 01 Scanner and accompanying software infringe Artec's '656 Patent.**

Artec owns the '656 Patent, which is directed to and claims a system and method for measuring the shape of material objects in three dimensions using the triangulation of structured light.

The system includes a light projector for projecting a structured light pattern on the surface of the object to be scanned, a device for capturing the image, and a computing device for determining the 3D measurement of the surface shape of the illuminated object through a triangulation algorithm, based on a calculated correspondence between the projected structured light and the captured image.

The light projector includes a light source and a slide pattern that structures the light projected out of the scanner onto the object being measured. The structured light includes coded elements or patterns that pass through vertices of the central projection areas of the projector and camera, and through the space of the object being measured.

The shape of the surface of the object being measured can be made by analyzing the movement and/or position of the coded elements along the camera meridians with respect to the movement and/or position of the other coded elements, or with respect to other coded elements along the same or different camera meridians. Employing this patented system and method, the scanner, in conjunction with its accompanying software, can render a 3D image of the scanned object.

As described more fully in the Complaint (the contents of which are incorporated by reference herein), Creality's CR-Scan 01 Portable Scanner infringes at least one claim of the '656 Patent.

Creality's CR-Scan 01 Portable Scanner practices Artec's patented system and method to scan, measure, and capture the 3D shapes of objects. For example, Creality's CR-Scan 01 Scanner includes a light projector that projects a structured light pattern onto the object being scanned, a sensor that captures an image of the structured light pattern projected onto the object, and a computing device that uses a triangulation algorithm to determine the shape based on

measurements between points in the projected structured light and captured image of the object. Moreover, it uses at least two groups of coded elements in the slide pattern which are arranged along virtual lines.

### (ii) The software that Creality scanners depend on to operate infringes Artec's copyright in the Artec Studio Software.

The Artec Software contains material wholly original to Artec and is copyrightable subject matter under the laws of the United States. The Artec Software was first published in Luxembourg in 2010, with subsequent versions published periodically, thereafter. Plaintiff Artec has owned the copyright in the Artec Software continuously since its creation.

On information and belief, beginning on or about 2018, Creality copied Artec's copyrighted material without Artec's permission or knowledge, which it obtained from a company called Jimuyida, and used it to create the Creality "CR Studio" software.

On information and belief, Creality's CR Studio contains material that directly copies protectable portions Artec's copyrighted work. The same, specific, unique and irregular behavior that can be observed in the Artec Studio program (a non-functional and unwanted behavior in the code resulting from legacy functionality) is also present in the CR Studio program. This anomaly with no functional purpose caused by an artifact in the code creates a strong inference that such code was directly copied by CR Studio.

On information and belief, Creality's CR Studio contains material that is substantially similar to the Artec Software so as to constitute copyright infringement. On information and belief, this includes copying the Artec Software code's main purpose, architecture/structure, sequence in analyzing data received from the scanner, and the modules, algorithms and data structures used to render and manipulate a 3D image.

Not only do Creality's scanners infringe its patented system and method for determining the shape of 3D objects, but Creality's CR Studio software, which Creality provides to all its customers and is necessary for the operation of Creality's 3D scanners—including the Lizard scanner—infringes Artec's copyrights in the Artec Software. Creality's Kickstarter campaign makes clear that the Lizard operates using Creality CR Studio software. Creality has distributed—and continues to distribute—copies of its infringing software on its website to customers all over the world.

Under The Berne Convention for the Protection of Literary and Artistic Work, which has been adopted by the United States of America, Artec, as a Luxembourg entity, has the right to enforce its intellectual property rights, namely, its copyrights in the United States without the formality of registration of the software with the United States Copyright Office.

### C. Defendant Kickstarter is helping Creality market and sell over $4 million of infringing products.

On information and belief, Creality and Kickstarter began collaborating on a campaign to market, sell, and distribute the CR-Scan Lizard and its operating software, and to share the revenues from those sales between them.

On or around March 2022, Creality and Kickstarter launched a campaign promoting and offering for sale of a new scanner, the CR-Scan Lizard on Kickstarter's website. Kickstarter is a crowdfunding website that pairs sellers with Kickstarter accountholders, called "backers," who would commit to purchasing the product, so long as the fundraising campaign meets its targeted sales goal.

### D. Artec asked Kickstarter to cease and desist but Kickstarter ignored its request.

On or about March 11, 2022, Artec emailed and messengered a cease-and-desist letter to Kickstarter notifying it about the above information and requesting that Kickstarter and Creality

immediately cease and desist from marketing and selling the Lizard and CR Studio software on Kickstarter's website, that they halt the Creality CR-Scan Lizard campaign, and that they not collect or distribute any funds pledged or committed during the campaign, pending the resolution of the issues raised in the letter. Artec explained in its letter that if Defendants proceeded with the campaign, Defendants' actions would result in the marketing, sale, and distribution of over 9400 scanners and the CR Studio infringing software that the scanners use to operate—damaging Artec and causing it irreparable harm.

On information and belief, consistent with Kickstarter's policy, Kickstarter notified Creality about Artec's letter and notification and provided Creality a copy. On information and belief, Defendants have knowledge about the matters alleged in this complaint. Yet, Defendants did not respond to Artec's letter or request any further information. After receiving Artec's letter notifying them of the facts relating to infringement, Defendants proceeded with the campaign.

On information and belief, Defendants have arranged to sell the Lizard, together with infringing CR Studio software that the scanners need to operate, to over 9400 backers, and they are about to collect over $4,000,000 in revenue for these infringing sales, much of which they intend to transfer imminently to Creality in China.

### E. Kickstarter's distribution of the more than $4 million collected during the campaign is imminent.

Creality's and Kickstarter's campaign ended on March 12, 2022 after raising over $4 million selling more than 9400 infringing Lizard scanners. Pursuant to Kickstarter's terms of service and/or policies, funds are sent "14 days after the project's deadline, to the bank account originally linked to the project." https://help.kickstarter.com/hc/en-us/articles/360010120934-If-my-project-is-successfully-funded-how-do-I-receive-my-funds-. Thus, because Kickstarter ignored Artec's cease and desist letter and continued to promote Creality's infringing products,

it is anticipated that Kickstarter will distribute the funds to Creality on or soon after March 26, 2022, causing Artec to suffer irreparable harm.

> **F.  Artec will suffer price erosion and a loss of market share as a result of Defendants' sale of knockoff devices that infringe Artec's IP.**

Artec controls a sizeable share of the U.S. market in sales of high-resolution 3D scanners comparable to the Creality Lizard. Artec sells its Artec Leo scanner for roughly $29,000, its Space Spider 3D Scanner for roughly $24,800, and its Eva scanner for roughly $19,800, and the Eva Light for $9800. These top-quality award-winning scanners are considerably more expensive than Creality's infringing Lizard device, which it is selling to users on Kickstarter for approximately $400 -- a dramatically lower price than Artec's scanners. Creality and Kickstarter are able to offer this low price for scanners because they have not spent any resources on research and development – Creality has simply misappropriated the intellectual property of Artec.

Artec's scanners are more expensive than Creality's infringing Lizard device. Should Kickstarter be allowed to transfer the funds to Creality, Creality will use the funds to manufacture low-cost scanners that infringe Artec's intellectual property and disseminate them in the U.S. market—causing Artec a loss of marketshare and irreparable price erosion.

## IV.  LAW AND ARGUMENT

### A.  The Standard.

"The standard for granting a temporary restraining order and a preliminary injunction . . . are identical." *Kelly v. Evolution Markets, Inc.*, 626 F. Supp. 2d 364, 375 (S.D.N.Y. 2009). In the Second Circuit, a preliminary injunction should issue if: (1) it is necessary to prevent irreparable harm; and (2) either (a) movant is likely to prevail on the merits, or (b) movant has shown sufficiently serious questions going to the merits to make them fair ground for litigation, and a balance of the hardships tips decidedly in movant's favor. *Am. Civil Liberties Union v. Clapper*,

785 F.3d 787, 825 (2d Cir. 2015); *see also Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd*, 598 F.3d 30, 35 (2d Cir. 2010). Artec satisfies these requirements for the following reasons.

> **B.      Preliminary Injunctive Relief is Necessary to Protect Against Irreparable Harm.**

The requested preliminary injunction is necessary to prevent irreparable harm to Artec during the pendency of the litigation. Without this relief, the Court will be unable to render a meaningful judgment on the merits against Creality.

> **(i)      Artec will suffer a loss of market share and irreparable price erosion in the absence of the Preliminary Injunction.**

"It is settled law that 'the loss of pricing power resulting from the sale of inexpensive knock-offs' is, by its very nature, irreparable." *Hutzler Mfg. Co. v. Bradshaw Int'l., Inc.*, 11 Civ, 7211 (PGG), at *32 (S.D.N.Y. July 24, 2012).[1] The purpose of a preliminary injunction is to preserve the status quo pending the litigation of a dispute where the movant will suffer irreparable harm in its absence. "Loss of customers, orders, and market share is a common ground on which to find irreparable harm." *Veeco Instruments Inc. v. SGL Carbon, LLC*, No. 17-CV-2217 (PKC),

---

[1] *Hutzler Mfg. Co. v. Bradshaw Int'l., Inc.*, 11 Civ, 7211 (PGG), at *32 (S.D.N.Y. July 24, 2012) ("Hutzler also argues that "Defendant's distribution of the Infringing Products, if not enjoined, will result in irreparable price erosion of Hutzler's patented products in that Hutzler will be forced to drastically change its pricing structure in order to complete with lower-priced 'knock-off products." (Pltf. Br. 15; Hutzler Deck ¶ 30) Hutzler maintains that Bradshaw's products "are priced approximately 25-50 percent lower than Hutzler's Food Saver Line products." (Hutzler Deck ¶ 27) It is settled law that "the loss of pricing power resulting from the sale of inexpensive 'knock-offs' is, by its very nature, irreparable." Mint Inc. v. Amad, No. 10 Civ. 9395(SAS), 2011 WL 1792570, at *3 (citing Abbott Labs, v. Sandoz. Inc., 544 F.3d 1341, 1362 (Fed. Cir. 2008) (citing Purdue Pharma L.P. v. Boehringer Ingelheim GmbH, 237 F.3d 1359, 1368 (Fed. Cir. 2001) (likelihood of price erosion and loss of market share are evidence of irreparable harm); Polymer Techs., Inc. v. Bridwell, 103 F.3d 970, 975-76 (Fed. Cir. 1996) (loss of market opportunities cannot be quantified or adequately compensated and is evidence of irreparable harm))). Hutzler has demonstrated that Bradshaw's products are priced lower than Hutzler's products (Hutzler Deck ¶ 30; Ehrenhaus Deck, Ex. B) and that it was required to lower its prices in order to avoid losing business to Bradshaw. (Ehrenhaus Deck ¶ 13, Ex. C) Accordingly, Hutzler has likewise demonstrated irreparable harm flowing from the continued price erosion it will suffer if Bradshaw is not enjoined.")

at *61-62 (E.D.N.Y. Nov. 2, 2017). This is particularly true in cases involving patent and/or copyright infringement.[2] "It is well-established that a movant's loss of current or future market share may constitute irreparable harm." *Grand River Enter. Six Nations. Ltd. v. Pryor*, 481 F.3d 60, 67 (2d Cir. 2007).

The evidence demonstrates that Artec cannot wait for relief from a final judgment on the merits against Creality and Kickstarter here. Creality is selling its Lizard Scanner at a lower cost than Artec. Artec controls a sizeable share of the U.S. market in sales of high-resolution 3D scanners comparable to the Creality Lizard.

Artec's competing scanners are more expensive than Creality's infringing Lizard device. Artec sells its Artec Leo scanner for roughly $29,000, its Space Spider 3D Scanner for roughly $24,800, its Eva scanner for roughly $19,800, and its Eva Light scanner for $9800. Creality is selling its infringing Lizard scanner for roughly $400.

Permitting Creality's sale and distribution of over 9000 infringing Creality Lizard scanners to go forward would cause a low-cost infringing product to enter the market that would reset consumer expectations for price based on goods created by a company that did not incur the research and development costs necessary to develop their product and instead infringe Plaintiff's patent and copyrighted software. Allowing Kickstarter to transfer the funds to Creality will directly fund the manufacturing, distribution, and dissemination of low-cost infringing devices into the U.S. market, irreversibly harming Artec's market-share and creating pricing pressure on Artec that cannot be reversed.[3]

---

[2]

[3] *Veeco Instruments Inc. v. SGL Carbon, LLC*, No. 17-CV-2217 (PKC), at *61-62 (E.D.N.Y. Nov. 2, 2017) ("Loss of customers, orders, and market share is a common ground on which to find irreparable harm. *See Trebro Mfg.*, *Inc. v. Firefly Equip.*, *LLC*, 748 F.3d 1159, 1170 (Fed. Cir. 2014); *Douglas Dynamics*, 717 F.3d at 1344-45. The Federal Circuit has also held that irreversible price erosion may constitute irreparable harm, if it is unlikely to be

This irreparable injury that Artec would suffer in the interim, pending the resolution of this dispute—in the form of lost market share and immediate price erosion—would render any final judgment a nullity and money damages would not be able to compensate Artec for that harm.

### (ii) A Preliminary Injunction is necessary to prevent the dissipation of assets and preserve Artec's only means to hold Creality accountable.

A temporary injunction is necessary to prevent irreparable injury for another reason. Creality is a Chinese company that distributes its goods throughout the country, yet has no footprint in the United States, no registered agent for service of process, or identifiable assets in the United States other than the funds currently in Kickstarter's possession. If Kickstarter distributes those funds to Creality prior to the resolution of this dispute—it will not only fund and fuel Creality's patent and copyright infringement—Artec will have no way to hold Creality accountable for these violations. Indeed, nothing will prevent Creality from doing the same thing again: by creating a new infringing scanner and market it through Kickstarter or another crowdfunding site.

Artec requests a preliminary injunction to prohibit Kickstarter from disbursing funds it received from the campaign to fund the sale Creality's infringing Lizard scanner and accompanying software. A preliminary injunction is necessary in order to protect the Court's

---

quantifiable with requisite certainty after the fact. *See Celsis*, 664 F.3d at 930. Beyond these pecuniary harms, there is also precedent for a finding of irreparable harm based on non-pecuniary harm to a patent holder's competitive position in a relevant market, including loss of future business opportunities, damage to brand distinctiveness, loss of reputation as an innovator in the market, and loss of network effects and customer lock-in effects in downstream markets. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1340 (Fed. Cir. 2012) ("[l]oss of business opportunities"); *Douglas Dynamics, LLC*, 717 F.3d at 1344 ("erosion in reputation and brand distinction"); *Tinnus Enters.*, 846 F.3d at 1208 (harm to "status as the innovator in the market"); *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 645 (Fed. Cir. 2015) ("*Apple IV*") ("downstream" losses and "network effect" losses); *Trebro Mfg.*, 748 F.3d at 1165 ("loss of market share and customers" and having "to lay people off"). The additional forms of harm that Veeco asserts—*i.e.*, loss of valuable customer feedback, loss of sales in the aftermarket for MOCVD parts and services, erosion of its product distinctiveness and reputation in the market, and loss of goodwill—all fit squarely within these precedents.")

ability to render a meaningful final judgment on the merits against Creality. Such relief is proper and within the courts discretion, as there is a high likelihood that Kickstarter will otherwise tender the assets to Creality—a Chinese company with no headquarters, agent for service of process, or other assets in the United States. Should this Court decline to do so, once transferred, Creality will use the funds to manufacture infringing products and distribute them to its Kickstarter accountholders, in New York and elsewhere.

A district court may grant a preliminary injunction to freeze a defendant's assets in a suit that seeks equitable relief involving the defendants' assets, particularly when the defendant has engaged in allegedly unlawful conduct, or there is a probability that defendant will fraudulently convey or dissipate assets. *See*, *e.g.*, *Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 132 (2d Cir. 2014) (holding that district court has the equitable authority to grant a preliminary injunction freezing defendants' assets in a counterfeiting case that sought the equitable remedy of accounting of profits).[4] The Court should do so here.

Artec's request for preliminary injunctive relief is amply supported by the factual record. Artec's affidavits, which describe why Artec would suffer irreparable harm in the absence of the requested injunctive relief, support its motion for a preliminary injunction. The affidavits and other evidence submitted by Artec demonstrate that Artec would suffer irreparable harm in the absence of injunctive relief.

---

[4] *See also Conn. Gen. Life Ins. Co. v. New Images*, 321 F.3d 878, 881 (9th Cir. 2003) (upholding a preliminary injunction to freeze defendant's assets where defendant was involved in an insurance fraud scheme and there was likelihood of dissipation given the defendants history of fraudulent transfers); *Micro Signal Research, Inc. v. Otus*, 417 F.3d 28, 31 (1st Cir. 2005) (upholding a preliminary injunction requiring the defendants to pay all funds earned from their new business entity into a trust where the defendants engaged in fraud and reorganized their businesses to frustrate the payment of any future monetary judgment); *Elliot v. Kiesewetter*, 98 F.3d 47, 58 (3d Cir. 1996); *U.S. ex Rel. Rahman v. Oncology Associates*, 198 F.3d 489, 499 (4th Cir. 1999) (preliminary injunction freezing defendants assets was reasonable exercise of district courts equitable power to preserve status quo in aid of ultimate equitable relief claimed, especially where the assets at issue were derived from profits made by defendants through allegedly fraudulent and unlawful conduct).

### C. At A Minimum, The Evidentiary Record Establishes Sufficiently Serious Questions Going to the Merits, And The Balance of Hardships Tips Decidedly In Artec's Favor, Warranting Preliminary Injunctive Relief

Even if Artec could not establish a likelihood of success on the merits at this early stage of the litigation, it would nevertheless be appropriate for the Court to grant its application for temporary preliminary relief because there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and the balance of hardships tips decidedly in Artec's favor. *See Tradescape.com* v. *Shivaram,* 77 F. Supp. 2d 408, 419 (S.D.N.Y.) ("while it is too early to ascertain whether plaintiff is likely to succeed on the merits of the copyright claim, plaintiff has raised sufficiently serious questions going to the merits of its copyright claim to make them fair ground for litigation").

### D. Balance of hardships.

In deciding a motion for a preliminary injunction, the Court must assess the relative hardships faced by the parties. This assessment involves balancing the injury faced by the moving party against the injury that would be sustained by the opposing party if the injunction were granted. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Tradescape.com*, 77 F. Supp. 2d at 411 ("[T]he balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided"). A court may grant a preliminary injunction if the hardship to the moving party from denying the injunction would outweigh the hardship experienced by the opposing party if the injunction were granted. *Cohen v. Brown University*, 991 F.2d 888, 905 (1st Cir. 1993) (balance of hardship favored movants who sought to enjoin university from cancelling sports programs); *JAK Productions, Inc. v. Wiza*, 986 F.2d 1080, 1084 (7th Cir. 1993) (affirming district court's order granting preliminary injunction when the balance of hardship favored the movant in an action to enjoin former employee from utilizing proprietary information to complete against their former employer).

Temporarily delaying Kickstarter's disbursement of funds to Creality may inconvenience Creality. However, in contrast, allowing Defendants to send the funds to China would leave Artec with no possible effective remedy against infringement. Unlike Artec, Creality is not registered to do business in the United States and has no agent for service of process, affiliates in the United States, or assets in the United States other than the funds currently held by Kickstarter. While delaying Creality's receipt of these funds pending expedited discovery may inconvenience Creality, this inconvenience is the only way to preserve the Court's ability to award meaningful relief against Creality in this lawsuit should Artec prevail. Indeed, should this Court decline to do so, nothing prevents Creality from releasing yet another infringing scanner and selling it through crowdfunding websites, like Kickstarter. Based on the evidence, the balance of hardships tips decidedly in Artec's favor. *See Tradescape.com*, 77 F. Supp. 2d at 411-412 (holding that balance of hardships tipped decidedly in plaintiff's favor and that TRO and preliminary injunction should issue where plaintiff, like Artec here, would be harmed by the release of a new software product that allegedly infringed its copyrights and trade secrets, whereas the harm to defendant was the delay in releasing the potentially infringing software product).

### E.  The public interest weighs in favor of the Preliminary Injunction

The public interest weighs in favor of granting the requested injunctive relief. The United States of America and the State of New York have an interested in ensuring that the laws governing intellectual property are respected in their jurisdiction. For this reason, the Copyright Act expressly "authorizes courts to 'grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.'" 17 U.S.C. § 502(a)."). *Thurman v. Bun Bun Music*, 13 Civ. 5194 (CM)(MHD), at *33-34 (S.D.N.Y. Feb. 25, 2015). The Court should

do so here. The preliminary injunction is consistent with, and is likely to further, important public policy considerations.

### F. The Motion for a Preliminary Injunction can be resolved without an evidentiary hearing.

Affidavits and other evidence in the record establish that a preliminary injunction is necessary to preserve the status quo and protect against irreparable injury. Due to the urgent need for this relief and the fact that there is no live testimony to present at this time, Artec requests that the Court grant this motion without an evidentiary hearing. A court is not always required to hold a hearing before issuing a preliminary injunction. Courts have granted preliminary injunctions without a hearing where the defendant did not request a hearing or where a party waived the hearing. *Drywall Tapers Pointers v. Local 530*, 954 F.2d 69, 77 (2d Cir. 1992) (failure to request a hearing may result in waiver).

## V. CONCLUSION

The court has the discretion to issue the preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure. It should do so. Because Artec has shown that it will suffer irreparable harm in the absence of immediate injunctive relief and a substantial likelihood of success on the merits, Artec respectfully requests that this Court enter a temporary restraining order and preliminary injunction that enjoins:

- Kickstarter from disbursing to Creality (or to any subsidiary, affiliate, successor in interest, or any director, officer, employee, attorney, representative, or agent thereof) any funds raised through Kickstarter to purchase the Creality Lizard Scanner;
- Kickstarter from allowing Creality to create a duplicative campaign marketing the same Creality product to evade the spirit of this Order, pending adjudication of this dispute.

Dated: March 25, 2022
　　　New York, New York

　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　_____
　　　　　　　　　　　　　Barry S. Alexander
　　　　　　　　　　　　　**SCHNADER HARRISON SEGAL & LEWIS LLP**
　　　　　　　　　　　　　140 Broadway, 31st Floor
　　　　　　　　　　　　　New York, New York 10005-1101
　　　　　　　　　　　　　Telephone: (212) 973-8099
　　　　　　　　　　　　　balexander@schnader.com

　　　　　　　　　　　　　Richard de Bodo (*pro hac vice app. pending*)
　　　　　　　　　　　　　Charles T. Zerner (*pro hac vice app. pending*)
　　　　　　　　　　　　　**MUNCK WILSON MANDALA, LLP**
　　　　　　　　　　　　　1925 Century Park East, Suite 2300
　　　　　　　　　　　　　Los Angeles California 90067
　　　　　　　　　　　　　Telephone: (310) 287-0377
　　　　　　　　　　　　　rdebodo@munckwilson.com
　　　　　　　　　　　　　czerner@munckwilson.com

　　　　　　　　　　　　　*Attorneys for Plaintiff*
　　　　　　　　　　　　　*Artec Europe S.A.R.L.*