UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

ARTEC EUROPE S.A.R.L.,

               Plaintiff,

     v.

SHENZHEN CREALITY 3D
TECHNOLOGY CO., LTD., AND
KICKSTARTER, PBC,

               Defendants.

1:22-1676 (WFK)(VMS)

**SHENZHEN CREALITY 3D
TECHNOLOGY CO., LTD'S
MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF
ARTEC EUROPE S.A.R.L.'S
APPLICATION FOR A
TEMPORARY RESTRAINING
ORDER AND PRELIMINARY
INJUNCTION**

# **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT                                                              1

II.  FACTUAL BACKGROUND                                                                 3

III.  ARGUMENT                                                                          4

  A. Plaintiff Has Failed to Demonstrate Likelihood of Success on the Merits of Its Patent
Infringement or Copyright Claims                                                        5

    1. Plaintiff Has Failed to Demonstrate Likelihood of Success with Respect to Patent Infringement
                                                                                        5

    2. Plaintiff Has Failed Establish Likelihood of Success with Respect to Copyright Infringement  9

  B. Plaintiff Cannot Demonstrate that KickStarter's Release of Funds Will Result in Immediate
Irreparable Harm                                                                        10

    1. Plaintiffs Conclusory Assertion of Irreparable Harm Is Insufficient to Meet Its Burden      10

    2. Plaintiffs Novel and Speculative Assertion That Kickstarter Should Be Enjoyed Because
Otherwise Plaintiffs Will Have No Remedy Is False and Not Remotely Irreparable Harm      12

  C. The Balance of Hardships                                                         14

  D. Personal Jurisdiction                                                            16

IV.  CONCLUSION                                                                          18

# TABLE OF AUTHORITIES

***Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty.***, 137 S. Ct. 1773 (2017) ..................... 17

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). ................................................ 17

*Chemical Engineering Corp. v. Marlo, Inc.*, 754 F.2d 331, 334 (Fed. Cir. 1984) ................................. 9

*Clark v. Childs*, 416, F.Supp.3d 221 (E.D. N.Y. 2017) ....................................................... 4, 11

*Computer Associates Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992). ........................................ 10

*Conn. Gen. Life Ins. Co. v. New Images*, 321 F.3d 878, 881 (9th Cir. 2003) ....................................... 13

*Daimler AG v. Bauman*, 571 U.S. 117 (2014). ...................................................................... 17

*Dareltech, LLC v. Xiaomi Inc.*, 2019 WL 3287957, *9 (S.D. N.Y. 2019): ......................................... 18

*Elliot v. Kiesewetter*, 98 F.3d 47 (3d Cir. 1996) .................................................................... 13

*Gucci Am., Inc. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014), ................................................. 13

*Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446 (Fed.Cir.1988) ...................................................... 8

*International Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363 (Fed. Cir. 2004) ...................................... 6

*Laboratoires Perouse, S.A.S. v. W.L. Gore & Assocs., Inc.*, 528 F.Supp.2d 362 (S.D.N.Y.2007) ........... 7

*Lotus Dev. Corp. v. Borland Int'l*, 49 F.3d 807 (1st Cir. 1995) ..................................................... 10

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996). ...................................... 18

*Millipore Corp. v. W.L. Gore & Associates, Inc.*, 2011 WL 5513193 (D.N.J. 2011) ............................. 6

*Munaf v. Geren*, 128 S. Ct. 2207 (2008). ......................................................................... 5

*NAACP v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir. 1995) ................................................. 11

*NewLead Holdings Ltd. v. Ironridge Glob. IV Ltd.*, No. 14-cv-3945, 2014 WL 2619588 (S.D.N.Y. Jun. 11, 2014) ........................................................................................................ 16

*NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371 (Fed. Cir. 2017) ...................................... 18

*Oakley, Inc. v. Sunglass Hut Intern.*, 316 F.3d 1331 (Fed. Cir. 2003) ............................................ 6, 8

*Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597 (S.D.N.Y. 2016). .......................................... 16

*Power Mosfet Technologies, L.L.C. v. Siemens AG*, 378 F.3d 1396 (Fed. Cir. 2004) ............................ 5

*Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216 (Fed. Cir. 1996) ............................... 6

*Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408 (S.D.N.Y.) ................................................................ 7

*Vertigo Media, Inc. v. Earbuds Inc.*, 2021 WL 4806410, *3–*5 (D. Del. 2021) ................................... 11

*Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120 (2d Cir. 1989)........................................... 4

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). ........................................................ 14

Defendant Shenzhen Creality 3D Technology Co., Ltd. ("Creality") submits this memorandum of law in opposition to Plaintiff Artec Europe S.à.r.l.'s (hereinafter, "Artec" or "Plaintiff") application for a temporary restraining order and preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, the U.S. Copyright Act, 17 U.S.C. § 502(a), and the U.S patent laws under title 35.[1]

## I.      PRELIMINARY STATEMENT

This action arises not from any legitimate claim of copyright or patent infringement, but from Artec's desire to abuse the litigation process in an attempt to preclude any and all competition.  Defendant Creality is a start-up company that has used Kickstarter PBC ("Kickstarter") to raise money for the ***development*** of ***new*** 3D scanner technology including equipment and software in Shenzhen, China.  Creality does not now sell, nor has it ever sold, the Kickstarter product in the United States.  The Kickstarter funds are used for the development of products in China for sale throughout the world.  The Kickstarter funds were received from investors all over the world.  The majority of these investments are not from the United States, have nothing to do with the sale or offer for sale of products in the United States, and do not implicate United States patent and/or copyright law in any way.  Artec does not contend and offers no evidence to the contrary.

On the merits, Artec must demonstrate a "clear showing" of likelihood of success on the merits and that it will suffer imminent irreparable harm if an injunction is not granted.  Artec

---

[1] In filing this opposition to Artec's motion, Creality does not waive objections to service of process, jurisdiction or venue.  Creality was not properly notified of this action, nor served with the Complaint or any other materials.  However, to prevent the harm that would be caused if Creality is not permitted to continue its development efforts, counsel makes a limited appearance to oppose the immediate threat of harm to Creality that a restraining order and/or an injunction would impose.

does not come close to meeting its burden. With respect to patent infringement, Artec simply states that infringement exists, and offers no analysis articulating its bases for patent infringement. Artec's bald assertion of patent infringement, supported solely by attorney argument, is insufficient to demonstrate a likelihood of success on the merits. With respect to copyright infringement, Artec similarly fails to demonstrate likelihood of success and offers no evidence whatsoever supporting its claims. Simply put, Artec has failed to identify what it claims has been copied. It relies on the bare supposition of its own client to support a claim that the source code has been copied, and yet cannot identify a single line of copied code. Having provided no analysis of what copyrightable element it claims has been copied, Artec has failed to meet its burden of demonstrating a likelihood of success.

Artec's claim of "irreparable harm" fares no better. Here, Artec first asserts the mere possibility of potential price erosion is sufficient to stop Creality from receiving the money owed them. Artec is wrong on both the law and the facts. As a legal matter, price erosion is generally compensable by monetary damages and there is no evidence to the contrary. As a factual matter, Artec presents no evidence of price erosion, nor any rational basis to believe that such price erosion would occur. For example, Artec discusses the price of its products but it never discusses how those prices have changed despite the presence of the Kickstarter campaign.

Unable to meet its burden, Artec seeks to play on jingoistic fears by smearing Creality as a Chinese company making knock-off products. Yet, the basis for Artec's claims is preposterous. Creality's products look nothing like Artec's products, they were developed entirely independently, and there are no allegations in the Complaint of customer confusion. Despite this, Artec asserts that it is likely to be harmed because individuals associated with Creality are likely to run from the allegations, close up shop, and create a new company to do the

same thing and sell knock-off products again. Artec's rank speculation about supposed potential harm associated with knock-off products has nothing to do with the facts of this case. Put simply, neither Creality nor its co-developer Jimuyida, are fly by night companies seeking to trade on the good will of Artec for a quick gain until caught.

Lastly, Artec must demonstrate that it is likely to succeed on its claim of personal jurisdiction. Yet, Artec's claims of personal jurisdiction fail.

## II.     FACTUAL BACKGROUND

Creality was established in 2014. It focuses on the design, research, and production of 3D printers and 3D printing related products. Declaration of Xun Luo ("Luo Decl.") at ¶ 3. On February 10, 2022, Creality began a Kickstarter campaign to raise money to fund development of a product called the Creality CR-Scan Lizard. *Id.* at ¶ 6. Consistent with the Kickstarter Terms of Service, Creality posted the campaign, not to sell products, but to raise money from backers to design and develop the CR-Scan Lizard product. *Id.* At ¶¶ 6 and 7. Upon successful completion of the development cycle, the Kickstarter funders will receive a CR-Scan Lizard product as a reward. *Id.* However, any attempt to characterize the Kickstarter funding as a sale is inconsistent with the Kickstarter Terms of Use. *Id.* at ¶ 7.

In designing and developing this product, Creality has engaged Shenzhen Jimuyida Technology Co. Ltd. ("Jimuyida") to assist in the design and development. *Id.* at ¶ 5. Through Creality's Kickstarter campaign, Creality was able to receive pledges from 9,472 funders, the majority of whom (5,140) reside outside the United States. *Id.* at ¶ 8. Creality has not sold or shipped any CR-Scan Lizard products in the United States or otherwise. *Id.* at ¶¶ 10 and 11. In addition, Creality has not yet determined its final sale price for the CR-Scan Lizard products, as that determination will be made once development is complete. *Id.* at ¶ 10.

Jimuyida, founded in 2015, is a leading full-stack 3D digital application solution provider in China, with products including 3D scanning hardware, 3D big data service platform, 3D exhibition scene production, and 3D integrated marketing tools.  Declaration of Louwei ("Louwei Decl.) at ¶ 3.  In developing hardware products, including the CR-Scan Lizard, Jimuyida has independently designed the hardware.  *Id.* at ¶ 8.  Similarly, in designing its software, including the "Magic Wand" software, Jimuyida has independently developed the code.  *Id.* at ¶¶ 10 and 11.  Jimuyida never reviewed, analyzed, or copied any Artec software code.  *Id.* at ¶ 10.  In addition, in the development of its software, Jimuyida never employed, talked to, or otherwise engaged any former Artec employees.  *Id.* at ¶¶ 11-13.  Specifically, Jimuyida never employed, talked to, or otherwise engaged Andrey Klimov, Alexandr Lomakin, or Ann Zevelyov.  *Id.* at ¶ 12.  Finally, Jimuyida has never been contacted by Artec regarding any of the copyright or patent allegations that it recently asserted against Creality.  *Id.* at ¶ 14.

## III.  ARGUMENT

"The purpose of a temporary restraining order is to preserve an existing situation in statu[s] quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d Cir. 1989) (citation omitted). "To obtain a temporary restraining order, Artec bears the burden of proof regarding requirements: (1) likelihood of success on the merits; (2) likelihood that the moving party will suffer irreparable harm if a preliminary injunction is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by relief. *Clark v. Childs*, 416, F.Supp.3d 221, 223 (E.D. N.Y. 2017) (citing *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015) and *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010)).  The preliminary relief afforded is an "extraordinary and drastic

remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Clark*, 416, F.Supp.3d at 223 (quoting *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007).

### A. Plaintiff Has Failed to Demonstrate Likelihood of Success on the Merits of Its Patent Infringement or Copyright Claims

"A preliminary injunction is an 'extraordinary and drastic remedy,' it is never awarded as of right. Rather, a party seeking a preliminary injunction must demonstrate, among other things, 'a likelihood of success on the merits.'" *Munaf v. Geren*, 128 S. Ct. 2207, 2219 (2008). With respect to both its patent and copyright infringement claims, Artec falls woefully short of meeting its burden. Indeed, rather than providing a cogent theory of patent or copyright infringement based on evidence, Artec's memorandum resorts to bald speculation and attorney argument. That bald speculation and attorney argument is contradicted by the evidence, including the factual declarations submitted herewith which demonstrate the specious nature of Artec's claims.

### 1. Plaintiff Has Failed to Demonstrate Likelihood of Success with Respect to Patent Infringement

Proving patent infringement is a two-step process. First, the Court must determine the scope and meaning of the claim(s) at issue as a matter of law. *Power Mosfet Technologies, L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406, (Fed. Cir. 2004). Second, the patent owner must provide evidence demonstrating that each limitation of the claim is present in an accused product. *Id.* The process is not different in the context of an injunction. Artec must both identify the constructions it is using and apply those proposed constructions by submitting "evidence that each claim limitation is likely present." *See Oakley, Inc. v. Sunglass Hut Intern.*, 316 F.3d 1331, 1344 (Fed. Cir. 2003) ("The preliminary injunction against Sunglass Hut can be upheld only if Oakley has demonstrated a reasonable likelihood of prevailing on the

infringement issue at trial. … Oakley can meet that burden, once the construction of the relevant claim limitations has been settled, with evidence that each claim limitation is likely present in the accused lenses."); *Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1220 (Fed. Cir. 1996) ("To determine likelihood of success on the patent infringement issue, the court may construe disputed claim language as a matter of law. The court then determines whether the accused device is likely to fall within the scope of the claims.")  Importantly, infringement requires a finding that each and every limitation in a claim is satisfied.  *International Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1369 (Fed. Cir. 2004) ("Comparison of the claims to the accused device requires a factual determination that every claim limitation or its equivalent is found in the accused device.")

Here, Artec falls far short of demonstrating likelihood of success with respect to patent infringement. The argument section of Artec's motion does not even attempt to establish likelihood of success with respect to infringement.  Instead, Artec discusses its allegation of patent infringement generally in the background section, *see* Artec Brief at 3-4, yet Artec fails to identify a single claim that is allegedly infringed, it fails to identify any claim construction, and it identifies **no evidence** of infringement.  In the absence of a proper infringement analysis, consisting of claim construction and evidence demonstrating that each limitation of a properly construed claim is satisfied, a motion for an injunction must be denied.  *See, e.g., Millipore Corp. v. W.L. Gore & Associates, Inc.*, 2011 WL 5513193, *7–*11 (D.N.J. 2011) (finding no likelihood of success due to failure to conduct proper infringement analysis).  Rather incredibly, Artec simply paraphrases a few claim limitations, not even every limitation of any claim, and simply states that such paraphrased claim language is satisfied without so much as a citation. Brief at 4-6.  Attorney argument alone cannot support a claim of likelihood of success.  Here,

claim 1 of the '656 Patent and Claim 12 of the '656 Patent each contain over 10 limitations almost none of which are addressed by Artec. *See* '656 Patent, Claim 1 and Claim 12. There is no analysis, evidence, or explanation provided with respect to the vast majority of claim language, and there is only conclusory analysis with respect to the rest. Conclusory ***expert testimony*** regarding issues of infringement is generally disregarded. *See, e.g., Laboratoires Perouse, S.A.S. v. W.L. Gore & Assocs., Inc*., 528 F.Supp.2d 362, 371 (S.D.N.Y.2007) ("a court should disregard expert testimony that is merely conclusory"); *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 282-83 (S.D.N.Y. 2010) (excluding expert testimony that was "little more than conclusory say-so"). Needless to say, such conclusory attorney argument regarding only a few claim limitations and silence regarding the rest is insufficient to establish likelihood of success.

Tacitly recognizing that it cannot demonstrate likelihood of success, Artec argues that "the evidentiary record establishes sufficiently serious questions going to the merits" such that its motion should be granted despite a lack of likelihood of success. Brief at 14. This argument fares no better as a factual matter or a legal matter. Artec has never seen the product it accuses of infringement, it has no evidence that the limitations are satisfied, and its Brief fails to offer any explanation regarding why any properly construed limitation is satisfied by any scanner. As such, contrary to Artec's assertion, the evidentiary record plainly does not establish a likelihood of success on the record.

As a legal matter, Artec relies on *Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 419 (S.D.N.Y.) and argues that it does not have to show likelihood of success or analyze its infringement allegations if it can demonstrate "sufficiently serious questions" with respect to infringement. Yet, the law of the Second Circuit does not apply. This action concerns patent infringement. As such, Federal Circuit law applies. *Hybritech Inc. v. Abbott Labs.*, 849 F.2d

1446, 1451 n. 12 (Fed.Cir.1988) (applying Federal Circuit law and explaining "[b]ecause the issuance of an injunction pursuant to this section enjoins 'the violation of any right secured by a patent' ... a preliminary injunction of this type, although a procedural matter, involves substantive matters unique to patent law and, therefore, is governed by the law of this court.") The Federal Circuit requires Artec to demonstrate likelihood of success on the merits based on evidence on infringement." *See Oakley, Inc. v. Sunglass Hut Intern*., 316 F.3d 1331, 1344 (Fed. Cir. 2003) ("The preliminary injunction against Sunglass Hut can be upheld ***only if Oakley has demonstrated a reasonable likelihood of prevailing on the infringement issue at trial*.")

There should be no dispute that Artec's bare bones allegations are insufficient to meet this standard. In fact, the Federal Circuit recently granted fees against a party seeking a preliminary injunction where the allegations of infringement were based solely on a self-serving employee declaration:

> No authority anywhere supports the notion that a preliminary injunction against infringement may issue in response to rumors of a threat of infringement. Quite the contrary; a high burden of factual proof must be carried by a plaintiff seeking a preliminary injunction. ***It is inconceivable that Chemical and its counsel could have entertained the belief that, on the basis of the mere rumor, devoid of facts and evidence, presented to the trial court, an injunction could issue, or that a basis now exists for appealing its denial.***

*Chemical Engineering Corp. v. Marlo, Inc.*, 754 F.2d 331, 334 (Fed. Cir. 1984). Here, as in *Chemical Engineering,* there is simply nothing but conclusory statements and innuendo in support of Artec's argument. *See generally,* Complaint at ¶¶ 73-80. As such, Artec has plainly failed to meet its burden with respect to patent infringement.

## 2. Plaintiff Has Failed Establish Likelihood of Success with Respect to Copyright Infringement

Artec's Complaint and its Memorandum in support of a TRO fail to adequately identify any infringement of copyrightable elements. Initially, Artec does not specifically identify what software elements it claims are copyrightable, whether literal (source code or object code) or non-literal (structure, sequence, and organization). Artec's only statement seems to be that Artec owns and sells software that it claims "is copyrightable subject matter under the laws of Luxembourg and the United States." Complaint at ¶¶ 23 and 46. However, in its purported claims of copyright infringement it seems to ping-pong between claims of literal copying and non-literal copying.

Turning first to its purported claims of literal copying, Artec has made allegations of source-code copying based solely on conclusory statements relying almost entirely on supposition and inuendo. And that supposition and inuendo is not derived from an independent source, rather it comes from the self-serving conclusory statements made by Mr. Gusev, an employee of the Plaintiff in this matter. It doesn't appear that Plaintiff's counsel has made any effort to corroborate these bald allegations. There is no independent forensic analysis. There is no testimony from an expert.

Tellingly, almost every one of these allegations in its Complaint is prefaced by the phrases "on information and belief" and "evidence suggests." Complaint at ¶¶ 50, 51, 55, 57, 60, 61. There is no evidence of copying the source code, because there was no copying. No one at Jimuyida engaged with any employee or former employee of Artec regarding the design and development of its software. Louwei Decl. at ¶¶ 10-13. And no one at Jimuyida copied any source code from Artec. *Id*. As a result, these bald allegations of literal copyright infringement fail. Artec's insinuation and supposition is directly contradicted by the Declaration from

Jimuyida which expressly denies any copying under penalty of perjury. As a result, Artec's baseless, and expressly refuted, allegations of literal copying cannot be sufficient to prove infringement, let alone be the basis for a TRO or a Preliminary Injunction.

Turning next to the allegations that can best be described as non-literal, as this Circuit has previously noted, a proper analysis of non-literal elements in software programs requires an analysis of the abstraction-filtration-comparison test as set forth in *Computer Associates Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992). Artec provides no such analysis.

Moreover, the only such non-literal elements identified relate to software interface elements that are generally considered not copyrightable. *Lotus Dev. Corp. v. Borland Int'l*, 49 F.3d 807 (1st Cir. 1995) (finding a menu command hierarchy uncopyrightable). For example, Artec claims that certain menu items, features, and tools are similar. Complaint at 58 and 59. Consistent with *Lotus* and *Altai*, these types of functional menu item features would likely be weeded out in the filtration part of the *Altai* test. Nevertheless, given that no *Altai* analysis has been performed and further given the questionable copyrightability of the identified non-literal elements, it is highly unlikely that a claim of copyright infringement as to the non-literal elements would be found. Regardless, it is clearly not enough to support a claim for a TRO or a Preliminary Injunction.

### B. Plaintiff Cannot Demonstrate that KickStarter's Release of Funds Will Result in Immediate Irreparable Harm

#### 1. Plaintiffs Conclusory Assertion of Irreparable Harm Is Insufficient to Meet Its Burden

A showing of irreparable harm is considered the "single most important prerequisite" in satisfying the temporary restraining order standard. *Clark*, 416, F.Supp.3d at 223 (citing *Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.*, 143 F.3d 688, 696 (2d Cir. 1998)). Indeed, "[t]his element is so critical to the Court's inquiry that the Court need not reach

any of the other requirements necessary for the grant of injunctive relief where irreparable harm has not been demonstrated." *Clark*, 416, F.Supp.3d at 223 (*citing Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (recognizing "the moving party must first demonstrate [irreparable harm] before the other requirements for the issuance of an injunction will be considered.") "A moving party must show that the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." *NAACP v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir. 1995) (citation omitted).

In addressing "irreparable harm," Artec's memorandum cites ***not a single piece of evidence.*** This alone renders their motion lacking. *See Clark*, 416, F.Supp.3d at 223 (finding contention of irreparable harm "incredible in light of Plaintiff's abject failure to adduce any evidence of harm whatsoever.") With respect to supposed irreparable harm, Artec asserts that price erosion is possible because Artec and Creality both sell 3-D scanners. In particular, Artec's attorneys suggest that erosion is possible because Artec sells scanners for between $29,000 and $9,800 and Creality sells scanners for $400. That argument is not only unsupported speculation, but price erosion is a type of monetary harm compensable by money damages in the absence of contrary evidence. *Vertigo Media, Inc. v. Earbuds Inc.*, 2021 WL 4806410, *3–*5 (D. Del. 2021) (explaining that irreparable harm based on price erosion failed because plaintiff failed to offer "concrete evidence of price erosion" and "evidence that damage caused by such price erosion could not be quantified.") Here, regardless of Artec's naked claims of price erosion there is no evidence that such price erosion "could not be quantified."

Evidence of price erosion, let alone strong evidence, does not exist in this case. First, there is no evidence regarding at what price Creality will ultimately choose to sell its product.

Luo Decl. at ¶ 10. There is no evidence that the price of Artec's products has been or will be affected in any way by the Kickstarter campaign. There is similarly no evidence that the products compete nor any evidence of customer confusion. Indeed, the suggestion that a customer in the market for Artec's Leo scanner which sells for $29,000, would instead potentially invest $400 in Creality does not appear credible. Artec's entire argument is based on the speculative notion that whenever two products are in the same general market area, price erosion can be presumed if one product is sold for less than the other. The 3-D scanner market is not a new market or new technology. Indeed, Artec's 3-D scanners have been admittedly out for over a decade and Artec concedes that it is merely one of a number of existing competitors in the market space. That is simply not the law. Artec's failure to offer anything other than rank speculation that price erosion is a possibility is insufficient to support its request for a temporary restraining order. *See Vertigo*, 2021 WL 4806410 at *3–*5.

Lastly, Artec's price erosion appears to only concern its allegedly patented system. Artec nowhere articulates what the "price" of its software is, how such "price" could be eroded or anything else about alleged irreparable harm or price erosion as related to its claim of copyright infringement.

**2. Plaintiff's Novel and Speculative Assertion That Kickstarter Should Be Enjoined Because Otherwise Plaintiff Will Have No Remedy Is False and Not Remotely Irreparable Harm**

Artec repeatedly emphasizes that Creality, a startup company, seeking to openly raise money to develop new products for the worldwide market, is based in China or a "Chinese company." Based on this, Artec wants the Court to presume Creality is infringing without evidence, and that an injunction is necessary to prevent Creality from "creating a new infringing scanner and market it through Kickstarter or another crowdfunding site." Of course, the mere fact that Creality is a Chinese company does not mean it has different rights in a United States court of law than Artec, a

Luxembourg company. Indeed, Creality is not some fly-by-night company seeking to engage in the sale of counterfeit goods only to run and set up shop on a different corner when caught. *See* Luo Decl. at ¶ 3. Artec's attempt to portray it as such is merely a mask for its utter lack of evidence.

Here, Artec recognizes that its requested injunction is not against Creality itself. Instead, Artec urges that Creality should not receive the investment funds it is lawfully entitled to because some portion of those funds may be used fund the development of an infringing product. Yet, as demonstrated by the cases relied on by Artec, in the rare cases that a district court will only freeze the assets of a company, almost all concern the situation where the assets were achieved as a result of criminal fraud or counterfeiting and/or to prevent dissipation of assets *where the assets themselves are in dispute. See Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 132 (2d Cir. 2014), (holding that district court has the equitable authority to grant a preliminary injunction freezing defendants' assets in a counterfeiting case that sought the equitable remedy of accounting of profits); *Conn. Gen. Life Ins. Co. v. New Images*, 321 F.3d 878, 881 (9th Cir. 2003) (upholding a preliminary injunction to freeze defendant's assets where defendant was involved in an insurance fraud scheme); *Elliot v. Kiesewetter*, 98 F.3d 47, 58 (3d Cir. 1996) (dispute concerned beneficiaries to family assets and dispute concerned fraudulent conveyance of those assets).[2] The claims at issue do not concern fraud, the products are not knock off products, and there is no crime alleged. Indeed, the products themselves are not generally similar and there is no evidence of customer confusion.

Lastly, the suggestion that Artec will have no remedy against Creality if Creality infringes in the United States because Creality is not located in the United States is false. United States patent and copyright laws protect Artec from any act of infringement performed by

---

[2] *U.S. ex Rel. Rahman v. Oncology Associates*, 198 F.3d 489, 499 (4th Cir. 1999) (preliminary injunction freezing defendant's assets was reasonable where the assets at issue were derived from profits made by defendants through allegedly fraudulent and unlawful conduct).

Creality in this country. If Creality performs act of infringement in this country, it will be subject to liability in this country. Artec does not argue to the contrary. Instead, Artec appears to suggest that because Creality is a Chinese company it will likely take the funds from Kickstarter disappear and reemerge as a new company selling new scanners, effectively depriving Artec of a remedy. *See* Brief at 12 ("A temporary injunction is necessary to prevent irreparable injury for another reason. Creality is a Chinese company that distributes its goods throughout the country, yet has no footprint in the United States, no registered agent for service of process, or identifiable assets in the United States other than the funds currently in Kickstarter's possession. If Kickstarter distributes those funds to Creality prior to the resolution of this dispute—it will not only fund and fuel Creality's patent and copyright infringement— Artec will have no way to hold Creality accountable for these violations.") The mere fact that an entity ***could*** be engaged in such underhanded practices is too slender a reed to hoist Artec's claims for irreparable harm.

## C.      The Balance of Hardships

In deciding a motion for a preliminary injunction, the Court must assess the relative hardships faced by the parties. This assessment involves balancing the injury faced by the moving party against the injury that would be sustained by the opposing party if the injunction were granted. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Here, as detailed above, the hardship allegedly faced by Plainitff is almost entirely unsupported speculation. In contrast, the harm faced by a company such as Creality will be dramatic.

Creality has been seeking investments to raise money to fund the development of the unfinished Creality CR-Scan Lizard. Luo Decl. at ¶ 6. As is common with Kickstarter, the campaign is such that individuals pay for product development and, to the extent a product

design is finalized, early funders receive, as a reward, an early version of the product to the extent products are produced. As with any speculative development project, there is no guarantee of product delivery or production with respect to such projects. *Id*. at ¶¶ 6 and 7. Similarly, there should be no dispute that funds received from Kickstarter are not for the sale of products. *Id*. at ¶ 7 ("[B]ackers must understand that they're not buying something when they back a project—they're helping to create something new, not ordering something that already exists").

As part of the Kickstarter campaign, Creality was able to raise close to $4M USD from backers throughout the world for the development of the CR-Scan Lizard product. *Id*. at ¶ 9. If it cannot receive the investment funds it will not be able to produce goods for sale throughout the world. This would no doubt have a severe negative impact on Creality. The wide-ranging effect to stop Creality from developing and selling goods throughout the world is particularly harmful. The majority of individuals who invested in the development of the Creality CR-Lizard project do not reside in the United States. *Id*. at ¶ 8. To the extent Creality sells products outside the United States, those sales are simply not implicated by United States law of copyright and patent. In other words, Artec seeks to enjoin Creality from selling both software and scanners that ***could*** potentially infringe (if sold in the United States) and from selling goods ***outside*** the United States ***that would not*** infringe absent highly unusual circumstances that are not alleged.

Artec's request to freeze Creality's funds for the duration of the litigation (which could be years) would have an obvious and drastic dampening effect on Creality's activities. Creality is in the middle of its product cycle and the funds are to finish developing the 3-D scanner, which is not complete. This harm associated with stopping Creality's development efforts must be weighed against the supposed harm to Artec. There is no such harm. In essence, Artec

presumes Creality will somehow infringe while evading jurisdiction in the United States, that it infringes, and that any judgment obtained against Creality will be useless because Creality will not abide by any judgment from the Court. Artec's argument that Creality will infringe while somehow avoiding repercussions in the United States is unsupported speculative nonsense and not a legitimate articulation of a real harm likely to befall Artec. When the real harm to Creality is weighed against the speculative unsupported harm identified by Artec, the balance of hardships counsels against the granting of a temporary restraining order. *Tradescape.com*, 77 F. Supp. 2d at 411 ("[T]he balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided").

### D. Personal Jurisdiction

A district court is "powerless to proceed" on a motion for preliminary injunction "in the absence of personal jurisdiction." *Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 611 (S.D.N.Y. 2016). "In order to obtain a preliminary injunction, a plaintiff must make more than a 'prima facie showing of jurisdiction.'" *NewLead Holdings Ltd. v. Ironridge Glob. IV Ltd.*, No. 14-cv-3945, 2014 WL 2619588, at *3 (S.D.N.Y. Jun. 11, 2014) (quoting *Weitzman v. Stein*, 897 F.2d 653, 659 (2d Cir. 1990)). Here, Artec will be unable to establish personal jurisdiction over Creality.

A court has general (or "all-purpose") jurisdiction over a party, it may "hear any and all claims against [the party]." *Daimler AG v. Bauman*, 571 U.S. 117, 122, 126 (2014). For a court to have general jurisdiction over a non-US corporation, the corporation's "affiliations with the State [must be] so continuous and systematic 'as to render [it] essentially at home in the forum State.'" *Id.* at 139. The "paradigm" forums for all-purpose jurisdiction are courts in the state where the party is incorporated or in the state where it has its principal place of business. *Id.* at

137. As Creality is not incorporated in the United States and does not have a principal place of business here, it will not be subject to general, all-purpose jurisdiction anywhere in the United States. *See* Luo Decl. at ¶ 3.

Specific or "conduct-linked" jurisdiction permits judicial authority to extend to any issues that arise out of or relate to the party's contacts with the forum state, which must create a "substantial connection" with the forum state. *See Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1780 (2017) ("In order for a state court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.' In other words, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or occurrence that takes place in the forum State and is therefore subject to the State's regulation.'").

Asserting specific personal jurisdiction over parties in civil actions requires a two-step analysis. First, the party must have "'purposefully directed' his activities at … the forum," and the litigation must "'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Here, Artec will be unable to establish personal jurisdiction at least because there was no conduct "directed" to this forum from which the patent infringement and/or copyright infringement claim arises. Indeed, Artec largely bases its jurisdictional argument on the false assumption that the accused products were shipped to the United States. Brief at 3. They were not. Luo Decl. at ¶ 11. Otherwise, Plaintiff argues that the accused scanners were generally "marketed" in this district. However, the Kickstarter website is not operated by Creality and, even if it were, personal jurisdiction cannot be established based on the mere fact that a website allegedly markets a product before it is developed, and that website is accessible in every state. *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1378-79 (Fed. Cir. 2017)

(accused infringer's interactive website, with a drop-down menu that allowed users to select Kansas as delivery address, did not support exercising personal jurisdiction where there were no sales of the accused product in the forum). Artec's half-hearted stream of commerce argument fails. As recently explained in *Dareltech, LLC v. Xiaomi Inc.*, 2019 WL 3287957, *9 (S.D.N.Y. 2019):

> Dareltech's second argument for jurisdiction is based on an argued availability of infringing products on the websites of third-parties, and a claim that a defendant corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" submits itself to the state's jurisdiction. Even if, because there has been no evidentiary hearing, I were to accept plaintiff's contention as true, there is no jurisdiction.

*See, e.g., Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). Here there is no need to analyze whether jurisdiction ***could*** exist if products were distributed into the stream of commerce and such products wound up in New York state because no such products were ever injected into the stream of commerce in the United States or anywhere else. *See* Luo Decl. at ¶ 11.

## IV. CONCLUSION

For at least all the foregoing reasons, Creality requests that the Court deny Artec's motion for a temporary restraining order and a preliminary injunction.

Dated: April 1, 2022

*/s/ Michael DeVincenzo*
Michael DeVincenzo
KING & WOOD MALLESONS LLP
500 5th Avenue, 50th Floor
New York, New York 10110
(212) 319-4755
michael.devincenzo@us.kwm.com

*Counsel for Defendant Shenzhen Creality 3D Technology Co., LTD*