UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTEC EUROPE S.À.R.L.,<br><br>Plaintiff,<br><br>v.<br><br>SHENZHEN CREALITY 3D TECHNOLOGY CO., LTD., AND KICKSTARTER PBC,<br><br>Defendants. | Case No. 1:22-1676 (WFK)(VMS)<br><br>**CORRECTED REPLY IN SUPPORT OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## **TABLE OF CONTENTS**

                                                                                                                  **Page**

I.     Creality's opposition rests on factual assertions that are demonstrably false.......................1

II.    This Court has Jurisdiction over both Defendants. ................................................................2

III.   Failure to enjoin Kickstarter will cause Irreparable Harm....................................................3

IV.   Likelihood of Success on the Merits......................................................................................8

          A.     Direct Infringement..................................................................................................8

                   1.     Patent..............................................................................................................8

                   2.     Software Infringement ..................................................................................9

          B.     Contributory Infringement against Kickstarter......................................................10

V.    Balance of Hardships. ..........................................................................................................12

**I.       Creality's opposition rests on factual assertions that are demonstrably false.**

Creality (assisted by Kickstarter) bases its defense on a series of gross misrepresentations. Creality claims that the funds it raised on Kickstarter are to *develop* a *new* scanner that does not yet exist—the CR-Scan Lizard. It claims "Creality *has not sold or shipped any CR Scan Lizard products in the United States or otherwise*."[1] Rather, the Lizard, it claims, "is in the middle of its product cycle and the funds are to finish developing the 3-D scanner, which is not complete."[2] According to Creality, Artec filed a meritless lawsuit to "abuse the litigation process in an attempt to preclude any and all competition." None of this is true.

In reality, however, a web-search reveals detailed hands-on reviews of the new Lizard scanner by technology sites in the USA, like Tom's Hardware.[3] There are video reviews from apparent American third-parties on YouTube.[4] And a large U.S. technology retailer, Newegg.com, is now offering the new Creality CR Scan Lizard scanner for sale at a price of $520 (identified as "in stock" and shipping from China) on their site.[5]

Creality admits that Jimuyida develops Creality scanners and software, offering support for Artec's motion. But it flatly asserts that "Jimuyida never reviewed, analyzed, or copied any Artec software code."[6] It goes on to say that Jimuyida "never employed, talked to, or otherwise

---

[1] Creality Opposition, p. 3.

[2] *Id.* at 15.

[3] *See* Tom's Hardware, CR-Scan Lizard Review, https://www.tomshardware.com/reviews/creality-cr-scan-lizard-3d-scanner (last verified 4/5/2022).

[4] *See, e.g.*, Youtube Review of Creality CR-Scan Lizard by user GomeowCreations https://www.youtube.com/watch?v=GBIcqyLaEH4 (last verified, 4/5/2022); *see also*, https://www.youtube.com/c/GomeowCreations/about (identifying that user, GomeowCreations, is located in the United States).

[5] Go to www.newegg.com, type in "Creality CR-Scan Lizard" in search field and press enter (last verified, 4/5/2022).

[6] Creality Opposition, *p.* 4.

engaged any former Artec employees."[7] And it declares that "Jimuyida has never been contacted by Artec regarding any of the copyright or patent allegations that it recently asserted against Creality."[8]

These claims are demonstrably false. Jimuyida and Artec have had a checkered past, beginning in 2017 when Jimuyida began renting large numbers of Artec scanners,[9] and then copying Artec's scanner and software—forcing Artec to send a notarized cease-and-desist letter in 2018.[10] Most importantly, perhaps, Creality's assertion that Jimuyida never reviewed Artec's software—much less analyzed or copied it—is demonstrably untrue. In a *meeting recorded* by Artec's investigator (posing as a potential distributor) with Jimuyida Chief Technology Officer, Mr. Yao, on June 27, 2018 in Wuhan, Mr. Yao confessed to purchasing and analyzing Artec's Eva scanner and software for R&D purposes in developing the Magic Wand.[11]

## II.  This Court has Jurisdiction over both Defendants.

This Court has personal jurisdiction over these claims because Creality contracted with Kickstarter, a company headquartered in Brooklyn, New York, to raise funds—collected *by Kickstarter* from *Kickstarter members*—in exchange for Creality's promise to send them each a Lizard scanner and software. Under that agreement, the Creality Lizard scanner was marketed on Kickstarter's website and Kickstarter collected over $4 million. The terms of use between Kickstarter and Creality specifically require the parties to litigate in the State of New York. Creality cannot now argue that no conduct was directed at the forum of New York.

---

[7] *Id.*

[8] *Id.*

[9] Declaration of Alexander Osipov [Doc. 28-1].

[10] *See* Declaration of Alexander Osipov, at Attachment 1 [Doc. 28-1].

[11] *See* Declaration of Hailong Tang [Doc. 26-1].

2

Creality's contacts with New York in contracting and dealing with Kickstarter were both substantial and purposeful. And Plaintiff's claims arise out of those contacts—as does the temporary relief sought here. Artec seeks a temporary injunction to prevent *Kickstarter* from disbursing the funds to Creality. In short, Creality purposely availed itself of the benefits of New York and could anticipate being hailed into court in Brooklyn, New York to face claims arising out of those activities. Personal jurisdiction over Creality is proper.

Creality admits that about 4000 of its backers reside in the United States and does not dispute that at least some of these are located in New York. This provides an additional basis for jurisdiction.[12] However, it does matter in what country the Kickstarter accountholders who "backed" the campaign reside or whether the transactions are characterized as sales or as mere exchanges of scanners for money. Either way, Creality chose to raise these funds with and through its agreement with Kickstarter, in Brooklyn, New York. Each of those global citizens agreed to pay Kickstarter, in New York, for a Creality scanner. And this lawsuit arises from that campaign.

### III. Failure to enjoin Kickstarter will cause Irreparable Harm.

Artec seeks an opportunity to (i) have its claims against Creality and Kickstarter decided *on the merits* (ii) by a neutral forum with the power to award meaningful relief. The TRO allows Artec to do so while mitigating the impending infringement by a distribution of products which Creality and Kickstarter have assured their backers will continue.

If this Court does not enjoin Kickstarter from distributing Lizard campaign funds to Creality, Artec will face irreparable harm for *many reasons*:

---

[12] *See, e.g., Imation Corp. v. Sanho Corp.*, No. CV 15-1883 (JRT/JSM), 2016 WL 4179363, at *3 (D. Minn. Aug. 5, 2016) (holding that jurisdiction was proper against manufacturer based on its sale of product on Kickstarter to one person in the forum).

3

1. The funds disbursed will go to sponsor the manufacturing and distribution infringing goods to 9000 people—half of whom, according to Creality, are in the USA—ensuring more infringement of Artec's IP rights, eroding the price consumers expect to pay for goods created using Artec's technology and causing Artec to lose market share.

2. Once the funds are transferred to China, Artec will have no way to enforce a money judgment against Creality or compel its meaningful participation in these proceedings.

3. If this Court does not restrain Kickstarter from disbursing the Lizard campaign funds to Creality, Artec will have no remedy available against Creality for any copyright infringement arising for the sale of infringing products in the U.S.

4. Creality has indicated that it will not meaningfully participate in this process as both Kickstarter and Creality have independently already assured their members and backers that each will get the product no matter what the status of this litigation after the initial lawsuit and court order became public. This public correspondence creates an inference that if Creality receives the money, it will continue to distribute the products no matter what this Court does.[13]

"Irreparable harm comprises 'the harm that (a) occurs to the parties' legal interests *and* (b) *cannot be remedied after a final adjudication*, whether by damages *or* a permanent injunction.'"[14] In the copyright context, that legal interest "is the protection of the commercial interest of the artist/author."[15] The "[h]arm might be irremediable, or irreparable, for many reasons, including that a loss is *difficult to replace* or *difficult to measure*, or that it is a loss that one should not be

---

[13] *See* Declaration of Amanda K. Greenspon, Exs. C-1, C-2 [Doc. 27-2].
[14] *CJ Prod. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 141 (E.D.N.Y. 2011) (*citing Salinger*, 607 F.3d at 81) (emphasis added).
[15] *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010).

expected to suffer." Indeed, courts "have tended to issue injunctions in this context because 'to prove the loss of sales due to infringement is ... notoriously difficult.'"[16] Remedy that can't be enforced is not adequate.

Under the Berne Convention, Artec must seek relief for copyright infringement that occurs within the United States in a United States forum. Yet "China does not enforce judgments from the United States" because there is no treaty or reciprocity between the two countries.[17] And Creality has no other assets in the United States other than the $4 million, no headquarters here, and no registered agent for service of process. As a result, if funds are transferred to Creality, Artec will be powerless to enforce any award for Creality's infringement. As a practical matter, "[a] judgment that cannot be enforced is an incomplete, and thus ineffective, remedy."[18] This Court has granted equitable relief in similar situations in the form of a writ of attachment, for this reason alone.[19]

---

[16] *Id.* (emphasis added).

[17] *Bvba v. Universal Travel Grp., Inc.*, Civil Action No. 11-2164, at *24 (D.N.J. June 26, 2017) ("As noted, China does not enforce judgments from the United States."); *In re PPDAI Grp. Sec. Litig.*, 18-CV-6716 (TAM), at *21 (E.D.N.Y. Jan. 21, 2022) (citing argument with approval: "Plaintiffs point to the fact that '[j]udgments obtained in the U.S. are not necessarily enforceable in China and, in fact, typically are not enforceable there,' which leads to a 'substantial risk that Plaintiffs would be unable to collect any judgment even if they prevailed in the [a]ctions.'"); *see also* Jie (Jeanne) Huang, *Enforcing Foreign Monetary Judgments in China: Breakthroughs, Challenges, and Solutions in the Context of "One Belt One Road"*, 51 Geo. Wash. Int'l L. Rev. 105, 114 (2019) ("Eight years after Hubei Gezhouba Sanlian, a Chinese court, for the first time in its history, recognized and enforced a U.S. commercial monetary judgment based upon reciprocity."); *see also* Articles 280 and 282 of the CPL and Chapter 22 of the SPC Judicial Interpretation of the CPL.

[18] *Sarei v. Rio Tinto PLC*, 650 F. Supp. 2d 1004, 1014 n.17 (C.D. Cal. 2009).

[19] *Adler v. Solar Power, Inc.,* No. 16 CV 1635-LLS-GWG, 2019 WL 2210661, at *1 (S.D.N.Y. May 22, 2019) (granting attachment against chinese entity defendant following a partial summary judgment finding where "it would be difficult to enforce judgments in the United States or the United Kingdom against SPI and its directors and managers because its assets and senior personnel were primarily located in the People's Republic of China and the company is registered in the Cayman Islands, neither country having treaty mechanisms to enforce U.S. judgments.").

5

Additionally, as the Second Circuit explained in *Salinger*, pursuant to the Supreme Court's decision in *Ebay*, Courts no longer presume irreparable harm in copyright cases.[20] Rather, the Court "must actually consider *the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits*, paying particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for that injury . . . ."[21]

Far from discouraging Courts from awarding temporary injunctions in copyright cases, however, the *Salinger* court explained that "the historical tendency to issue preliminary injunctions readily in copyright cases may reflect just that": namely, that irreparable harm is generally present.[22] And while courts should no longer grant preliminary injunctions in copyright cases without applying the traditional 4-part test, "[w]hen it comes to discerning and applying those standards, in this area as others, a page of history is worth a volume of logic."[23]

The Defendants argue that a preliminary injunction is unnecessary here because any harm caused by Kickstarter's "release of campaign funds to Creality" could be fully compensated through an award of money damages.[24] According to Creality, Artec failed to furnish sufficiently concrete *evidence* of the harm to establish that it is irreparable, beyond the pricing information and "self-serving" statements of Artec's employee to establish an irreparable harm. Creality assigns to Artec an impossible task. Artec cannot calculate the harm it has or will suffer when Creality

---

[20] *Salinger v. Colting*, 607 F.3d 68, 80, 82 (2d Cir. 2010). ("After *eBay*, however, courts must not simply presume irreparable harm. Rather, plaintiffs must show that, on the facts of their case, the failure to issue an injunction would actually cause irreparable harm. This is not to say that most copyright plaintiffs who have shown a likelihood of success on the merits would not be irreparably harmed absent preliminary injunctive relief. As an empirical matter, that may well be the case, and the historical tendency to issue preliminary injunctions readily in copyright cases may reflect just that.").

[21] *Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010).

[22] *Id.* at 82.

[23] *Id.*

[24] Kickstarter Opposition, page 1.

infringes its copyright by distributing low-cost goods using Artec's proprietary technology—not because it suffers no harm—but because there are too many factors at play to meaningfully calculate into damages.[25] This is precisely why lost sales, loss of market share, and price erosion resulting from infringement are irreparable injuries that warrant a preliminary injunction.[26]

Creality further complains that "Artec nowhere articulates what the 'price' of its software is, how such 'price' could be eroded or anything else about alleged irreparable harm or price erosion as related to its claim of copyright infringement."[27] That information is freely available on Artec's website: An annual license to Artec Studio costs $1,200 yearly (with free upgrades to the latest version).[28] A lifetime subscription to the current version of Artec Studio (without annual upgrades thereafter) costs a one-time payment $2,900.[29] Given that Creality bundles its infringing software at no separate cost with it is scanners, it should be self-evident "how such 'price' could be eroded."

Kickstarter argues that stopping Kickstarter from transferring the proceeds to Creality will not prevent the harm because "the sales at issue have already happened. Stopping the transfer of campaign funds to Creality will not prevent any infringement."[30] It is unclear why Kickstarter assumes that Creality does *not* need to capitalize its project to manufacture and distribute the Lizard—and will proceed to send the same number of scanners and accompanying software to backers, regardless of whether any funds are transferred. Indeed, both Kickstarter and Creality

---

[25] *See, e.g., Register.com Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004).

[26] *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) ("And courts have tended to issue injunctions in this context because "to prove the loss of sales due to infringement is ... notoriously difficult.").

[27] Creality Opposition, p. 12.

[28] https://www.artec3d.com/prices#block-bean-store-artec-software

[29] *Id.*

[30] Kickstarter Opposition, p. 3-4.

7

describe the $4 million raised—not as simple sales—but as "campaign contributions" to fund the distribution of a product that has not yet been manufactured *en masse*. If true, depriving the campaign of funds temporarily should at very least reduce the campaign's capacity to manufacture and distribute of the Lizard scanner and its infringing software pending expedited discovery.

### IV.     Likelihood of Success on the Merits.

In the Second Circuit, "[a] movant seeking a preliminary injunction must demonstrate: "1) irreparable harm absent injunctive relief; 2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and 3) that the public's interest weighs in favor of granting an injunction."[31] "The burden rests on the moving party to establish these elements by a preponderance of the evidence."[32]

####    A.     Direct Infringement

#####     1.     Patent

Creality argues that there are 'only general allegations' regarding patent infringement in the motion for TRO and preliminary injunction. This is a red herring. Artec's motion for temporary injunction rests on its copyright infringement claim.

Artec's claim that Creality's CR-Scan 01 scanner infringes Artec's '656 patent is properly alleged in the complaint and *robustly* supported by the evidence—including, first and foremost, the CR-Scan 01 scanner itself.[33]

---

[31] *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112 (VSB), 2015 WL 13840969, at *7 (S.D.N.Y. Mar. 16, 2015) (citing *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010)).

[32] *Id.*

[33] *See* Declaration of Gleb Gusev, at attached Claim Chart [Doc. 26-2].

Patent infringement receives shorter shrift in Artec's motion for temporary injunction only because Kickstarter is not selling the infringing Creality device (the CR-Scan 01) that Artec has inspected and determined to its satisfaction infringes its '656 patent. Rather, Kickstarter is selling Creality's second generation "Lizard" scanner, of which Artec admittedly does not yet have an example. Thus, Artec's motion for temporary injunction focuses instead on Creality's infringement of Artec's copyrights through its use of the Creality's CR Studio software that accompanies the Lizard. *However*, the fact that Creality's new Lizard scanner relies on Creality's same CR Studio software to operate (like its predecessor, the CR-Scan 01) suggests that the Lizard (like its predecessor, the CR-Scan 01) uses the same Artec patented method of measuring the shape of the object using structured light in violation of Artec's exclusive rights.

### 2. Software Infringement

Creality complains that Artec's allegations rely on "conclusory statements made by Mr. Gusev, an employee of the plaintiff in this matter. . . . There is no independent forensic analysis. There is no testimony from an expert."[34] While the compressed timeline between our discovery of the issues and deadline for filing did not allow us to attach an expert report to our opening brief,[35] we have attached the Declaration of independent expert in computer science and source code analysis, George Edwards, PH.D, attached hereto as Ex. D. Among other points of note, anomalous click-and-drag misbehavior within the software is of particular importance "because it is peculiar,

---

[34] Creality Opposition, p. 9.

[35] Due to time constraints, any analysis into probability of success in copyright cases is necessarily imperfect. *See Salinger v. Colting*, 607 F.3d 68, 80–81 (2d Cir. 2010) ("The first consideration in the preliminary injunction analysis is the probability of success on the merits. In gauging this, we emphasize that courts should be particularly cognizant of the difficulty of predicting the merits of a copyright claim at a preliminary injunction hearing. See Lemley & Volokh, supra, at 201–02 ("[When deciding whether to grant a TRO or a preliminary injunction,] the judge has limited time for contemplation. The parties have limited time for briefing. Preparation *81 for a typical copyright trial, even a bench trial, generally takes many months...").

difficult to detect, and undesirable." As a result, "[t]he most plausible explanation for the observed misbehavior is that at least some source code was copied from Artec Studio into Magic Wand and CR Studio."[36]

### B. Contributory Infringement against Kickstarter

To state a claim for contributory infringement, a plaintiff must allege facts that a defendant "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.[37] "As to the first element of a contributory infringement claim, knowledge may be actual or constructive."[38] "[A] cease and desist letter necessarily puts a defendant on notice that its conduct may constitute infringement."[39]

As to the material contribution element, two types of activity lead to contributory liability:

> "(i) personal conduct that encourages or assists the infringement;" or "(ii) provision of machinery or goods that facilitate the infringement." Furthermore, any "authorization or assistance must bear a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer." "Advertising or otherwise promoting an infringing product or service may be sufficient to satisfy the material contribution prong" of a contributory infringement claim. [40]

Kickstarter claims that it cannot have knowingly contributed to the infringement because it received Artec's cease-and-desist letter on March 11 and the Creality Lizard campaign ended the following day. Relying *Business Casual Holdings, LLC v. YouTube*, Kickstarter concludes that,

---

[36] Declaration of George Edwards, at § 6.1.

[37] *Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376, 383 (S.D.N.Y. 2016).

[38] *Id.* at 383.

[39] *Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 295 (E.D.N.Y. 2015).

[40] *Id.* at 384 (internal citations omitted).

like the video-hosting platform defendant, Youtube, it cannot have knowingly contributed to the infringement.[41]

Unlike the defendant in *YouTube*, when Kickstarter became aware of the cease and desist letter, it did not immediately thereafter take all reasonable steps necessary to ensure that the infringement does not occur. It did not, for example, seek additional information from Artec regarding the dispute, halting the campaign pending resolution of the dispute, declining to collect the funds, refunding accountholders that it had billed, or agreeing to place the funds in escrow.

On the contrary, Kickstarter did not respond to Artec's letter or emails until Artec filed a Complaint and requested a TRO. Only after the Court issued an Order to Show Cause, Kickstarter then placed a notice on the Creality page notifying accountholders that there was an IP dispute involving the project. But Kickstarter *then separately emailed backers*, reassuring them that "the project already ended successfully," their "*pledge hasn't been affected*," and Creality "should be able to move forward . . . and send any unfulfilled rewards":[42]

> The law requires that we remove the project from public view until the dispute is resolved (please see our Copyright Policy and Trademark Policy, for more info). Because the project already ended successfully, your pledge hasn't been affected. The creator should still be able to move forward with the project (and send any unfulfilled rewards). If you have any questions, though, you can still message the creator from the project page.

In other words, far from taking steps necessary to *prevent* the alleged infringement, after receiving notice of the infringement, Kickstarter took numerous active steps to advance its cause, including allowing the campaign to end, collecting roughly $4 million from backers over the course of the following 14 days, ignoring Artec's emails and emailing backers to reassure them

---

[41] *Bus. Casual Holdings v. YouTube, LLC*, 21-cv-3610 (JGK), at *13 (S.D.N.Y. Mar. 21, 2022) ("To plead a claim of *contributory* copyright infringement, the plaintiff must allege that the defendant had actual or constructive knowledge of, and participated in, a direct infringer's infringing conduct.

[42] *See* Declaration of Amanda Greenspon [Doc. 28-2].

that they should receive their scanners no matter the outcome of underlying merits of these allegations of infringement.

Kickstarter thus cannot claim, like the video-sharing giant in *Youtube*, that all acts of infringement occurred prior its knowledge of the alleged infringement. The copyright infringement at issue here does not occurs when Creality sends the infringing goods to Kickstarter's users who download the infringing CR Studio software.

Kickstarter incorrectly describes itself as a "passive online platform that connects creators and investors" that has "only been included as a party here because it provided a forum for Creality's product campaign."[43] In contrast to a classic take-down notice case under the DMCA, Kickstarter's involvement in its projects goes well beyond passively providing a space in which infringement happens to occur.

## V.    Balance of Hardships.

Creality argues that "the hardship allegedly faced by plaintiff is almost entirely unsupported speculation" while the harm faced by "Creality will be dramatic."[44] We reject both characterizations.

The parties and Court could agree to a highly expedited discovery so that the parties could reach the merits of their infringement claims in a matter of weeks to minimize any financial impact

---

[43] Kickstarter Opposition, page 1.

[44] Creality Opposition, p. 14.

on Creality. The parties and Court can work together to minimize financial hardship. Litigants should be afforded an opportunity to have their claims decided by a neutral court empowered to grant relief. Artec should not be denied that opportunity.

April 7, 2022                                                   Respectfully submitted,

/s/  Richard de Bodo
Barry S. Alexander
**SCHNADER HARRISON SEGAL & LEWIS LLP**
140 Broadway, Suite 3100
New York, New York 10005-1101
Telephone:  (212) 973-8099
balexander@schnader.com

Richard de Bodo (*pro hac vice app. pending*)
CA State Bar No. 128199
Charles T. Zerner *(Pro hac vice app. pending)*
LA State Bar No. 34832
**MUNCK WILSON MANDALA, LLP**
1925 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone:  (310) 287-0377
rdebodo@munckwilson.com
czerner@munckwilson.com

Attorneys for Plaintiff
ARTEC EUROPE S.À.R.L.