UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTEC EUROPE S.A.R.L.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SHENZHEN CREALITY 3D<br>TECHNOLOGY CO., LTD.,<br>AND KICKSTARTER, PBC,<br><br><br><br>　　　　　Defendants. | 1:22-1676 (WFK)(VMS)<br><br>**SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF ARTEC EUROPE S.A.R.L.'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT 1

II. ARGUMENT 2

   A. Artec Fails to Meet Its Burden of Demonstrating Likelihood of Success ........................... 3

      1. Artec's Copyright Claim is Unlikely to Succeed 3

      2. Artec's Patent Claim is Not Relied Upon and is Unlikely to Succeed 6

   B. Artec Has Not and Cannot Show Irreparable Harm............................................................. 7

      1. Artec Has Failed to Demonstrate Any Irreparable Harm 7

      2. The Fact That Creality is a Chinese Company That Will Not Accept Service Does Not Mean its Funds Should Be Frozen 9

   C. Balance of Hardships Weighs Against Artec...................................................................... 11

III. CONCLUSION 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Computer Associates Int'l, Inc. v. Altai, Inc.*,
    982 F.2d 693 (2d Cir. 1992)...........................................................................................4, 5, 6

*Laboratoires Perouse, S.A.S. v. W.L. Gore & Assocs., Inc.*,
    528 F.Supp.2d 362 (S.D.N.Y.2007)..............................................................................................6

*Liberty Toy Co., Inc. v. Fred Silber Co.*,
    No. 97-3177, 1998 WL 385469 (6th Cir. June 29, 1998)...........................................................11

*Lotus Dev. Corp. v. Borland Int'l*,
    49 F.3d 807 (1st Cir. 1995)...................................................................................................4, 5

*Microsoft Corp. v. AT & T Corp.*,
    127 S. Ct. 1746 (U.S. 2007)......................................................................................................11

*NAACP v. Town of East Haven*,
    70 F.3d 219 (2d Cir. 1995)..........................................................................................................7

*R.F.M.A.S., Inc. v. So*,
    748 F. Supp. 2d 244 (S.D.N.Y. 2010).........................................................................................6

*Warner Bros. Inc. v. Dae Rim Trading, Inc.*,
    877 F.2d 1120 (2d Cir. 1989).....................................................................................................2

Defendant Shenzhen Creality 3D Technology Co., Ltd. ("Creality") submits this supplemental memorandum of law in further opposition to Plaintiff Artec Europe S.à.r.l. (hereinafter, "Artec" or "Plaintiff") application for a temporary restraining order and preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, the U.S. Copyright Act, 17 U.S.C. § 502(a), and the U.S patent laws under title 35.

I.  PRELIMINARY STATEMENT

Artec has failed to meet its burden to demonstrate that a preliminary injunction should be granted because it has come far short of demonstrating likelihood of success, irreparable harm, balance of hardships, and public interest. Recognizing the blatant failure of proof presented in Artec's moving papers, in Reply, Artec submitted four new declarations, including a declaration from an expert who opined on a perceived anomaly in Creality's software. On Friday, March 8, 2021, Creality submitted a declaration explaining that the anomaly in Creality's software resulted from its use of open-source code and not copying. Artec requested additional time claiming it was unfair for Creality to address the evidence Artic submitted with its reply brief. The Court thereafter permitted both parties to submit additional briefing.

As it stands, Creality has not received the over $4,000,000 it is entitled to from its investors due to the order to show cause and the threat of a temporary restraining order. Indeed, Artec's allegations has delayed Creality's funding for almost a month despite the fact that Artec's moving papers were devoid of evidence other than a self-serving and conclusory employee declaration. Indeed, Creality first provided analysis, although conclusory, of its infringement claims as part of its reply memorandum. Yet, when Creality demonstrated that the Artec expert declaration submitted as part of its reply memorandum falsely concluded that

certain anomalies were the result of copying, Artec requested additional time, further exacerbating the harm caused to Creality.

Put simply, Artec's additional evidence provided in its Reply that it offered in further support of its claim could and should have been part of its opening moving papers. That Reply evidence should not be considered. Nevertheless, as detailed herein, that belated evidence, should it be considered by the Court, does not change the outcome.

## II. ARGUMENT

"The purpose of a temporary restraining order is to preserve an existing situation in statu[s] quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d Cir. 1989) (citation omitted). "To obtain a preliminary injunction, Artec bears the burden of proof regarding requirements: (1) likelihood of success on the merits; (2) likelihood that the moving party will suffer irreparable harm if a preliminary injunction is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by relief. *Clark v. Childs*, 416, F.Supp.3d 221, X (E.D. N.Y. 2017) (citing *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015) and *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010)). The preliminary relief afforded is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Clark*, 416, F.Supp.3d at 223 (quoting *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007).

### A. Artec Fails to Meet Its Burden of Demonstrating Likelihood of Success

#### 1. Artec's Copyright Claim is Unlikely to Succeed

Copyright law protects the actual expression. Artec has made multiple arguments about similarities in the look and feel between the Artec and the Creality software products. Yet none of this is protected by Copyright. In the software context, copyright law generally protects the literal expression, *i.e.*, the written software code, as if it was words in a book. In very limited circumstances, copyright law will protect non-literal expression, *i.e.*, certain visible aspects of the resulting software product. With respect to both literal and non-literal copyright expression, Artec's claim is likely to fail.

With respect to literal expressions or literal copying, Artec has provided **no evidence of any actual copying** of Artec's source code. Artec has relied on three bases for its allegations of literal copying: (1) the similarity of an anomalous software interaction, (2) Jimuyida's acquisition of certain Artec scanners; and (3) its assertion that certain former Artec employees ultimately worked for Jimuyida.

On the first point, Jimuyida has analyzed the software and determined that the anomalous behavior in its software is present because of the use of a common open-source VTK software project. D.I. 30-1, Supplemental Declaration of Luowei ("Luowei Suppl. Decl.") at ¶¶ 7-11; Second Supplemental Declaration of Luowei ("Luowei 2nd Decl.") at ¶¶ 4-17. The VTK code is written such that an anomalous behavior is introduced primarily through a cumulative calculation that is part of the VTK rotation algorithm. Luowei 2nd Decl. at ¶ 14. And this same behavior can be seen in other industry software that uses the open-source VTK project, such as the ParaView software. *Id.* at ¶¶ 15 and 16. As a result, Artec's allegation of copying based on the purported anomalous behavior is misguided. This undermines both Mr. Gusev's and Dr. Edwards'

Declarations, which both make improper assumptions based on this anomalous behavior. On April 13, 2022, Creality's counsel asked if Artec intended to continue to argue that the alleged anomaly was caused by copying and, if so, to provide the basis for its contention. Artec's counsel neither responded nor identified any evidence.

On the second point, Artec's position is preposterous. Access to compiled software that comes with a product is not access to source code. Indeed, Artec does not and cannot dispute that it provides its software as "executable code" or that such code "cannot be examined, copied, or otherwise utilize to design a software product." Supplemental Declaration of Luowei, ¶ 6. As such, the access to Artec's products is entirely irrelevant to Artec's claim that Jimuyida's had access to and literally copied its software.

On the third point, Jimuyida has searched and determined that it has never employed any of the individuals Artec identifies. Artec's only "evidence" for its allegations is an uncorroborated analysis performed by an individual in 2018. Regardless, none of the identified individuals have worked or otherwise been engaged with Jimuyida.

By failing to provide any credible evidence, Artec has fallen far short of demonstrating likelihood of success on the merits with regard to its claims of literal copying of its software.

Artec has also **failed to meet even a cursory burden of demonstrating likelihood of success with regard to its claims of non-literal copying**. As previously discussed, non-literal copying is a fact intensive analysis that is guided by the holding in *Computer Associates Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992). Copyright does not protect the functional aspects of software, such as menu systems. *Lotus Dev. Corp. v. Borland Int'l*, 49 F.3d 807 (1st Cir. 1995) (finding a menu command hierarchy uncopyrightable).

In this context, Artec has pointed to toolbar icons, docked windows, and table headings. D.I. 26-4, Declaration of George Edwards, Ph.D. ("Edwards Decl.") at ¶ 50. Yet these alleged similarities are far from what would be necessary for Artec to meet its burden of demonstrating likelihood of success in showing non-literal copying. For Artec to make a showing, it would need to first show that these identified elements are copyrightable under *Altai*. Artec has not done this, nor could they. These identified features are not only functional, but they have been common to software interfaces for many years. By way of example, Dr. Edwards points to the menu bar of the Artec Studio software as "unlikely to occur purely by chance." Edwards Decl. at ¶ 50. As an initial matter, functional user interface elements are not copyrightable. *Computer Associates Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992); *Lotus Dev. Corp. v. Borland Int'l*, 49 F.3d 807 (1st Cir. 1995). Nevertheless, taking Dr. Edwards' statement to suggest that the icons have been copied, that falls flat. First, the icons that Dr. Edwards points to in Magic Wand or CR Studio are not even visually the same as those in Artec Studio. Edwards Decl. at ¶ 50. Moreover, most of the icons that Dr. Edwards points to are common interface elements.



*Id.* In taking a closer look, many, if not all, of these icons (or ones more similar than those in the CR Studio software) have been in use since at least Windows 7. *See, e.g.*, https://docs.microsoft.com/en-us/windows/win32/uxguide/cmd-toolbars (last visited 4/12/2022),

a copy of which is attached as Exhibit A. For example, the Artec Studio icons are very similar to those used in Microsoft Visual Studio.



*Id.* These icon elements are not copyrightable, and they have been in use throughout the industry for many years. This is also true for right-docked windows (*see*, *e.g.*, Outlook, Adobe, etc.). Artec's vague allegations of non-literal copying simply do not support the drastic relief it requests in shutting down funding operations of Creality until resolution of this action. In fact, given the limited application of copyright to non-literal elements of software, and further given Artec's failure to engage in or otherwise explain how these non-literal elements are copyrightable under *Altai*, Artec has made no showing of non-literal copying and as a result cannot demonstrate a likelihood of success for those claims.

**2. Artec's Patent Claim is Not Relied Upon and is Unlikely to Succeed**

In Reply, Artec conceded that for its motion for an injunction and temporary restraining order, it relied exclusively on its copyright infringement claim (and not its patent claim). Artec Reply at p. 8. This is not surprising as, to date, the only evidence Artec offers in support of its claim for patent infringement is the conclusory testimony of its expert. See, e.g., Edwards Decl. at ¶¶ 45-49. Such conclusory testimony is not admissible evidence and it cannot support a finding of likelihood of success. See, e.g., D.I. 20 ("Creality Opposition") at pp. 6 & 7; *Laboratoires Perouse, S.A.S. v. W.L. Gore & Assocs., Inc.*, 528 F.Supp.2d 362, 371 (S.D.N.Y.2007) ("a court should disregard expert testimony that is merely conclusory");

*R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 282-83 (S.D.N.Y. 2010) (excluding expert testimony that was "little more than conclusory say-so").

## B. Artec Has Not and Cannot Show Irreparable Harm

The Second Circuit recognizes that a showing of irreparable harm is considered the "single most important prerequisite" in satisfying the temporary restraining order standard. *Clark*, 416, F.Supp.3d at 223 (citing *Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.*, 143 F.3d 688, 696 (2d Cir. 1998)). Indeed, "[t]his element is so critical to the Court's inquiry that the Court need not reach any of the other requirements necessary for the grant of injunctive relief where irreparable harm has not been demonstrated." *Clark*, 416, F.Supp.3d at 223 (citing *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (recognizing "the moving party must first demonstrate [irreparable harm] before the other requirements for the issuance of an injunction will be considered.") "A moving party must show that the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." *NAACP v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir. 1995) (citation omitted).

### 1. Artec Has Failed to Demonstrate Any Irreparable Harm

In addressing "irreparable harm," Artec cites **not a single piece of evidence of actual harm.** This alone renders their motion lacking. *See Clark*, 416, F.Supp.3d at 223 (finding contention of irreparable harm "incredible in light of Plaintiff's abject failure to adduce any evidence of harm whatsoever.") Instead, Artec points only to a speculative self-serving declaration and the purported difference in pricing between Artec and Creality scanner products. On its face, price erosion is an economic harm in the absence of detailed evidence to the contrary. *See*, Creality Opposition at pp. 10-13. Notably, Artec does not perform any analysis

with respect to the 3D scanner market or the pricing with respect to products or software in that market.  Indeed, Artec never discloses its own market share in the United States, never identifies the prices of any competing products, and it never explains the manner in which such products compete.  To read Artec's briefing, one would assume Artec is the sole player in the United States 3D scanner market and that entry of Creality in that market will significantly damage Artec's market and pricing.  Yet this is very far from reality.

A cursory glimpse at the 3D scanner market in the US reveals several key points.  First, the 3D scanner market is crowded.  A simple Internet search shows a multitude of competing 3D scanners on the market, including Creaform, 3D Digital Corp., Comet, 3Shape, Dentalwings, HP, EinScan, EORA, Matter & Form, SENSE2, and XYZ.  *See, e.g.,* https://formlabs.com/blog/how-to-choose-a-3d-scanner-for-3d-printing/ (last visited on April 12, 2022), a copy of which is attached as Exhibit B.  And, in fact, there are several scanner manufacturers who already offer 3D scanners for under $1,000.



*Id*.

And even Artec, itself, has not only acknowledged the presence of these sub-$1,000 scanners, but also it has even promoted several that it believes are the best options.  *See* https://www.artec3d.com/learning-center/best-handheld-3d-scanners (last visited on April 12, 2022), a copy of which is attached as Exhibit C.

> **Best 3D scanners under $1000**
>
> While this review is mostly targeted at professionals who are looking for a 3D scanner for their work-related, quality-demanding tasks, we still want to cover a few accessible and entry-level 3D scanning solutions that could be a great introduction into the world of 3D data capture and processing.
>
> If you're looking for an affordable 3D capture device to get started with the very basics of 3D digital acquisition, check out these low-cost 3D solutions:

*Id.*  Artec specifically identifies and promotes four separate sub-$1,000 options, including the XYZprinting 3D Scanner Pro ($250), Apple iPad Pro with LiDAR Scanner ($799), Reality Capture software ($20), and even DIY 3D Scanners ($30-300).  *Id.*  Of course, a simple search of Amazon and E-Bay can find additional numerous other examples of 3D Scanners priced significantly below the price associated with Artec's products.

The 3D Scanner market is a crowded field, which currently includes many products, including products that sell for well below $1,000, some of which Artec even promotes on its own website.  Artec has failed to demonstrate that the entry of just one more 3D scanner, the Creality CR-Scan Lizard Scanner, will cause price erosion and irreparable harm.

### 2. The Fact That Creality is a Chinese Company That Will Not Accept Service Does Not Mean its Funds Should Be Frozen

The second basis provided by Artec for an injunction is the fact that Creality is a Chinese company.  In particular, at the hearing, Artec made much of the fact that Creality would not accept service and that Creality had no United States offices.  Yet, those facts do not support injunctive relief and/or irreparable harm.  Service of Chinese companies is available under the

Hague Convention. There is no evidence that Artec has tried to serve Creality under the Hague Convention. Further, the mere fact that Artec may believe service is inconvenient under the Hague Convention is not irreparable harm that can support a claim for injunction.

Similarly, Artec's attempt to denigrate Creality as a company from China attempting to use Kickstarter as a "front," as stated by Artec the hearing, is simple puffery. Creality is a company, like many others, attempting to build and manufacture new products in the field of 3D scanning. Creality openly sought funding for its project with respect to the 3D scanners at issue. Kickstarter is no "front." Kickstarter is a well-known and legitimate means for many entities to raise money for projects. Kickstarter was not used as a front to hide Creality's identify. Creality's identity was all over the Kickstarter materials making clear that any investment would be with Creality. The fact is, like many international companies, Creality does not have a foothold in the United States market. However, that fact cannot be used by Artec to avoid the requirement for them to demonstrate irreparable harm in the absence of an injunction.

At various points in its papers and briefing, Artec alleges that Jimuyida's actions four years ago in China with respect to Artec's scanner were somehow improper and support an injunction in this case. Artec fails to inform the Court that the parties only previously dispute was resolved by a mediator in Shenzhen such that Artec's Chinese suppler was required to pay Jimuyida. Luowei Suppl. Decl. at ¶ 4. Thus, Artec's attempts, in Reply, to use its stale allegations from years ago in support of its current request for an injunction does not fly.

Lastly, the fact that Creality is a "Chinese company" not only does not support an injunction, it counsels against an injunction. Indeed, unless it sells products into the United States, Creality's actions do not implicate United States patent and copyright law. For example, Artec does not and cannot dispute that the majority of contributions to Kickstarter are from

individuals residing outside the United States. D.I. 21, Declaration of Xun Luo at ¶ 8. Similarly, Artec cannot and does not dispute that if Creality were to sell a product from China to individuals outside the United States, United States copyright and patent law would not be violated. *See Microsoft Corp. v. AT & T Corp.*, 127 S. Ct. 1746, 1747 (U.S. 2007) ("It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country."); *Liberty Toy Co., Inc. v. Fred Silber Co.*, No. 97-3177, 1998 WL 385469, at *3 (6th Cir. June 29, 1998) ("[I]t is a long-standing principle that United States copyright laws do not have extraterritorial operation."). As such, there is no dispute here that the majority of funds that Artec seeks to preclude Creality from accessing will not be used for an act of infringement.

    **C.    Balance of Hardships Weighs Against Artec**

In assessing the relative hardships faced by the parties, the imminent injury faced by Creality is greater than Artec's speculative hardship. The time to resolution of this dispute alone creates a great imminent injury to Creality. If a preliminary injunction is entered, Creality won't be able to continue to develop a major product for potentially years. Creality will also suffer brand and image damage due to the supposed injunction and for the need for Kickstarter to either return or holder onto investor funds.

In its Reply, Artec suggests that the hardship associated with an injunction precluding Creality from accessing its funds could be minimized because a trial could be held in as little as a couple of months. That position is simply not credible. The average time to trial in this District for patent cases is a little over 4 years. *See* Docket Navigator E.D.N.Y. Time to Milestones Search, a copy of which is attached as Ex. D. This amount of time to trial in a patent case is not unusual as a patent case is a complex commercial dispute that requires complete fact and expert

discovery, claim construction briefing and argument, summary judgment, and trial. Indeed, the claim construction process alone pursuant to the Local Patent Rules of this District requires at least six months. *See* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Patent Rules (generally setting forth the time for patent matters).

The timeline proposed by Artec is further unreasonable because Creality is not a United States company subject to the typical discovery limits of United States Courts. As such, things like conducting depositions of Chinese witnesses (depositions are not permitted in China) require negotiations and often require witnesses to leave Mainland China. Further, travel presently is severely restricted in China requiring a longer than usual discovery period due to a rise in COVID cases. In some provinces, the quarantine rules require extensive isolation for up to 28 days making witness depositions untenable at this time. Indeed, it would be unreasonable to expect that the discovery process could be compressed and trial could be rushed, when simple tasks like taking and scheduling depositions would not be able to be fully completed until some unknown time after the quarantine restrictions abate.

### III. CONCLUSION

For at least all the foregoing reasons, Artec's motion for a temporary restraining order and a preliminary injunction should be denied.

Dated: April 13, 2022

*/s/ Michael DeVincenzo*
Michael DeVincenzo
KING & WOOD MALLESONS LLP
500 5th Avenue, 50th Floor
New York, New York 10110
(212) 319-4755
michael.devincenzo@us.kwm.com

*Counsel for Defendant Shenzhen Creality 3D Technology Co., LTD*