UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTEC EUROPE S.À.R.L.,<br><br>    Plaintiff,<br><br>  v.<br><br>SHENZHEN CREALITY 3D TECHNOLOGY CO., LTD., AND KICKSTARTER, PBC,<br><br>    Defendants. | Civil Action No.: 1:22-1676 (WFK)(VMS)<br><br>SUPPLEMENTAL DECLARATION OF ALEXANDER OSIPOV |

### SUPPLEMENTAL DECLARATION OF ALEXANDER OSIPOV

I, Alexander Osipov, declare:

1. I am the Chief Information Officer of Artec Europe S.a.r.l. ("Artec"). I have worked at Artec since 2015. My responsibilities include, among other items, developing information security measures and standards for Artec's products, analyzing and mitigating external and internal information security risks, and conducting and managing investigations to minimize risk.

2. I previously submitted a declaration in this case. I provide this Supplemental Declaration in support of Artec's Post-Hearing Brief and its Application for a Temporary Restraining Order and Preliminary Injunction. I have personal knowledge of the facts set forth in this Supplemental Declaration, and if called as a witness, I could and would testify under oath to these facts.

3. I have reviewed Luowei's supplemental declaration in this case, which was executed April 8, 2022. Based on my review, multiple statements by Mr. Luowei in his supplemental declaration are inaccurate or misleading.

1

4.  In paragraph 5 of his declaration, Mr. Luowei states that it is "misleading" for Artec to claim that its investigator "spoke with Jimuyida's Chief Technology Officer, Mr. Yao, on June 27, 2018 in Wuhan." Mr Luowei alleges that Mr. Yao only "worked part-time as a consultant" for a seemingly different company ("Building Blocks Easy to Build") "from 2018-2020 . . . worked at Wuhan University," and "was not involved in product design or development." These assertions are all false.

5.  The "Company Profile" page of Jimuyida's website at the time identified Mr. Yao as the "Founder & CTO" of Jimuyida. The Internet Archive American Digital Library (archive.org) Wayback Machine is a digital archive that creates and preserves public archived versions of webpages on the world wide web, across time. I downloaded an archived copy of Jimuyida's "Company Profile" page archived on June 3, 2018, available at https://web.archive.org/web/20180513101053/http://www.jimuyida.com/company.html, attached as Exhibit C-1 hereto, and reviewed a copy translated into English.

6.  As of June 3, 2018, Jimuyida's website identified the same Yao Jian as the "Founder and CTO of Jimuyida." I understand "CTO" to mean "Chief Technology Officer," as described by Mr. Luowei. In paragraph 5, Mr. Luowei references Mr. Yao was a consultant at "Building Blocks Easy to Build." Mr. Luowei's suggestion that "Building Blocks Easy to Build" is a different company from Jimuyida is misleading – these words are simply a different way of translating "Jimuyida."

2



7.  Mr. Luowei asserts in paragraph 6 that Jimuyida "never had access in any way to Artec's source code." He claims Artec is confusing source code with executable code by suggesting that Jimuyida obtained Artec's source code by purchasing or renting Artec's products. This claim is not accurate. Artec does not allege that Jimuyida gained access to Artec's *source code* by purchasing or renting products. As explained in my prior Declaration, Jimuyida employed, worked with, communicated (and created Jimuyida email addresses through its wholly owned subsidiary, 91ruler.com) with a number of former Artec employees *who had access to Artec source code* prior to leaving Artec in 2014 or 2015. Osipov Corrected Declaration at ¶¶3-6, 18-21 [Dkt. 28-1]. Artec believes that this was one way Jimuyida gained access to Artec's source code software.

8.  Mr. Luowei also claims that "compiled" or "executable" code "cannot be examined, copied or otherwise utilized in order to design a software product." That statement is false and overbroad. Executable code is copied all the time. A wealth of information can be obtained from

3

using and analyzing executable software code that may be useful in developing a competing product.

9. Mr. Luowei states in paragraph 7 of his declaration that the "presence of certain structured light patterns" is "the result of open-source software that is commonly used within the industry." This assertion is completely false and baseless. Artec scanners project structured light in a distinctive type of pattern onto the object being measured, and require, in turn, a distinctive algorithm in Artec's software code for the 3D measurement of the shape of material objects using non-contact structured light triangulation. Artec believes that Creality is improperly copying that algorithm and infringing Artec's copyright. Mr. Luowei asserts without any basis that this algorithm is coming from open-source software. The open-source software identified by Mr. Luowei does not relate to structured light patterns. He does not identify any open-source software that relates to structured light patterns—much less to any structured light patterns of the type identified in Artec's patent. Nor am I aware of any such open-source industry software. Moreover, if this alleged open-source software existed, its use would likely infringe claims of U.S. Patent No. 7,768,656, as shown in Artec's infringement claim charts and would likely also have resulted from illegal access to Artec source code.

10. Mr. Luowei begins paragraph 8 with "For example" in reference to the bug found in both Artec Studio and CR Studio; however, this has nothing to do with the "structured light pattern" utilized by the scanner discussed in paragraph 7. Therefore this use of "For example" is misleading. Addressing the substance of Mr. Luowei's conclusion in paragraphs 9-11 of his Declaration, VTK toolset is not used in Artec Studio software, so there is no product cross-over to explain the similarity. In addition, any commercial software such as CR Studio or Magic Wand Studio Pro should identify either in its installation pages, licensing file, End User License Agreement or similar declaration or agreement which open source or third party libraries are used

4

(with corresponding copyright notices). Artec has carefully reviewed all available such documents, notices and agreements for CR Studio and Magic Wand Studio Pro, and VTK toolset is not mentioned in any of them. The fact that some VTK libraries exist in an installation folder for the software after installation does not prove that VTK toolset is utilized in the software or causes a bug matching the one in Artec Studio.

11.   The "precession" bug that occurs in Artec Studio was written in 2011 by an Artec employee. This code is shown and described in Exhibit C-2, attached hereto. As explained in Exhibit C-2, the bug arises when a second rotation is performed using a matrix that has not been properly updated following a first rotation. This code is significantly different from the code identified by Mr. Luowei, so it is illogical that explains the creation of the same visual bug across both products.

12.   Artec has continued to investigate and analyze Studio and Magic Wand Studio Pro software packages in executable formats (as opposed to source code) and have found a number of unusual similarities between them and Artec Studio that support a conclusion that Jimuyida and Creality had illegal access to Artec source code. This includes the use of similar file structures with similar fields, names and meanings and similar folder structures and naming conventions, among others. CR Studio uses an uncannily similar project file structure compared to Artec Studio 10. As explained in the attached initial analysis, in both instances, projects are structured with a similarly named main project file in xml format, that references similar datatypes organized in a similar fashion (and stored in similarly named folders), referenced through similar fields. Artec's initial analysis, which takes a top-down approach, beginning with the main-file, is attached hereto in Exhibit C-3. For example, the main project files used by Artec Studio and CR Studio are almost identical. There is no technical reason for CR to use a similar file structure as Artec Studio because there are other project file structures that would work equally well. Also, the use of a similar file

structure does not create compatibility between Artec Studio and CR Studio. Therefore, the use of Artec Studio's project structure in CR Studio does not serve any technical purpose.

13. Artec has also found unusual similarities in the names of functions contained in binary files of CR Studio. The binary files are "dynamically linked libraries" or DLLs. While it is not possible to view the source code instructions contained in the DLLs because they comprise binary object code rather than human-readable source code, the *names* of the functions are visible because they are "exported" by the DLL. Functions within certain CR Studio DLLs have names that are unusually similar to names used in the Artec source code.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 13 day of April, 2022 in Luxembourg, Grand-Duchy of Luxembourg.

Alexander Osipov

6