RIMÔN LAW
www.rimonlaw.com

December 13, 2024

Hon. Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 10007

      Re:    **Artec Europe S.À R.L., v. Shenzhen Creality 3D Tech Co., Ltd, et al.
Case No. 1:22-1676 (OEM)(VMS)**

Dear Judge Scanlon:

Plaintiff Artec Europe S.à.r.l ("Artec") respectfully requests that the Court issue a protective order barring Dr. Mohit Gupta from reviewing Artec's Protected Material as defined in the Protective Order. *See* Dkt. 71-1 ("Protected Material (i.e 'CONFIDENTIAL,' "RESTRICTED – ATTORNEYS" EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE").

Defendants have nominated Mohit Gupta, Ph.D. to be an expert and to be provided access to Artec's extremely valuable confidential information, including its source code, even though Dr. Gutpa works for three companies that directly compete with Artec's scanning technology. Artec has produced and/or is continuing to produce documents containing confidential and sensitive technical information. And Defendants' recent demand for Artec's source code (which is unnecessary and largely irrelevant) to the parties' disputes) necessitate higher restrictions as mandated under the Protective Order. Moreover, Defendants already retained and disclosed another expert with similar qualifications to Dr. Gupta, further demonstrating why Dr. Gupta – and his conflicts of interest – are not necessary for Defendants' case.

On November 18, 2024, Defendants provided notice that they intend to disclose Artec's confidential and sensitive information to their outside expert, Mohit Gupta, who was Defendants' invalidity expert for their denied petition for *inter partes* review of the '656 patent. *See* Declaration of Richard de Bodo ("de Bodo Decl.")., ¶ 4, Ex. 6 [Nov. 18 email]. Defendants also forwarded Dr. Gupta's *Curriculum Vitae.* de Bodo Decl. ¶¶ 4 and 6, Ex. C. On November 28 and 29, Artec objected to the disclosure of its technical sensitive information because Dr. Gupta works intimately and routinely with competitors of Artec, creating an incentive for Dr. Gupta to use such technical information to the benefit of himself and/or his affiliated companies, which would, in turn, irreparably harm Artec's business. *Id*., ¶ 6, Ex. C [Nov. 28 to Nov. 29 email chain].

Accordingly, and for the reasons set forth herein, Artec respectfully requests that the Court issue a protective order barring Dr. Gupta from reviewing any of Artec's Protected Material.

**Defendants' Chosen Expert Has Multiple Conflicts of Interest Through His Work with Companies that Directly and Indirectly Compete with Artec**

Defendants have retained Dr. Mohit Gupta ("Gupta") as an expert to assist in their defense in this matter. *See* de Bodo Decl., ¶ 4. Gupta is a research scientist with a particular focus on computer imaging and computational imaging. *Id*., Ex. C [Gupta CV]. Gupta holds a Ph.D. in Robotics, a M.S. in Computer Sciences, and a B. Tech. in Computer Science and Engineering. *Id*. Gupta is closely affiliated with and/or employed by multiple organizations focused on 3D imaging and detection systems using light from a laser ("LIDARS"), including pursuing patents relating to same. *See* Declaration of Alexandr Osipov ("Osipov Dec."), ¶¶ 5-11.

*Ubicept, Inc.:*

First, Gupta is the Co-Founder and Scientific Advisor of Ubicept Inc. ("Ubicept"), a commercial start-up company which offers its customers competing products to Artec Studio, including but not limited to facial landmark recognition solutions which use techniques similar to those already used in Artec Studio's face recognition portfolio, software with 2D post-processing algorithms, including 3D reconstruction, and hardware camera and computer vision solutions that are used for reconstruction of 3D models and scenes. *See* Osipov Decl. ¶¶ 4, 6.a.-6.d.; *see also* https://www.ubicept.com/blog/capturing-facial-expressions-in-low-light; https://www.ubicept.com/kits. While Defendants have contended that Dr. Gupta's role at Ubicept does not present a conflict, they are misguided. *See* Osipov Dec. ¶¶ 4-6.d. For example, a public

article regarding Ubicept explicitly states that the company indeed plans to have such technologies. *See* https://www.eenewseurope.com/en/ubicept-raises-us8-million-for-spad-based-imaging.; *see also* Osipov Dec. ¶ 6.d. Specifically, "[t]he company said it would use the money to recruit staff and to expand into 3D scanning and industrial automation." *Id*. Not only is the company actively pursuing an expansion into 3D scanning technologies, but Dr. Gupta's work relates to expanding into these technologies, as he is both the Co-Founder of and Scientific Advisor to the company. Osipov Decl. ¶ 4.

### *Cruise LLC*:

Second, Artec Studio creates solutions, software and algorithms which are not only purposed for structured light 3D scanners, but also for long-range 3D scanners (i.e., LIDAR), DLP-projector based desktop scanners, photogrammetry (2D cameras), and facial and other computer vision and recognition products. *See* Osipov Decl., ¶¶ 4, 7. Artec Studio is the company's all-in-one software suite for all of its products, and thus, its technology using LIDARs is relevant to each of its products. *Id*., ¶ 7. Gupta works as a research scientist at Cruise LLC ("Cruise"), a company which also uses and competes in the field of creates self-driving car technology "based on LIDARs." *See* https://www.getcruise.com/about; https://en.wikipedia.org/wiki/Cruise_(autonomous_vehicle); Osipov Decl. ¶ 7. Although Cruise may sell different end products than Artec, the underlying technology used to create both companies' products has significant overlap. *See* Osipov Decl. ¶ 7. Indeed, Cruise itself stated in 2020 that it actively uses 3D scanning techniques for its core technology. *See id.*; *see also* https://medium.com/cruise/cruise-simulation-sensor-development-be57a5991fe6. Specifically, Cruise claimed it was using "LIDARS with different beam patterns and unique orientations to try different configuration layouts for better coverage[,]" and was "trying cameras with greater or different fields of view or better coverage of a unique area." *Id*.

### *WISIONLab*:

Third, Gupta is the Director of WISIONLab, which performs research and develops patent technology in 3D imaging and licenses and/or sells its technology to private companies that compete with Artec. Osipov Decl. ¶¶ 4, 8.
WISIONLab's research has resulted in multiple patents in 3D scanning. Osipov Decl. ¶ 9. According to Gupta, "[f]or me, the most encouraging thing is that a large fraction of [our patents] aren't just gathering dust – they've actually been licensed for practice use by companies." *See* https://www.cs.wisc.edu/2024/07/30/professor-mohit-gupta-sees-world-new-light. Gupta has stated, that his "goal of this work is to build an end-to-end system for structured light 3D scanning" and that "[WISIONLab]'s methods can be readily incorporated into existing scanning systems without a significant overhead in terms of capture time or hardware." *See* https://wisionlab.com/project/structured-light-global-illumination. Those companies which "practice use" of WISIONLab's technology are those using 3D scanning technologies, which, of course, compete with Artec. *See* Osipov Decl., ¶¶ 9-11.

**Disclosure Of Confidential Technical Information to Dr. Gupta Could Threaten Artec's Business**

Pursuant to Rule 26(c), "[a] party . . . may move for a protective order in the court where the action is pending. . . [and t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "Good cause is a highly discretionary standard." *Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 479 (S.D.N.Y. 1982).

Artec is recognized as a global leader in its fields and maintains and protects substantial portions of its technology as confidential trade secrets. *See* Osipov Decl., ¶ 3. Artec is concerned that disclosing Artec's proprietary non-public technology and commercial information to any outsider would pose significant information security and intellectual property risks and could lead to commercial uses that could harm Artec. *See* Osipov Decl., ¶ 5. Indeed, courts have noted the extreme confidentiality that attaches to trade secret information, including source code. *See e.g., Xinuos, Inc. v. IBM Corp., et al.*, No. 22-cv-09777-CS-VR, 2024 WL 5010717, at *3 (S.D.N.Y. Nov. 13, 2024) ("[I] is undisputed that source code is inherently sensitive, as other courts have readily recognized."). Here, Artec's trade secrets are integral to its ability to compete with other companies using 3D scanning technology. *See* Osipov Decl. ¶¶ 3, 5-11.

Courts have found good cause to exist in situations synonymous to that here, where an expert's access to confidential information could threaten a party's ability to compete and succeed. *See, e.g., McDavid Knee Guard, Inc. v. Nike USA, Inc.*, No. 08 CV 6584, 2009 WL 1609395, at *4 (N.D. Ill. Jun. 9, 2009). *McDavid Knee Guard* is instructive. There, the proposed expert executed a confidentiality undertaking. 2009 WL 160395, at *3. However, the court agreed that the expert "could not be presumed to 'compartmentalize and suppress' the knowledge he would glean from [defendants]' Highly Confidential Information, no matter how well-intentioned he might be. . . . [And] any recourse against [the expert] for violating the Stipulated Protective Order would be 'at best difficult if not unacceptably limited.'" *Id*. Similar to that case, Gupta executed a confidentiality undertaking. However, the disclosure of Artec's most confidential technical information to Gupta, who actively works with Artec's competitors, will "destroy any competitive advantage" that Artec has over its competitors. *Id*. Accordingly, good cause exists to issue a protective order.

**There Are No Less Restrictive Means To Protect Artec's Information**

Artec Studio creates solutions, software and algorithms which are not only purposed for structured light 3D scanners, but also for long-range 3D scanners (i.e., LIDAR), DLP-projector based desktop scanners, photogrammetry (2D cameras), and facial and other computer vision and recognition products. *See* Osipov Decl., ¶ 3. Artec Studio is the company's all-in-one software suite for all of its products. *Id*., ¶ 6.b. Thus, the access to the 3D structured light technology could not feasibly be limited during any evaluation by Dr. Gupta, especially for source code and other highly confidential data. *Id*.

The only way to prevent Dr. Gupta from inadvertently misusing Artec's most sensitive

information is to not disclose the information to him. In an effort to compromise, Artec has limited its objections to only its most sensitive information which is critical to its ability to compete in the market and the disclosure of which is most capable of harming Artec's business. Artec is otherwise willing to disclose its confidential information to Gupta, including its financial information, despite the discomfort in doing so due to Gupta's role in competing companies. *See* de Bodo Decl., ¶ 7.

**Defendants Have Failed to Articulate Why Dr. Gupta Must Review Artec's Most Sensitive Protective Information to Form an Opinion About Their Infringement or the Invalidity of the Asserted Patents**

The Court should issue a protective order for the additional reason that Defendants' interests cannot plausibly outweigh those of Artec. If the Court were to issue a protective order, Defendants are not precluded from relying on Gupta; they simply would not be permitted to disclose to Gupta a particular and defined sub-set of proprietary information.

Moreover, it is unclear why Dr. Gupta, who was Defendants' invalidity expert for *inter partes* review purposes, needs access to Artec's Protected Materials. In fact, although Defendants maintain their objection to this motion, Defendants recently disclosed Dr. Steven J. Gortler as an expert who appears to have similar technical qualification to Gupta. *See* Dr. Gortler's CV at https://www.cs.harvard.edu/~sjg/sjg2.pdf. Artec does not have any objections to this newly disclosed expert. As a result, it is unclear why Defendants cannot simply proceed with Dr. Gortler and avoid the litany of conflicts of interest with Dr. Gupta.

For the reasons set forth herein, Artec respectfully requests that the Court issue a protective order barring Defendants from disclosing to Dr. Mohit Gupta Artec's documents designated as PROTECTED MATERIAL. Defendants have already disclosed another expert with similar technical qualifications, and therefore, even Defendants cannot deny that other experts exist and are available. There is no reason to permit Dr. Gupta, who has multiple conflicts of interest, to review Artec's Protected Material – especially since such proprietary Artec information is irrelevant to the infringement and validity of the asserted patents.

Respectfully,

*/s/ Richard de Bodo*

Richard de Bodo
**RIMON PC**
2029 Century Park East, Suite 400N
Los Angeles, CA 90067
Telephone: (310) 943-7301
richard.debodo@rimonlaw.com

cc:    All counsel of record via ECF