**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

---

ARTEC EUROPE S.À.R.L.,

    Plaintiff,

v.

SHENZHEN CREALITY 3D TECHNOLOGY CO., LTD., and SHENZHEN JIMUYIDA TECHNOLOGY CO., LTD.,

    Defendants.

Case No. 1:22-cv-01676-OEM-CHK

**DEFENDANTS' STATEMENT OF MATERIAL FACTS
<u>UNDER LOCAL CIVIL RULE 56.1</u>**

# EXHIBIT LIST

| Number | Description |
|---|---|
| 1 | U.S. Patent No. 7,768,656 ("the '656 Patent") |
| 2 | U.S. Patent No. 8,488,129 ("the '129 Patent") |
| 3 | U.S. Patent No. 10,962,357 ("the '357 Patent") |
| 4 | Opening Expert Report of Steven J. Gortler on Invalidity of U.S. Patent Nos. 7,768,656, 8,488,129, and 10,962,357 (excerpts) |
| 5 | Rebuttal Expert Report of Steven J. Gortler on Non-Infringement of U.S. Patent Nos. 7,768,656, 8,488,129, and 10,962,357 (excerpts) |
| 6 | Expert Report of Iman Sadeghi, Ph.D. (excerpts) |
| 7 | Rebuttal Expert Report of Iman Sadeghi, Ph.D. (excerpts) |
| 8 | Transcript of Deposition of Steven J. Gortler (June 2, 2025) (excerpts) |
| 9 | Transcript of Deposition of Iman Sadeghi (June 6, 2025) (excerpts) |
| 10 | Prosecution history of U.S. Patent No. 8,488,129, Amendment After Final (June 26, 2012) |
| 11 | U.S. Patent Appl. Publ. No. 2008/0106746 A1 to Shpunt et al. |
| 12 | Transcript of Deposition of Wei Luo (Feb. 18, 2025) (excerpts) |
| 13 | Transcript of Deposition of Gleb Gusev (Feb. 27, 2025) (excerpts) |
| 14 | Prosecution history of U.S. Patent No. 7,768,656, Amendment (January 4, 2010) |

I.     **Infringement of the Asserted Patents**

   A.     **The '656 Patent**

   1.     All asserted claims of the '656 Patent[1] include a requirement that a "first slide virtual line" and a "second slide virtual line" are each "defined on said slide surface." Ex. 1 ('656 Patent) 8:15–10:59.[2]

   2.     All asserted claims of the '656 Patent include a requirement that "coded elements are assigned to one of at least first group or second group." Ex. 1 ('656 Patent) 8:15–10:59.

   3.     All asserted claims of the '656 Patent include a requirement that "coded elements of said first group are located along said first virtual line," and that "coded elements of said second group are located along said second virtual line." Ex. 1 ('656 Patent) 8:15–10:59; Ex. 7 (Sadeghi Reb.) ¶¶88, 98.

   4.     Defendants' accused products do not include a slide with fixed or demarcated lines, or lines otherwise existing or contained on the surface of the slide, corresponding to the alleged "virtual lines." Ex. 5 (Gortler Reb.) ¶¶59–64, 68; Ex. 6 (Sadeghi Op.) ¶¶160–161; Ex. 9 (Sadeghi Tr.) 245:10–247:1; Ex. 13 (Gusev Tr.) 92:3–97:11.

   5.     The alleged "virtual lines" in Defendants' accused products are allegedly defined mathematically in software, not physically defined on the slide itself. Ex. 5 (Gortler Reb.) ¶¶65–67; Ex. 6 (Sadeghi Op.) ¶¶161–183; Ex. 9 (Sadeghi Tr.) 238:5–240:19; Ex. 13 (Gusev Tr.) 92:3–97:11.

   6.     The alleged "coded elements" in Defendants' accused products are not "assigned" to "groups" that are "located along" the alleged "virtual lines." Ex. 5 (Gortler Reb.) ¶¶69–74;

---

[1] Plaintiff Artec Europe S.A.R.L. ("Artec") asserts infringement of claims 1–4, 6–7, 9–15, 17–18, and 20–22 of the '656 Patent.

[2] "Ex. __" refers to the exhibits attached to the accompanying Declaration of Andrea Pacelli.

1

Ex. 6 (Sadeghi Op.) ¶203.

### B. The '129 Patent

7. All asserted claims of the '129 Patent[3] require a "display device" that "provides a position and orientation" for an object "to take with respect to [the] detection device" prior to image capture. Ex. 2 ('129 Patent) 6:61–8:37.

8. The specification of the '129 Patent describes the "position and orientation" limitation of the claims as a "reference position" and a "reference orientation." Ex. 2 ('129 Patent) 3:46–63, 4:57–67.

9. During prosecution of the '129 Patent before the U.S. Patent and Trademark Office, the inventors distinguished a prior art reference, U.S. Patent Appl. Publ. No. 2008/0106746 A1 to Shpunt et al. ("Shpunt"), that discloses "[a]n image processor 24 [that] perform[s] depth ranging and, optionally, 3D mapping" and "an output device, such as a display 26, which shows a pseudo-3D image of the object," arguing that "Shpunt teaches away from the applicants' invention when it requires that the distance between the object and the imaging device be calculated." Ex. 4 (Gortler Op.) ¶¶351–354; Ex. 10 ('129 Prosecution, Amendment After Final) at 6; Ex. 11 (Shpunt), [0054]–[0056].

10. The accused "preview mode" in Defendants' products displays an image of the object to be scanned in the position and orientation that the object is placed in prior to the scanning performed for the preview mode. Ex. 5 (Gortler Reb.) ¶¶102–112; Ex. 6 (Sadeghi Op.) ¶¶121, 262–267.

11. The accused "preview mode" in Defendants' products displays an image of the object to be scanned based on a calculation of the 3D position of each point of the surface of the

---

[3] Artec asserts infringement of claims 1, 3–5, 10, 12, and 13 of the '129 Patent.

2

object using structured light.  Ex. 5 (Gortler Reb.) ¶¶113–119; Ex. 6 (Sadeghi Op.) ¶¶266–272; Ex. 9 (Sadeghi Tr.) 102:18–103:1, 106:3–107:4.

12.     The accused "preview mode" in Defendants' products does not provide a predetermined, target, or reference position for the object to be scanned.  Ex. 5 (Gortler Reb.) ¶¶102–112; Ex. 6 (Sadeghi Op.) ¶¶121, 262–267.

13.     The accused "preview mode" in Defendants' products does not provide a predetermined, target, or reference orientation for the object to be scanned.  Ex. 5 (Gortler Reb.) ¶¶102–112; Ex. 6 (Sadeghi Op.) ¶¶121, 262–267.

### C.    The '357 Patent

14.     All asserted claims of the '357 Patent[4] are method claims that require, "for each of a plurality of respective portions of the surface of the object," performing the step of "determining whether a quantity of the first data meets a predefined threshold that corresponds to a quantity of data needed to reconstruct the 3D shape of the portion of the surface of the object to a predefined accuracy."  Ex. 3 ('357 Patent) 23:25–24:43.

15.     All asserted claims of the '357 Patent (claims 11–15 and 17) require performing the step of "discarding at least a portion of the second data, wherein the discarded portion of the second data corresponds to respective portions of the surface of the object for which the quantity of the first data met the predefined threshold."  Ex. 3 ('357 Patent) 23:25–24:43.

16.     The "icp_min_overlap" parameter is the only parameter in Defendants' accused products that is alleged to meet the "predefined threshold" claim language in both steps of "determining whether a quantity of the first data meets a predefined threshold …" and "discarding at least a portion of the second data [for] respective portions of the surface of the

---

[4] Artec asserts infringement of claims 11–15 and 17 of the '357 Patent.

3

object for which the quantity of the first data met the predefined threshold." Ex. 6 (Sadeghi Op.) ¶¶311–313, 321; Ex. 5 (Gortler Reb.) ¶¶143, 153, 156, 174.

17. The "icp_min_overlap" parameter measures a degree of overlap between frames. Ex. 6 (Sadeghi Op.) ¶¶311–313; Ex. 5 (Gortler Reb.) ¶¶157, 183, 196–201; Ex. 9 (Sadeghi Tr.), 204:10–215:4.

18. The degree of overlap between frames is not a "quantity of data." Ex. 6 (Sadeghi Op.) ¶¶311–313; Ex. 5 (Gortler Reb.) ¶¶157, 183, 196–201; Ex. 9 (Sadeghi Tr.), 204:10–215:4.

19. The alleged "quantity threshold" in Defendants' accused products is allegedly obtained from a "calculation" during the scanning process, and not "predefined." Ex. 9 (Sadeghi Tr.), 204:10–215:4.

20. A test of the accused Seal Lite product revealed that despite collecting over 500 image frames for the same surface region of an object, the accused Seal Lite product did not discard any data. Ex. 5 (Gortler Reb.) ¶¶210–211.

**II.   Subject Matter Eligibility Under 35 U.S.C. § 101**

    **A.   Background of Structured Light Scanning Technology**

21. The earliest priority date for the '656 and '129 Patents is August 28, 2007. Ex. 1 ('656 Patent) (page 1); Ex. 2 ('129 Patent) (page 1).

22. Structured-light scanning was known in the art prior to the '656 and '129 Patents. Ex. 1 ('656 Patent) 1:11–35; Ex. 2 ('129 Patent) 1:15–39; Ex. 4 (Gortler Op.) ¶¶45–91, 153–166, 371–380; Ex. 6 (Sadeghi Op.) ¶¶88, 90; Ex. 7 (Sadeghi Reb.) ¶162; Ex. 9 (Sadeghi Tr.) 75:8–18; Ex. 12 (Luo Tr.) 154:6–17, 158:13–159:12.

23. It was well-known, routine and conventional in structured-light scanning prior to the '656 and '129 Patents to use a system including a projector, a camera, and a computer for performing triangulation. Ex. 1 ('656 Patent) 1:11–35; Ex. 2 ('129 Patent) 1:15–39; Ex. 4

4

(Gortler Op.) ¶¶45–91, 143, 146, 153–166, 363, 366, 371–380; Ex. 7 (Sadeghi Reb.) ¶147; Ex. 8 (Gortler Tr.) 183:16–185:1; Ex. 12 (Luo Tr.) 154:6–17, 158:13–159:12.

24. It was well-known, routine and conventional in structured-light scanning prior to the '656 and '129 Patents to use a projector for projecting a structured light pattern onto a surface of an object, the projector comprising a light source, a slide with a slide pattern located on a slide surface, and a projector lens characterized by a projector lens vertex. Ex. 1 ('656 Patent) 1:15–19; Ex. 2 ('129 Patent) 1:18–22; Ex. 4 (Gortler Op.) ¶¶45–61, 143, 146, 170–178, 262–270, 363, 366, 384–386, 424–425; Ex. 7 (Sadeghi Reb.) ¶147.

25. It was well-known, routine and conventional in structured-light scanning prior to the '656 and '129 Patents to use a camera for capturing an image of the structured light pattern reflected on the object, the camera comprising a photographic lens having a vertex, a matrix radiation receiver, and a camera driver. Ex. 1 ('656 Patent) 1:19–22; Ex. 2 ('129 Patent) 1:22–25; Ex. 4 (Gortler Op.) ¶¶45, 62–75, 143, 146, 179–182, 271–273, 363, 366, 387–390, 426–428; Ex. 8 (Gortler Tr.) 48:16–49:3, 51:6–53:11, 66:17–67:25, 80:13–85:20, 242:2–243:14, 293:6–295:23; Ex. 7 (Sadeghi Reb.) ¶147.

26. It was well-known, routine and conventional in structured-light scanning prior to the '656 and '129 Patents to use a computing device for determining a measurement relating to the captured image, such as a measurement of the shape of the object using a triangulation algorithm based on a correspondence between points in the slide pattern and in the captured image. Ex. 1 ('656 Patent) 1:11–15, 1:22–35; Ex. 2 ('129 Patent) 1:15–18, 1:25–39; Ex. 4 (Gortler Op.) ¶¶45–49, 80, 143, 146–147, 183–185, 274–276, 363, 366, 391, 429–430; Ex. 7 (Sadeghi Reb.) ¶147.

### B. The '656 Patent

27. The earliest priority for the '656 Patent is August 28, 2007. Ex. 1 ('656 Patent)

5

(page 1).

28.   The "first/second virtual line" recited in the claims of the '656 Patent correspond to the "projector meridians" of the specification, which are also known as "epipolar lines" in the technical literature. Ex. 4 (Gortler Op.) ¶¶102, 108–109; Ex. 6 (Sadeghi Op.) ¶91.

29.   Epipolar geometry was known in the art prior to the '656 Patent. Ex. 1 ('656 Patent) 5:11–19; Ex. 4 (Gortler Op.) ¶¶45, 76–87, 101–102, 108, 153–166; Ex. 6 (Sadeghi Op.) ¶¶84–87, 91; Ex. 7 (Sadeghi Reb.) ¶115; Ex. 8 (Gortler Tr.) 86:4–87:10, 154:11–21, 164:20–165:14; Ex. 9 (Sadeghi Tr.) 71:5–73:3, 74:14–75:7.

30.   It was well-known, routine and conventional in structured-light scanning prior to the '656 Patent to use a slide pattern comprising a plurality of coded elements, where each of said coded elements is characterized by at least one parameter which defines a spatial or temporal distribution of an amplitude or a wavelength of the structured light. Ex. 1 ('656 Patent) 1:15–19, 4:45–48, Figs. 4a–4c; Ex. 4 (Gortler Op.) ¶¶45–49, 82–86, 107, 143, 146, 148, 186–188, 277–278; Ex. 6 (Sadeghi Op.) ¶90; Ex. 8 (Gortler Tr.) 187:15–191:2, 194:4–10, 196:21–197:21.

31.   It is a law of nature that for any sufficiently large and/or dense pattern of coded elements, any two arbitrary lines will each intersect at least two coded elements. Ex. 4 (Gortler Op.) ¶¶140, 145; Ex. 5 (Gortler Reb.) ¶¶71–73; Ex. 8 (Gortler Tr.) 149:1–153:16, 162:2–21, 179:14–181:7.

**C.   The '129 Patent**

32.   The earliest priority for the '129 Patent is October 5, 2007. Ex. 2 ('129 Patent) (page 1).

33.   It was well-known, routine and conventional in structured-light scanning prior to the '129 Patent to use a display device. Ex. 2 ('129 Patent) 3:30–36; Ex. 4 (Gortler Op.) ¶¶366,

6

383, 402–403, 423, 442; Ex. 7 (Sadeghi Reb.) ¶162.

34. It was well-known, routine and conventional in the field of image capture prior to the '129 Patent to provide a preview of an image before capturing such image. Ex. 4 (Gortler Op.) ¶365; Ex. 5 (Gortler Reb.) ¶¶120–121.

35. The specification and drawings of the '129 Patent do not disclose any specific manner in which the display device provides a "position and orientation." Ex. 2 ('129 Patent) 1:62–67, 3:30–36, 3:46–62, 4:57–67, Figs. 1–4; Ex. 4 (Gortler Op.) ¶¶343, 356–360.

Dated: August 13, 2025

*/s/ Michael DeVincenzo*
Michael DeVincenzo
Charles Wizenfeld
Andrea Pacelli
KING & WOOD MALLESONS LLP
500 5th Avenue, 50th Floor
New York, New York 10110
(212) 319-4755
michael.devincenzo@us.kwm.com
charles.wizenfeld@us.kwm.com
andrea.pacelli@us.kwm.com
*Counsel for Defendants Shenzhen Creality 3D Technology Co., Ltd. and Shenzhen Jimuyida Technology Co. Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2025 I caused the foregoing document to be served by electronic mail upon opposing counsel of record pursuant to the Court's Individual Practices and Rules.

Dated: August 13, 2025

*/s/ Michael DeVincenzo*
Michael DeVincenzo
KING & WOOD MALLESONS LLP
500 5th Avenue, 50th Floor
New York, New York 10110
(212) 319-4755
michael.devincenzo@us.kwm.com
*Counsel for Defendants Shenzhen Creality 3D Technology Co., Ltd. and Shenzhen Jimuyida Technology Co. Ltd.*