UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ARTEC EUROPE S.À.R.L.,

    Plaintiff,

v.

SHENZHEN CREALITY 3D TECHNOLOGY CO., LTD., and SHENZHEN JIMUYIDA TECHNOLOGY CO., LTD.,

    Defendants.

Case No. 1:22-cv-01676-OEM-CHK

---

**REPLY IN SUPPORT OF**
**<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

I.   The '656 Patent Is Not Infringed and Is Invalid ........................................................................ 1

   A.   No Reasonable Jury Can Find that the Claims Are Infringed ............................................ 1

      1.   Virtual Lines "Defined on [a] Slide Surface" .................................................................. 1

      2.   "Coded Elements … Located Along" the "Virtual Lines" ............................................. 2

   B.   No Reasonable Jury Can Find that the Claims Are Patent Eligible .................................... 3

II.  The '129 Patent Is Not Infringed and Is Invalid ........................................................................ 5

   A.   No Reasonable Jury Can Find that the Claims Are Infringed ............................................ 5

   B.   No Reasonable Jury Can Find that the Claims Are Patent Eligible .................................... 6

III. The '357 Patent Is Not Infringed .............................................................................................. 7

   A.   A "Predefined Threshold that Corresponds to a Quantity of Data" .................................... 7

   B.   A "Predefined Threshold" for Each "Portion of the Surface" ............................................ 9

   C.   "Discarding at Least a Portion of the Second Data" ........................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Computer, Inc. v. Articulate Sys., Inc.*,
 234 F.3d 14 (Fed. Cir. 2000)...........................................................................................5

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
 935 F.3d 1341 (Fed. Cir 2019) ........................................................................................4

*CommScope Techs. LLC v. Dali Wireless Inc.*,
 10 F.4th 1289 (Fed. Cir. 2021) ........................................................................................9

*CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*,
 15 F.4th 1091 (Fed. Cir. 2021) ........................................................................................7

*ePlus, Inc. v. Lawson Software, Inc.*,
 700 F.3d 509 (Fed. Cir. 2012)........................................................................................10

*Ferring B.V. v. Barr Labs., Inc.*,
 437 F.3d 1181 (Fed. Cir. 2006)........................................................................................9

*Fujitsu Ltd. v. Netgear Inc.*,
 620 F.3d 1321 (Fed. Cir. 2010)......................................................................................10

*Paone v. Microsoft Corp.*,
 881 F.Supp.2d 386 (E.D.N.Y. 2012) ..............................................................................10

*Parallel Networks Licensing, LLC v. Microsoft Corp.*,
 777 F. App'x 489 (Fed. Cir. 2019) .................................................................................10

*PowerBlock Holdings, Inc. v. iFit, Inc.*,
 146 F.4th 1366 (Fed. Cir. 2025) ...................................................................................3, 7

*Recentive Analytics, Inc. v. Fox Corp.*,
 134 F.4th 1205 (Fed. Cir. 2025) .......................................................................................7

*TVIIM, LLC v. McAfee, Inc.*,
 851 F.3d 1356 (Fed. Cir. 2017)........................................................................................9

# EXHIBIT LIST

| Number | Description |
|---|---|
| 1 | U.S. Patent No. 7,768,656 ("the '656 Patent") |
| 2 | U.S. Patent No. 8,488,129 ("the '129 Patent") |
| 3 | U.S. Patent No. 10,962,357 ("the '357 Patent") |
| 4 | Opening Expert Report of Steven J. Gortler on Invalidity of U.S. Patent Nos. 7,768,656, 8,488,129, and 10,962,357 (excerpts) |
| 5 | Rebuttal Expert Report of Steven J. Gortler on Non-Infringement of U.S. Patent Nos. 7,768,656, 8,488,129, and 10,962,357 (excerpts) |
| 6 | Expert Report of Iman Sadeghi, Ph.D. (excerpts) |
| 7 | Rebuttal Expert Report of Iman Sadeghi, Ph.D. (excerpts) |
| 8 | Transcript of Deposition of Steven J. Gortler (June 2, 2025) (excerpts) |
| 9 | Transcript of Deposition of Iman Sadeghi (June 6, 2025) (excerpts) |
| 10 | Prosecution history of U.S. Patent No. 8,488,129, Amendment After Final (June 26, 2012) |
| 11 | U.S. Patent Appl. Publ. No. 2008/0106746 A1 to Shpunt et al. |
| 12 | Transcript of Deposition of Wei Luo (Feb. 18, 2025) (excerpts) |
| 13 | Transcript of Deposition of Gleb Gusev (Feb. 27, 2025) (excerpts) |
| 14 | Prosecution history of U.S. Patent No. 7,768,656, Amendment (January 4, 2010) |
| 15 | Transcript of Deposition of Steven J. Gortler (June 2, 2025) (excerpts) |

## I. The '656 Patent Is Not Infringed and Is Invalid

### A. No Reasonable Jury Can Find that the Claims Are Infringed

#### 1. Virtual Lines "Defined on [a] Slide Surface"

Defendants' products do not include "virtual lines" that are "defined on a slide surface" as a matter of law. SOF 4, 5. Artec does not dispute that the accused products do not contain physically defined, fixed, or demarcated lines corresponding to "virtual lines." Instead, Artec belatedly argues the Court made a mistake and the claims do not require "virtual lines" to exist on the slide surface. The Court's construction is correct and summary judgment is proper.

For the most part, Artec rehashes arguments made in its parallel motion to exclude the testimony of Dr. Gortler, addressing a new and belated claim construction position based on dictionary definitions of the words "virtual" and "define." Artec does not address any of the arguments Defendants made in opposition to that motion, but a few points require emphasis. First, the claim language on its face requires both (i) virtual lines that are "defined on [the] slide surface" and (ii) a "slide pattern" that is "located on [the] slide surface" and comprises "coded elements" that are "located along [the] virtual line." *See* Defendants' Motion ("Mot.") at 6–7. As recognized by the Court, the slide pattern must be "located on" the slide surface and "located along" the claimed "virtual lines," as in physically located "along virtual lines" that are "defined on the slide surface." Artec argues the Court was wrong but nowhere articulates how a slide pattern can be physically located on "virtual lines" if such lines are only defined by software.

Second, the Court carefully considered and rejected Artec's unsupported argument that the plain meaning of "defined on," "located along," and "located on" did not require the slide pattern to be physically located along virtual lines demarcated on the slide surface. ECF 129 at 12–14. Artec asserts the Court's reasoned analysis must be set aside because the word "defined" in the context of "virtual lines" means defined in software. Artec Opposition ("Opp.") at 26.

1

Yet, as recognized by the Court, the claims are not addressed to "virtual lines" defined by a computer. Instead, they require a physical slide with virtual lines "defined on the slide surface" and physical coded elements with a physical location "along" the virtual lines. ECF 129 at 9–14, 30–31. The Court did not err in considering the term "define" in this physical context.

Contrary to Artec's argument (Opp. at 27), the Court's claim construction did not read out the preferred embodiment. The Court recognized the specification teaches "[a] slide 122 having a pattern of lines 162," which consistently with the claim language "establishes that the slide must 'have' the information, *i.e.*, coded the lines 'in the slide.'" ECF 129 at 14 (quoting Ex. 1, 4:19–30). The '656 Patent plainly teaches virtual lines or meridians on the surface of the slide. Ex. 1, 5:35–39 ("[T]he projector meridians 187 and camera meridians 188 are representative lines *that can be represented on the surface[] of the slide* …"). Artec's last-ditch argument to the contrary is squarely contradicted by the disclosure of clearly demarcated meridian lines in the drawings of the '656 Patent. *See* Figs. 5, 8, 10, and 12 (elements 187).

### 2. "Coded Elements … Located Along" the "Virtual Lines"

The claims of the '656 Patent require "coded elements" of a "[first/second] group" to be respectively "located along … [first/second] virtual line." SOF 2–3. Artec does not dispute that its infringement expert only offered opinions directed to a single slide used in one of Defendants' products. Mot. at 10. With respect to that slide pattern, Artec does not dispute that "there is no visible alignment between the 'coded elements' … that one could interpret as alignment to epipolar lines or projector meridians." Ex. 5 at ¶71. Nor does Artec dispute that "the rectangles are arranged at seemingly randomized positions that do not follow any particular alignment." *Id.*

Artec attempts to confuse this straightforward issue by falsely claiming that Defendants' argument is predicated on a "physical construction of the term 'virtual line.'" Opp. at 27. The issue is not that the "coded elements" are not "located along" a *physical* line; it is that they are

2

not "located along" *any* line, which Artec does not dispute. Instead, Artec argues that lack of alignment of code elements does not matter because the "virtual line" can be defined in software and all Defendants' products use the same software. Opp. at 19. That position is a red herring. The Court found the slide pattern is comprised of "coded elements" that must be physically arranged along a line. Artec bears the burden of proving infringement. Regardless of whether the claimed "virtual lines" must be demarcated, the coded elements must be physically "located along" lines on the surface of the slide itself, which they are not.[1]

### B.      No Reasonable Jury Can Find that the Claims Are Patent Eligible

At *Alice* step one, Artec does not dispute that the "principle" of epipolar geometry is an abstract idea. Mot. at 12. Similarly, Artec does not address or dispute that general principles of geometry, such as the concepts of epipolar planes and lines, are not patent eligible even when applied to a specific field of use. *Id.* at 12–13 (collecting cases). Artec does not address the statements of its Chief Technology Officer and inventor, or its own expert confirming the claims are directed to "a mathematical abstract notion that does not exist in reality," Ex. 13 at 97:3–11, and that the "virtual lines" are defined "mathematically." Ex. 7, ¶95.

Artec makes much of the Federal Circuit's decision in *PowerBlock Holdings, Inc. v. iFit, Inc.*, 146 F.4th 1366 (Fed. Cir. 2025) urging that one must consider the claim elements and how they operate within the context of the invention. Opp. at 4–5. Yet, Artec does not raise a factual dispute with respect to the conventional nature of any of the recited structural elements in the field of structured lighting. Instead, Artec relies on the supposedly unconventional nature of the "spatial or temporal distribution" of the coded elements required by the claims. Opp. at 5. Yet, Artec did not dispute that such "spatial or temporal distribution" was well-known, routine and

---

[1] Artec disingenuously argues that Dr. Gortler did not know how the accused software operates. Artec ignores the very testimony addressed to the software at issue. Ex. 15, 291:3–293:5.

3

conventional. *See* Response to SOF 30 (only disputing that "combination of the elements … as claimed" is conventional).

Lastly, Artec argues that the requirement for "coded elements" of "groups" to be "located along … multiple virtual lines" is a "specific implementation of a technological improvement." Opp. at 6 (relying on *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1347 (Fed. Cir 2019)). Beyond parroting the claim language, Artec does not explain why the application of known epipolar geometry to the field of structured-light scanning is a "specific implementation of a technological improvement." *See Chamberlain,* 935 F.3d at 1347 (finding claim directed to abstract idea at *Alice* step one). Further, to the extent Defendants' motion for summary judgment of non-infringement is denied, the alleged imaginary lines provided by software and the imaginary alignment accomplished by software certainly do not provide concrete structure under relevant authority. *See* Mot. at 13–14.

In addressing *Alice* step two, Artec urges "the application of coded groups on the slide along with virtual lines – provides technical improvement over conventional methods." Opp. at 8 (asserting "the grouping and coding of elements on a slide along with the association of specific parameters is a technical improvement over the conventional methods."). In support of the supposed technological improvement associated with the placement of coded elements along virtual lines, Artec relies on a single paragraph in Dr. Sadeghi's expert report. *See id.* (relying on Ex. D, ¶104). That paragraph has nothing to do with any purported improvement associated with the claimed coded elements or their physical placement. *Id.* Further, Artec's unsupported alleged technical improvement is a result of using the abstract idea itself *i.e.*, using epipolar geometry in structured-light scanning, which "cannot supply the inventive concept." Mot. at 14.

Further, as discussed in Section I.A.2 above, Artec contends that no specific alignment of

4

coded elements to virtual lines is physically required. As such, in Artec's own view the claims do not place any restrictions on *how* epipolar geometry is used in the 3D scanning process; all that is required is that any two "coded elements" are capable of having imaginary "virtual lines" drawn through them. That is the result of the use of epipolar geometry in structured light scanning and there is no evidence that leads to any particular technological improvement.

## II.  The '129 Patent Is Not Infringed and Is Invalid

### A.  No Reasonable Jury Can Find that the Claims Are Infringed

Artec does not dispute that its infringement case is based on a "preview mode" that shows an image of an object to be scanned. Mot. at 17–18; Opp. at 28–30. As previously explained, no reasonable jury can find that such image "provides a position and orientation for [the] object to take with respect to said at least one detection device." Mot. at 17–22. Artec responds that any image of any object *inherently* and *always* "provides a position and orientation." *See* Opp. at 30 ("The orientation is provided *by the image itself* … through shadowing and two-dimensional shape"). That argument fails for at least two reasons.

First, Artec gives *no* meaning to the claim term "position and orientation," in violation of the tenet that one cannot "read [a] limitation out of the claim." *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 24 (Fed. Cir. 2000). Simply put, the requirement for providing a "position and orientation for [the] object to take" cannot be met by providing an image of the object with no additional information. Artec's expert recognized this requirement and provided examples of how such requirement can be met, such as "a template, an outline, or a live augmented reality overlay." Ex. 7, ¶145; Mot. at 19. Artec does not dispute that the "preview mode" provides none of those features. Nor does Artec dispute that, during prosecution of the '129 Patent, the inventors expressly distinguished the prior art's teaching of "a display … which shows a pseudo-3D image of the object," which is a preview. Ex. 11, [0056]. Desperate

5

to bolster its case, Artec argues for the first time that a "ruler" or "waveform" in the preview "shows the scanning distance." Opp. at 30.[2] But scanning distance is at best *one* of the three (x, y, z) components of the object's *position* in 3D space (Ex. 5, ¶107), and it says nothing about the claims' separate and distinct requirement to provide an *orientation*.

Second, Artec ignores the express requirement of "*provid[ing]* a position and orientation for said object *to take*," which the Court construed as "*to have*." ECF 129 at 54. Providing an object's present "position and orientation" is not providing "position and orientation" for the object to "have." Artec's expert recognized that the display itself does not "provide" the orientation of the object to have. He explained a user "can rotate around the object so the position and orientation of the object, *you can decide what you want it to be* before you press the Scan button." Ex. I, 80:12–15 (quoted in Opp. at 30). That is not a reasonable understanding of a display "*provid[ing]* a position and orientation for said object *to take*" as it was construed by the Court that a jury could rely on. *See* ECF 129 at 53 ("[W]hat the display device is doing or 'providing' is *a reference point* in three dimensional space for the scanned object to 'have,' as Artec construes it.").

### B. No Reasonable Jury Can Find that the Claims Are Patent Eligible

At *Alice* step one, the claims are directed to providing information regarding the position and orientation of an object during structured light scanning. Mot. at 22. Artec does not dispute that providing information or a preview to a user is an unpatentable abstract idea. Mot. at 22–23 (citing cases). Parroting the claim language, Artec states that the claims are directed to "the combination of both an object capturing system (or method) and a 'display device' that displays

---

[2] Dr. Sadeghi's report does not mention this "waveform." *See* Ex. D, ¶121. Further, Artec cites a document (Ex. K) that was not produced and appears to have been downloaded from the web the day before Artec served its opposition. *See* Ex. K at 1 (bearing time stamp "9/11/25"). Thus, even if such "evidence" were relevant to infringement, Artec would not be able to present it to the jury.

6

the position and orientation of the object to be scanned." Opp. at 11. Artec concedes that "[without] an object capturing system or method … the displaying of a position and orientation is meaningless." *Id.* at 12. Further, Artec concedes at *Alice* step two that the entire object capturing system is conventional. *See infra*. Because the "object capturing system" is a mere appendage or prerequisite of the "position and orientation" limitation, it is "incident to the very nature of" 3D scanning technology and adds nothing of substance to the abstract idea. *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1212 (Fed. Cir. 2025).[3]

At *Alice* step two, Artec does not dispute that limitations [1.A] "display device", [1.B] "projection device," [1.C] "detection device," and [1.D] "computing device" were well-known, routine and conventional in structured-light scanning. SOF 23–26, 33 (undisputed). Again, Artec urges that "the combination of the display device with an object capturing system or method" is the "'ordered combination' that differentiates the claim from the prior art" (Opp. at 12), but because the claimed "display device" can only work with an object capturing system, "this is no more than claiming the abstract idea itself." *Recentive Analytics*, 134 F.4th at 1215.[4]

### III.   The '357 Patent Is Not Infringed

#### A.   A "Predefined Threshold that Corresponds to a Quantity of Data"

Artec does not dispute that the "icp_min_overlap" parameter alleged to be the claimed "predefined threshold" describes a degree of overlap between the "first data" and "second data."

---

[3] The cases cited by Artec (Opp. at 10–11) relate to claims reciting inventions in specific and concrete terms performing unconventional tasks. In *Contour IP Holding LLC v. GoPro, Inc.*, the claims were directed to a video camera with "specific, technological means—parallel data stream recording with the low-quality recording wirelessly transferred to a remote device." 113 F.4th 1373, 1379 (Fed. Cir. 2024). In *PowerBlock*, the claims were directed to exercise equipment with "a specific mechanical improvement to selectorized dumbbell weight stacking." 146 F.4th at 1373. The generic, result-oriented claims at issue here fall far short of that level of specificity.

[4] Artec cites *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091 (Fed. Cir. 2021), in which the inventive concept was provided by "a specific set of ordered steps" comprising at least four specific and novel claim steps implementing user authentication. 15 F.4th at 1098–99. Here, the '129 Patent only recites a single, function-oriented, non-specific limitation of "provid[ing] a position and orientation."

7

Mot. at 27–29; Opp. at 33–35.  Indeed, Artec agrees that the icp_min_overlap parameter is a "predefined threshold for minimum overlap."  Opp. at 34.  Artec contends that the overlap measures "that quantity of the first data that it has in common with the second data," but concedes that "applying this predefined overlap threshold also involves the additional step of determining a quantity of the second data."  *Id.* at 33.  Yet, the overlap parameter cannot be "a ***predefined*** threshold that corresponds to a quantity of data," as required by the claims, because it necessarily depends on the *later*-generated "second data."  Importantly, step [11.D] expressly recites this sequencing: "***after*** determining … whether the quantity of the first data meets the predefined threshold … ***further*** scanning the object … wherein the further scanning generates *second data*."  It is impossible for the "determining" step to depend on the "second data," because the "second data" is not known until ***after*** the "determining" step.  Contrary to Artec's contention, applying the threshold parameter based on the "second data" is not merely an additional feature (*id.* at 33–34); it fundamentally contradicts the requirement that the "threshold" be both "predefined" and preceding the existence of the "second data."

Unable to salvage its infringement theory based on the overlap parameter, Artec contends that other parameters meet the "predefined threshold" quantity limitation.  Opp. at 32–33.  That contention is plainly false.  Artec does not dispute that the icp_min_overlap parameter is the ***only*** feature that Artec's expert opined meets both limitations [11.C] ("determining") and [11.E] ("discarding").  Mot. at 27.  The only other parameter that Artec alleges meets both limitations is the "cloud_triface_count_" parameter.[5]  Because Dr. Sadeghi did not opine that this parameter meets limitation [11.E], Artec attempts to cobble together a brand new theory for limitation [11.E] out of bits and pieces of its expert's report addressed to other claim limitations.  Opp. at

---

[5] Artec's opposition also lists other parameters but nowhere articulates how a juror could find such parameters meet both limitations [11.C] and [11.E].  Opp. at 33.

32–33 (citing Ex. D, ¶304–306, 308). Specifically, Artec contends a reasonable juror could conclude "the 'cloud_triface_count_' query determines whether the second data will be used … based on whether the quantity of the first data met the predefined threshold." Opp. at 32–33. Yet, that theory is nowhere to be found in Dr. Sadeghi's expert report and nowhere does Artec articulate what specifically meets the "discarding" step in limitation [11.E]. Artec's conclusory attorney argument addressed to the "cloud_triface_count_" parameter cannot reasonably be relied on to find infringement. *See Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006) ("Conclusory allegations and attorney arguments are insufficient to overcome a motion for summary judgment.").

### B. A "Predefined Threshold" for Each "Portion of the Surface"

Artec does not dispute that its expert, Dr. Sadeghi, did not provide an opinion that the accused products use a "*granular* threshold for the quantity of first data *for each specific portion* being directly tied to the reconstruction accuracy *of that individual portion*," which is how Dr. Sadeghi applied the claims in his validity opinions. Ex. 7, ¶209; Mot. at 29–32. Despite this, Artec now contends that "[t]he claims do not require a distinct per-portion threshold" and "[do] not call 'predefined threshold' to be 'defined' for each portion, as if each individual portion gets in [sic] own unique threshold." Opp. at 37. In view of those contradictory validity positions, no reasonable jury can find that the claims are infringed. *TVIIM, LLC v. McAfee, Inc.*, 851 F.3d 1356, 1362 (Fed. Cir. 2017) ("Claim terms must be construed the same way for the purpose of determining invalidity and infringement."); *CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1298–99 (Fed. Cir. 2021).

### C. "Discarding at Least a Portion of the Second Data"

Dr. Sadeghi did not offer opinions regarding whether Defendants or their customers actually practice the methods claimed in the '357 Patent, as required by controlling precedent.

9

Mot. at 32–33; Opp. at 38.  Nor does Artec dispute that Defendants' expert, Dr. Gortler, performed tests and found that the methods, and in particular the "discarding" step, is ***not*** performed.[6]  *Id.*  Artec's response is that "Dr. Sadeghi has shown that all the relevant routines run automatically in the software without any intervention or choice by the user."  Opp. at 38.  But that is a non-sequitur, because the software can run automatically and not discard data, as Dr. Gortler found.  Artec's contention that "Dr. Sadeghi also specifically identified software mechanisms in Defendants' source code that explicitly discard data" (*id.*) also misses the point, as the question is not whether the accused products have the capability to discard data.  Indeed, the supposed "predefined threshold" can certainly be set such that there is no infringement.

Instead of identifying evidence, and citing no authority, Artec argues, based on the supposed capability of the software to discard data, that "there is a reasonable inference … for a typical customer … data would get discarded according to the operation of the routines."  Opp. at 38.  Yet, such argument flies in the face of established precedent.  *See ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 521 (Fed. Cir. 2012) (finding infringement not supported by evidence of "*capability* of the accused system"); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010) (affirming summary judgment because capability not enough to evidence "specific instances of direct infringement"); *Parallel Networks Licensing, LLC v. Microsoft Corp.*, 777 F. App'x 489, 493 (Fed. Cir. 2019) (recognizing same); *Paone v. Microsoft Corp.*, 881 F.Supp.2d 386, 400–402 (E.D.N.Y. 2012) (granting summary judgment on same principle).

---

[6] In addressing Dr. Gortler's report (Opp. at 39), Artec does not dispute Dr. Gortler's test results evidence that in the normal mode of operation the "discarding" step is not performed by the accused software.

10

| | |
|---|---|
| Dated: September 26, 2025 | */s/ Michael DeVincenzo* <br> Michael DeVincenzo <br> Charles Wizenfeld <br> Andrea Pacelli <br> KING & WOOD MALLESONS LLP <br> 500 5th Avenue, 50th Floor <br> New York, New York 10110 <br> (212) 319-4755 <br> michael.devincenzo@us.kwm.com <br> charles.wizenfeld@us.kwm.com <br> andrea.pacelli@us.kwm.com <br> *Counsel for Defendants Shenzhen Creality 3D Technology Co., Ltd. and Shenzhen Jimuyida Technology Co. Ltd.* |

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2025 I caused the foregoing document to be served by electronic mail upon opposing counsel of record pursuant to the Court's Individual Practices and Rules.

| | |
|---|---|
| Dated: September 26, 2025 | */s/ Michael DeVincenzo* <br> Michael DeVincenzo <br> KING & WOOD MALLESONS LLP <br> 500 5th Avenue, 50th Floor <br> New York, New York 10110 <br> (212) 319-4755 <br> michael.devincenzo@us.kwm.com <br> *Counsel for Defendants Shenzhen Creality 3D Technology Co., Ltd. and Shenzhen Jimuyida Technology Co. Ltd.* |