UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTEC EUROPE S.À.R.L.,<br><br>Plaintiff,<br><br>v.<br><br>SHENZHEN CREALITY 3D TECHNOLOGY CO., LTD. and SHENZHEN JIMUYIDA TECHNOLOGY CO., LTD.,<br><br>Defendants. | Case No. 1:22-cv-1676 (OEM)(VMS) |

**PLAINTIFF ARTEC EUROPE S.À.R.L.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO PRECLUDE THE TESTIMONY OF DEFENDANTS' TECHNICAL EXPERT STEVEN J. GORTLER**

# TABLE OF CONTENTS


TABLE OF CONTENTS .......... I

TABLE OF AUTHORITIES .......... iii

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 1

A. The '656 Patent .......... 1

B. The Court's Markman Claim Construction Order .......... 6

C. Gortler's Opening Expert Report .......... 7

D. Gortler's Rebuttal Expert Report .......... 9

III. LEGAL STANDARDS .......... 10

A. Court Must Act as a Gatekeeper, Excluding Irrelevant and Unreliable Opinions .......... 10r

B. Assertions of Invalidity and Non-Infringement Must Be Based on a Proper Construction of the Asserted Claims .......... 11

IV. ARGUMENT .......... 13

A. The Court's Markman Order Cannot Be Used to Assert That the Virtual Lines in the Claims of the '656 Patent Must "Exist on the Surface of the Slide" .......... 13

B. Gortler's Invalidity and Non-Infringement Opinions Relying of a Construction of "Virtual Lines" Exist on the Slide Surface Should be Precluded as Improper Legal Arguments .......... 17

C. Gortler's Invalidity and Non-Infringement Opinions are Unreliable Because They Rely on an Erroneous Claim Construction .......... 17

D. Gortler's Invalidity Opinions Improperly Conflate Invalidity and Infringement Analyses .......... 18

V. CONCLUSION .......... 19

**TABLE OF AUTHORITIES**

**CASES**

*Amorgianos v. AMTRAK*, 303 F.3d 256 (2d Cir. 2002)....13, 14

*Bickerstaff v.Vassar Coll.,* 196 F.3d 435 449 (2d Cir. 1999)....12,

*Bourjaily v. United States*, 483 U.S. 171 (1987)....12,

*Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179 (2d Cir. 2001)....14

*Cardinal Chemical Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993)....15

*Carman Indus., Inc. v. Wahl*, 724 F.2d 932 (Fed.Cir.1983)....15

*Choi v. Tower Rsch. Cap. LLC*, 2 F.4th 10, 20 (2d Cir. 2021);....14

*Commil USA, LLC v. Cisco Systems, Inc*., 575 U.S. 632, 135 S.Ct. 1920, 191 L.Ed.2d 883 (2015);....15

*Dana Corp. v. American Axle & Mfg., Inc*., 279 F.3d 1372, 1376 (Fed.Cir.2002)....15

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 & n.10 (1993)....12, 13

*Gillespie v. United States Steel Corp*., 321 F.2d 518, 530 (6th Cir.1963), *aff'd*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964)).....15,

*Hormel Foods Corp. v. Jim Henson Productions, Inc.,* 73 F.3d 497 (2d Cir. 1996)....15,

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).....12, 13, 14

*Marini v. Adamo*, 995 F. Supp. 2d 155 (E.D.N.Y. 2014)....14

*Netword, LLC v. Centraal Corp*., 242 F.3d 1347 (Fed. Cir. 2001)....14,

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005)....13, 14

*VirnetX Inc. v. Apple Inc*., 931 F.3d 1363 (Fed. Cir 2019)....15

*Gillespie v. United States Steel Corp*., 321 F.2d 51 (6th Cir.1963),....16

*United States v. Leonard*, 844 F.3d 102, 111 (2d. Cir., 2016)....16

*United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999)....14

**FEDERAL RULES OF EVIDENCE**

Fed. R. Evid. 104(a) ....................................................................................................................12,

Fed. R. Evid. 401 ........................................................................................................................14

Fed. R. Evid. 702 ........................................................................................................................13,

## I. INTRODUCTION

Plaintiff Artec Europe S.à.r.l ("Artec") hereby moves to preclude Defendants Shenzhen Creality 3D Tech. Co., Ltd. ("Creality") and Shenzhen Jimuyida Technology Co., Ltd. ("Jimuyida", and together with Creality, "Defendants") from offering the testimony of their technical expert, Dr. Steven J. Gortler ("Gortler"), on several infringement and invalidity issues, either at trial or otherwise, based on errors in Gortler's opening and rebuttal expert reports and deposition testimony that render his opinions on these issues fatally unreliable under *Daubert*. These errors include 1) improperly relying on a claim construction first proposed by Gortler in his opening report that the "virtual lines" called for in the claims of Artec's asserted U.S. Patent No 7,768,656 (the "'656 Patent") must "exist[] on the surface of the slide"; and 2) improperly conflating Gortler's invalidity analysis with Artec's infringement contentions

## II. BACKGROUND

Artec is asserting infringement by Defndants of U.S. Patent No 7,768,656 (the "'656 Patent")[1], U.S. Patent Nos. 8,488,129 (the "'129 Patent"), and 10,962,357 (the "'357 Patent") (collectively, the "Asserted Patents"). The Patents-in-Suit detail three distinct technologies developed by Artec relating to the three-dimensional ("3D") scanning of objects. Artec asserts that Defendants infringe the Patents-in-Suit via the importation and sale of certain 3D scanning products and software (the "Accused Products.")'

---

[1] The '656 Patent is attached as Exhibit ("Exh.") 1 to the accompanying Declaration of Richard de Bodo in Support of Artec's Motion to Preclude Testimony of Steven Gortler

### A. The ‘656 Patent

#### 1. The ‘656 Patent Specification

The ‘656 Patent discloses a system and method for “for the 3D measurement of the shape of material objects using non-contact structured light triangulation.” Exh. 1 ‘656 Patent at Abstract. The ‘656 Patent discloses an “optical unit and a computing device. The optical unit produces structured light with one or more projectors.” Exh. 1 ‘656 Patent at 3:49-53. “The optical unit includes a camera or other image detecting device for capturing an image of the structured light acting on the surface of the object. ’656 Patent at 3:30-33. Further, “[t]he computing device analyzes the captured image received from the camera output to perform the desired calculation, such as but not limited to the 3D shape of the surface of the object, the distance to the object and the orientation of the surface being captured.” Exh. 1 ‘656 Patent at 3:49-53

Figure 1 of the ’656 Patent depicts “a system for the 3D measurement of the shape of material objects.” Exh. 1 ‘656 Patent at 3:4-6, Fig. 1




*FIG 1 of the '656 Patent – (Labels in blue added.)*

The structured light disclosed in the '656 Patent is used in conjunction with a triangulation technique that uses "epipolar" geometry:

> Based on affine ***epipolar geometry***, if two cameras are looking at the same object or scene, it is possible to draw a straight line through any point in the image of the one camera, with all points of the object or scene corresponding to that line lying along a straight line in the image of the other camera, regardless of the shape of the object or scene. This principle can be applied to surface shape scanning using structured-light triangulation to determine the 3D shape of a material object.

Exh. 1 '656 Patent, 5:11-19 (emphasis added).

It is undisputed and well-known in the art of three-dimensional measurement that epipolar geometry algorithmically uses "epipolar lines" in a triangulation method to determine the shape of 3D objects. *See* April 7, 2024 Opening Expert Report of Dr. Steven Gortler

("Gortler Opening Rpt."), ¶¶ 76-81.[2] This figure from the Gortler's opening report is, paragraph 77, illustrative:




The '656 Patent specification refers to these epipolar lines as "meridians", specifically as "projector meridians 187 and camera meridians 188":

> In one or more embodiments, the system 100 and associated method for the 3D measurement of the shape of material objects uses the principle that, regardless of the position of the projector 106 and the camera 108 in relation to each other, it is possible to draw a straight line 187 through any point of the slide 122, such that, when the projected pattern in the structured light 113 is projected on the surface 110 of the object 111, a corresponding straight line 188 exists in the image 140 captured by the camera 108, regardless of the shape of the surface 110 being captured. Any pair of such lines 187 and 188 forms a one-to-one correspondence,

---

[2] The Gortler Opening Report are attached as Exhibit 2 to the de Bodo Declaration

> where such lines will be referred to as "meridians" hereafter and, in particular, as "camera meridians 188" for the captured image by the camera 108 and as "projector meridians 187" for the projected structured light 113 from the projector 106, as illustrated by way of example in FIG. 5. In one embodiment, the projector meridians 187 and camera meridians 188 are representative lines that can be represented on the surfaces of the slide 122 and the matrix radiation receiver 128, but they are not actually part of the pattern that is projected onto the object 111 and captured by the camera 108.

Exh. 1 '656 Patent, 5:20-40. These are illustrated in Figure 5:




Fig. 5

*FIG 5 of the '656 Patent*

In his deposition, Gortler acknowledged that the "meridians" 187 and 188 described in the '656 Patent function as epipolar lines. *See* Transcript of June 2, 2025 Deposition of Steven Gortler ("Exh. 3 Gortler Tr.") 98:14-101:4.[3]

[3] The Gortler's deposition transcript are attached as Exhibit 3 to the de Bodo Declaration.

### 2. The Asserted Claims of the '656 Patent

Artec is asserting that the Accused Products infringe both independent claims of the '656 Patent, 1 and 12, and several of their dependent claims, particularly Claims 1-4, 6-7, 9-15, 17, 18, and 21-22. The term "virtual line(s)" is found in Claims 1, 3, 12, and 14. The term's use in Independent Claim 1 is illustrative:

> **1**. A system for the 3D measurement of the shape of a material object, comprising:
> a light projector for projecting a structured light pattern onto a surface of said object, wherein said light projector comprises a light source, a slide with a slide pattern located on a slide surface, and a projector lens characterized by a projector lens vertex;
> a device for capturing an image of said structured light pattern reflected on said object, wherein said device for capturing an image comprises a device lens characterized by a device lens vertex; and
> a computing device for determining a measurement relating to the shape of said object using a triangulation algorithm based on a correspondence between points in said slide pattern and said image, and
> wherein said slide pattern comprises a plurality of coded elements, where each of said coded elements is characterized by at least one parameter and, where said at least one parameter defines a spatial or temporal distribution of an amplitude or a wavelength of said structured light, and
> wherein said coded elements are assigned to one of at least first group or second group, each of which first group and second group comprising at least two of said coded elements, and
> ***wherein at least a first slide virtual line and a second slide virtual line are defined on said slide surface***, where said first slide virtual line is defined by an intersection between said slide surface and a first plane passing through said projector lens vertex and through said device lens vertex, and said second slide virtual line is defined by an intersection between said slide surface and a second plane passing through said projector lens vertex and through said device lens vertex, and
> wherein said coded elements of said first group are located along said first virtual line and said coded elements of said second group are located along said second virtual line.

Exh. 1 '656 Patent, 8:15-53 (emphasis added).

### B. The Court's Markman Claim Construction Order

In the October 11, 2024 Markman Order, the Court construed, among other terms, the term "defined on said slide surface" found in independent Claims 1 and 12, by stating, "The Court concludes and adopts Creality's position and construes the term to mean "[t]he slide pattern exists on the surface of the slide." ECF 129, p. 31. Notably, however, the term "defined on said slide surface" is not used in conjunction with the "slide pattern" in the claims but rather with "a first slide ***virtual line*** and a second slide ***virtual line***" that "are defined on said slide surface". '656 Patent, 8:41-42 (emphasis added). Although not contained in its official statement, the Court in its reasoning appears to the use the phrase "exists on" to mean ***physically located*** on the slide surface, not merely to conceptually or algorithmically existing there. The Court makes this distinction by apparently making an unofficial claim construction that term "virtual lines" are the components or subparts that make up the "slide pattern", i.e., that which together comprises the "slide pattern":

> Figure 1 demonstrate [sic] that, whatever medium may be used for a "slide," ***the information comprising "slide pattern" – i.e., the "virtual lines"*** -- must exist or be contained on the "surface" of the slide and not be transmitted from another location. ECF 142, p.13 (emphasis added).
>
> As the Court explains above, the specification teaches that ***the virtual lines comprising the "slide pattern"*** must be contained on the surface of the slide medium and not projected onto the slide from another third source. ECF 142, p.31 (emphasis added).

At no point, however, did either party request a construction for the "virtual line" term. *See* ECF 117 and ECF 120. Defendants merely argued that the term was indefinite. ECF 120, p. 22-24. Further, Defendants never argued that the "virtual lines" "exists on the surface of the slide", but only that the ***slide pattern*** did, just as the Court found. *Id.*, p. 24. Further, neither party prosed ***any*** construction for the term "slide pattern" in and of itself apart its relationship

with the slide, let alone that the slide pattern would be composed of "virtual lines". *See* ECF 117 and ECF 120.

### C. Gortler's Opening Expert Reports

#### 1. Gortler's Opening Report Relies on a Proposed Claim Construction to Assert That the Claims of '656 Patent are Invalid for Failing to Meet the Written Description and Enablement Requirements

In his Opening expert report, Gortler argues, in addition to anticipation and obviousness, that the asserted claims of the '656 Patent are invalid for failing to meet the written description, enablement, and definiteness requirements Gortler Report ¶¶ 118-130. Gortler's assertion for invalidity for lack of written description and enablement are based on a claim construction that requires that the "virtual lines" called for in '656 Patent claims must "exist[] on the surface of the slide," i.e., to be "contained on the surface of the slide medium". Gortler Report, ¶ 119. In other words, Gortler does not use the official ruling of the Court in the Markman Order – that the "[t]he ***slide pattern*** exists on the surface of the slide" (ECF 129, p. 31 ) (emphasis added) – but instead uses passing comments the Markman Order to propose a new construction that requires that the ***virtual lines*** exist on the slide surface. *See* Section II.B, *supra*.

Gortler then uses this proposed claim construction to assert that the claims are invalid for lacking written description because the '656 Patent specification contains no description of virtual lines (which he equates to the disclosed "projector meridians 187 and camera meridians 188") being physical lines in the slide pattern, but instead discloses those meridians as being geometric/algorithmic representations. Exh. 2 Gortler Opening Rpt. ¶¶ 120-123. Based on the same proposed claim construction, Gortler further asserts that claims invalid for not being enabled. Exh. 2 Gortler Opening Rpt. ¶¶ 124-125

#### 2. Gortler's Opening Report Asserts that the Claims of the '656 Patent Are Invalid for Being Indefinite in Based on Artec's Infringement Contentions

Gortler asserts that independent Claims 1 and 12 of the '656 Patent are invalid for being indefinite based on two elements found in each claim:

> wherein at least a first slide virtual line and a second slide virtual line are defined on said slide surface, where said first slide virtual line is defined by an intersection between said slide surface and a first plane passing through said projector lens vertex and through said device lens vertex, and said second slide virtual line is defined by an intersection between said slide surface and a second plane passing through said projector lens vertex and through said device lens vertex,

Exh. 2 Gortler Opening Rpt. ¶¶ 118, 126-130.

> wherein said coded elements of said first group are located along said first virtual line and said coded elements of said second group are located along said second virtual line.

Exh. 2 Gortler Opening Rpt. ¶¶ 137-140

Gortler's assertions that these elements are invalid for being indefinite are entirely based on his interpretations of what Artec's infringement contentions are. *See* Exh. 2 Gortler Opening Rpt. ¶¶ 126-130, 137-140. He completely fails to analyze the definiteness of these elements in light of any claim interpretation, official or proposed. *Id.*

### D. Gortler's Rebuttal Expert Report Asserts That Defendants' Accused Products Do Not Infringe the Claims of the '656 Patent

On May 7, 2025 Gortler served his rebuttal expert ("Gortler Rebuttal Rpt.") report in response to the Opening expert reports of Dr. Iman Sadeghi and Mr. Dave Aikens regarding

Artec assertions the Accused Products infringe the Asserted Patents.[4] Exh. 4 Gorter Rebuttal Rpt. ¶ 1-3.

#### 1. Gortler's Rebuttal Report Asserts That Defendants' Accused Products Do Not Infringe the Claims of the '656 Patent Based on His Erroneous Claim Construction

In his rebuttal report, Gortler asserts, among other contentions, that the Accused Products do not infringe the claims of the '656 Patent because Artec has failed to show that they satisfy the elements of "at least a first slide virtual line and a second slide virtual line are defined on said slide surface" of independent Claims 1 and 12. Gorter Rebutal Rpt. ¶¶ 59-68. He bases this assertion entirely on the same proposed claim construction that he used in his Opening Report, namely that that the "virtual lines" called for in '656 Patent claims must "exist[] on the surface of the slide," i.e., to be "contained on the surface of the slide medium". *See* Exh. 4 Gorter Rebuttal Rpt. ¶60.

## III. LEGAL STANDARDS

### A. A Court Must Act as a Gatekeeper, Excluding Irrelevant and Unreliable Opinions

Defendants, as the proponents of expert evidence, must bear the initial burden of establishing admissibility by a "preponderance of proof." *See Bourjaily v. United States*, 483 U.S. 171, 175- 76 (1987) (discussing FED. R. EVID. 104(a)); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 & n.10 (1993) (citing *Bourjaily*, 483 U.S. at 175-76). In evaluating that proof, a court must act as "'a gatekeeper to exclude invalid and unreliable expert testimony.'" *Bickerstaff v.Vassar Coll.,* 196 F.3d 435, 449 (2d Cir. 1999); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). In performing this task, Federal Rule of Evidence 702 and *Daubert*

[4] The Gortler Rebuttal Report is attached as Exhibit 4 to the de Bodo Declaration.

"assign[] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand" and, if not, the testimony must be excluded." *Daubert*, 509 U.S. at 589, 592-93, 597; *Kumho Tire*, 526 U.S. at 147-49.

Rule 702 requires that "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702; *see Daubert*, 509 U.S. at 598.

*Daubert* lays out four general criteria for determining the validity of an expert's methodology: (1) whether the theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known or potential rates of error with regards to specific techniques; and (4) whether the theory or approach has general acceptance. *Id*. at 593–94. These guidelines are not to be construed as a "definitive checklist," 509 U.S. at 593, and the applicability of any one factor will depend "upon the particular circumstances of the particular case at issue." *Kumho Tire* 526 U.S. at U.S. 137.

District courts thus must ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005) (internal quotation marks omitted) (quoting *Daubert*, 509 U.S. at 589). To meet this standard, every step of an expert's analysis must be reliable. *See Amorgianos v. AMTRAK*, 303 F.3d 256, 267 (2d Cir. 2002). Before admitting expert testimony under FRE 702 and *Daubert*, the district court should make the following determinations: (1) "whether the witness is qualified to be an expert;" (2) "whether the opinion is based upon reliable data and methodology;" and (3)

"whether the expert's testimony on a particular issue will assist the trier of fact." *Marini v. Adamo*, 995 F. Supp. 2d 155, 179 (E.D.N.Y. 2014) (citing *Nimely*, 414 F.3d at 396-97).

"Expert testimony that usurps the role of the factfinder or that serves principally to advance legal arguments should be excluded." *Choi v. Tower Rsch. Cap. LLC*, 2 F.4th 10, 20 (2d Cir. 2021); *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (use of expert testimony is not permitted if it will "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.").

It is thus a court's responsibility as gatekeeper to first determine whether the testimony "is relevant, *i.e.*, whether it 'ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 184 (2d Cir. 2001) (quoting FED. R. EVID. 401). Second, the court must ensure the opinions are reliable—to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). To meet this standard, every step of an expert's analysis must be reliable. *See Amorgianos v. AMTRAK*, 303 F.3d 256, 267 (2d Cir. 2002). The court "should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.*

### B. Assertions of Invalidity and Non-Infringement Must Be Based on a Proper Construction of the Asserted Claims

"An infringement analysis entails two steps." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1350 (Fed. Cir. 2001). "In the first step the court 'construes' the patent claims by

establishing the scope and boundaries of the subject matter that is patented, as a matter of law, and in the second step the trier of fact applies the construed claims to the accused device. *Id.* Similarly, "a court may not invalidate the claims of a patent without construing the disputed limitations of the claims and applying them to the allegedly invalidating acts." *Dana Corp. v. American Axle & Mfg., Inc.*, 279 F.3d 1372, 1376 (Fed.Cir.2002).

Further, it is "the long-accepted truth—perhaps the axiom—that infringement and invalidity are separate matters under patent law." *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632, 643, 135 S.Ct. 1920, 191 L.Ed.2d 883 (2015); *See Cardinal Chemical Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 96, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993) ("A party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement."). "Fundamentally, infringement and invalidity are separate 'issues.'" *VirnetX Inc. v. Apple Inc.*, 931 F.3d 1363, 1372 (Fed. Cir 2019). *see also Carman Indus., Inc. v. Wahl*, 724 F.2d 932, 936 n. 2, 220 USPQ 481, 484 n. 2 (Fed.Cir.1983) (the district court erroneously "combined the analysis of validity with that of infringement").

## IV. ARGUMENT

### A. The Court's Markman Order Cannot Be Used to Assert That the Virtual Lines in the Claims of the '656 Patent Must "Exist on the Surface of the Slide"

#### 1. To the Extent The Court Made a Passing Comment That the "Virtual Lines" Are What Comprise the "Slide Pattern", That Comment is Mere Dicta

To the extent the Court made a passing comment that the "virtual lines" comprise the "slide pattern", that comment is mere dicta and should not be controlling in any invalidity, eligibility, or infringement analysis. "Dictum generally refers to an observation which appears in the opinion of a court which was unnecessary to the disposition of the case before it." *Hormel*

*Foods Corp. v. Jim Henson Productions, Inc.,* 73 F.3d 497 (2d Cir. 1996) "It is a 'statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding....'." *Id.* (quoting *Gillespie v. United States Steel Corp*., 321 F.2d 518, 530 (6th Cir.1963), *aff'd*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964)). Further, a statement about an issue that is "not before the Court can be viewed as dicta". *United States v. Leonard*, 844 F.3d 102, 111 (2d. Cir., 2016).

Making any association between the term "virtual lines" or the term "slide pattern" was not necessary for the Court's construction ruling on the meaning of the term "defined on said slide surface. Whatever the "slide pattern" may or may not be comprised of, whether it be "virtual lines" or something else, is irrelevant to ***where*** the slide pattern might be or in what form it might be there in. *See Hormel Foods Corp.*, 73 F.3d at 508. Further, the issues of the meaning of the terms "virtual lines" and "slide pattern" (apart from its location) was not before the Court. *See Leonard*, 844 F.3d at 111. Thus, any construction of those terms the Court might be said to have made would be mere dicta and should not be used in any invalidity or infringement analysis.

### 2. A Construction That the "Virtual Lines" Must Physically Exist on the Surface of the Slide Would be Erroneous

#### a. The Plain Meaning of "Virtual" Requires "Virtual Lines" to not be Physical

The definition of the word "virtual" clearly shows that the "virtual lines" should not have a physical location. *See Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("we look to the words of the claims themselves ... to define the scope of the patented invention"). Per Merriam-Webster.com:

**virtual**

**2** **:** being on or simulated on a computer or computer network
| print or *virtual* books
| a *virtual* keyboard
: such as
**a :** occurring or existing primarily online
| *virtual* shopping
**b :** of, relating to, or existing within a virtual reality
| a *virtual* tour

https://www.merriam-webster.com/dictionary/virtual (last accessed July 8, 2025).

Gortler agrees that the term "virtual" does not indicate a physical presence but rather some that has mathematical or computer representation. Exh. 3 Gortler Tr. 156:24-158:1 ("Virtual lines can be either in a program, or they can be imagined. I didn't get all the exact words, but I agree with those two concepts. Virtual can be imagined in your head, or it can be a statement of mathematics, or it can be a representation in computer code.")

The term "virtual" alone thus indicates that the "virtual lines" do not have a physical location.

Notably, the Court's reliance on the dictionary definition of "define" in its analysis is mistaken. That analysis referred only to the second, less relevant subpart of the definition. (*See* ECF 129, p. 13) This first and most relevant definition of "define" states:

**define**

**1** **a :** to determine or identify the essential qualities or meaning of
| whatever *defines* us as human
**b :** to discover and set forth the meaning of (something, such as a word)
| how the dictionary *defines* "grotesque"
**c** **computing :** to create with established rules or parameters
| *define* a window
| *define* a procedure

https://www.merriam-webster.com/dictionary/define (last accessed July 8, 2025).

The plain meaning of the claim language, therefore, shows that the virtual lines are not physically located on the slide surface.

**b. The '656 Patent Specification Shows That the "Virtual Lines" are Part of an Algorithm That Uses Epipolar Geometry and Thus Do Not Have a Physical Presence**

It is undisputed that the embodiments shown in the '656 Patent specification describe an algorithm that uses epipolar geometry. *See* '656 Patent 5:11-19; Transcript of June 2, 2025 Deposition of Steven Gortler ("Gortler Tr.") at 98:14-100:19 ("This is indistinguishable from what we just talked about, which is -- which is traditionally called epipolar geometry in the literature."). Epipolar geometry uses what are called "epipolar lines" to determine the distance to an object for the purpose of making 3-Dimensional measurements. [CITE to GORTLER] Epipolar lines do not exist physically, but rather they exist as part of the algorithm that makes 3D calculations, fitting clearly within the definition for "virtual lines" [CITE to Webster and Gortler above] While the '656 Patent specification does not use the term "virtual lines", it describes the use of "meridians", which perform the exact function of the virtual epipolar lines in epipolare geometry. '656 Patent, 5:21-6:26; Exh. 3 Gortler Tr. 116:9-18 ("I would interpret the virtual lines as the same as the meridians.")

Conversely, the '656 Patent specification contains no description of any "virtual lines" or any lines used as epipolar lines that physically located on a projector slide. Exh. 2 Gortler Opening Rpt. ¶ 120

It is thus undisputed that the '656 patent specification only describes embodiments that use virtual epipolar lines that have no physical existence but instead are mathematical and algorithmic definitions used in epipolar geometry.

### B. Gortler's Invalidity and Non-Infringement Opinions Relying of a Construction of "Virtual Lines" Exist on the Slide Surface Constitute Improper Legal Arguments

As noted above in Section II.B.2, the Court made no explicit ruling that the "virtual lines" of independent claims of the '656 Patent must "exist[] on the surface of the slide". Rather the Court ruled that the " [t]he ***slide pattern*** exists on the surface of the slide." ECF 129, p. 31 (emphasis added). While there are statements in the Markman Order that appear to make informally construe the "virtual lines" as being the components that make up the "slide pattern" or, conversely, to construe the "slide pattern" as consisting of "virtual lines", these constructions are not articulated as official construction in the Markman Order and are mere dicta. *See* Section, IV.A.1, *supra*. Nevertheless, in his reports, Gortler improperly elevates this construction to the level of an official ruling by the Court. *See* Exh. 2 Gortler Opening Rpt. ¶¶ 120-1125; Exh. 4 Gorter Rebuttal Rpt., ¶¶ 118, 126-130, 137-140. By so doing, he is improperly asserting legal conclusions rather than proper expert opinions and thus this testimony must be precluded. *See Choi v. Tower Rsch. Cap. LLC*, 2 F.4th 10, 20 (2d Cir. 2021) ("Expert testimony that usurps the role of the factfinder or that serves principally to advance legal arguments should be excluded.").

### C. Gortler's Invalidity and Non-Infringement Opinions are Unreliable Because They Rely on an Erroneous Claim Construction

As noted above, any claim construction, official or mere dicta, that the "virtual lines" must "exist on the slide surface" would be wrong as a matter of law. *See* Section, IV.A.2, *supra*. It is black letter law that infringement and invalidity determinations must be based on proper claim construction. *See Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1350 (Fed. Cir. 2001); ." *Dana Corp. v. American Axle & Mfg., Inc.*, 279 F.3d 1372, 1376 (Fed.Cir.2002). Gortler's reliance on this erroneous claim construction means that is opinions are not "based upon reliable

data and methodology" and will not "assist the trier of fact." *See Marini v. Adamo*, 995 F. Supp. 2d 155, 179, *supra.* For this further reason, Gortler's opinions relying on his false "virtual lines" construction should be precluded.

**D. Gortler's Invalidity Opinions Improperly Conflate Invalidity and Infringement Analyses**

As noted above, Gortler's opinion that the following limitations in Claims 1 and 2 of the '656 Patent are invalid as being indefinite is based entirely on his interpretation of Artec's infringement contentions:

> wherein at least a first slide virtual line and a second slide virtual line are defined on said slide surface, where said first slide virtual line is defined by an intersection between said slide surface and a first plane passing through said projector lens vertex and through said device lens vertex, and said second slide virtual line is defined by an intersection between said slide surface and a second plane passing through said projector lens vertex and through said device lens vertex,
>
> . . .
>
> wherein said coded elements of said first group are located along said first virtual line and said coded elements of said second group are located along said second virtual line.

Exh. 2 Gortler Opening Rpt. ¶¶ 118, 126-130, 137-140; Section 11.C.2, *supra.*

This reasoning is erroneous because it is "the long-accepted truth—perhaps the axiom—that infringement and invalidity are separate matters under patent law." *Commil USA, LLC v. Cisco Systems, Inc*., 575 U.S. 632, 643, *supra, See Cardinal Chemical Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 96, *supra* ("A party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement."). Gortler's invalidity opinions on these claim elements are thus not "based upon reliable data and methodology" and will not "assist the trier of fact" and therefore should be precluded. *See Marini, supra,* 995 F. Supp. at 179, *supra.*

## V. CONCLUSION

For the foregoing reasons, Plaintiff Artec Europe S.à.r.l respectfully requests the Honorable Court to preclude the testimony of Defendants' technical expert, Steven J. Gortler, to the extent that testimony improperly relies on the claim construction first proposed by Gortler in his opening report that the "virtual lines" must "exist[] on the surface of the slide" improperly conflating Gortler's invalidity analysis with Artec's infringement contentions.

Los Angeles, California
Dated: July 9, 2025

Respectfully submitted,

*/s/ Richard de Bodo*

Richard de Bodo
**RIMON PC**
2029 Century Park East, Suite 400N
Los Angeles, CA 90067
Telephone: (310) 943-7301
richard.debodo@rimonlaw.com

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of this document has been served via email to counsel of record in accordance with the Federal Rules of Civil Procedure.

Dated: July 9, 2025

*/s/ Richard de Bodo*
Richard de Bodo