UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTEC EUROPE S.À R.L.,<br><br>Plaintiff,<br><br>v.<br><br>SHENZHEN CREALITY 3D TECHNOLOGY CO., LTD., and SHENZHEN JIMUYIDA TECHNOLOGY CO., LTD.,<br><br>Defendants. | Case No. 1:22-cv-01676-OEM-CHK<br><br>[PROPOSED] JOINT PRETRIAL ORDER<br><br>Jury Trial Demanded |

Pursuant to Section V.B of the Individual Practices and Rules of the Honorable Orelia E. Merchant and the Court's Scheduling Order entered April 28, 2026 (ECF No. 182), as modified by the Court on July 10, 2026, the parties respectfully submit this proposed Joint Pretrial Order.

## (a) Caption

The full caption of this action is set forth above. This is an action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 et seq.

## (b) Parties and Trial Counsel

**Plaintiff.** Artec Europe S.à r.l. ("Artec").

**Counsel for Plaintiff Artec Europe S.à r.l.:**

Richard de Bodo
BARTON LLP
100 Wilshire Boulevard, Suite 1300
Santa Monica, California 90401

Telephone: 424-850-8799
rdebodo@bartonesq.com

Douglas L. Bridges
ADAMS IP, LLC

453 Dauphin Street, Mobile, AL 36602
Tel: (251) 206-0379
doug@adamsiplaw.com

**Defendants.** Shenzhen Creality 3D Technology Co., Ltd. ("Creality") and Shenzhen Jimuyida Technology Co., Ltd. ("Jimuyida") (collectively, "Defendants").

**Counsel for Defendants Shenzhen Creality 3D Technology Co., Ltd. and Shenzhen Jimuyida Technology Co., Ltd.:**

Michael DeVincenzo
Charles Wizenfeld
Andrea Pacelli
King & Wood LLP
600 5th Ave, 27th Floor
New York, NY 10020
Tel: (212) 319-4755
michael.devincenzo@us.kingandwood.com
charles.wizenfeld@us.kingandwood.com
andrea.pacelli@us.kingandwood.com

## (c) Subject Matter Jurisdiction

**Plaintiff's statement.** This is a civil action arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271 and 281–285. This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (acts of Congress relating to patents).

**Defendants' statement.** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq. Defendants do not dispute that this Court has subject matter jurisdiction. For purposes of this action only, Defendants do not dispute that venue is proper in this district. For purposes of this action only Defendants do not dispute personal jurisdiction.

## (d) Summary of Claims and Defenses Remaining to Be Tried

**Plaintiff's Statement of Allegations:** Artec asserts the following claims against Defendants Shenzhen Creality 3D Technology Co., Ltd. ("Creality") and Shenzhen Jimuyida Technology Co., Ltd. ("Jimuyida"), which remain to be tried following the Court's Memorandum and Order on summary judgment and Daubert motions (ECF No. 180, Apr. 19, 2026).

The "Accused Products" are: (i) the Creality CR-Scan 01 and CR-Scan Lizard 3D scanners and the accompanying CR Studio software (the "Creality Products"); and (ii) the Jimuyida (3DMakerPro) Magic Swift Plus, Whale, Mole, Lynx, Seal, Seal Lite, Moose, and Moose Lite 3D scanners and the accompanying JM Studio software (the "Jimuyida Products"), all of which operate using a common accused software codebase.

The asserted claims, and the type of each, are as follows:

**'656 Patent:** system claims 1–4 and 6–11 (claim 1 independent); method claims 12–15 and 17–22 (claim 12 independent).

**'129 Patent:** system claims 1 and 3–5 (claim 1 independent); method claims 10, 12, and 13 (claim 10 independent).

**'357 Patent:** method claims 11–15 and 17 (claim 11 independent), asserted under the doctrine of equivalents only following the Court's summary-judgment ruling.

Artec asserts direct infringement under 35 U.S.C. § 271(a), induced infringement under § 271(b), and contributory infringement under § 271(c) against each Defendant as to each asserted claim of each Asserted Patent, as set forth patent-by-patent, claim-by-claim, and Defendant-by-Defendant below. As to the asserted method claims, and as set forth in paragraphs 1(b), 2(b), and 3 below, Artec's principal theory is indirect infringement under §§ 271(b) and 271(c) premised on performance of the claimed steps by United States customers, distributors, resellers, and end users. Each theory is asserted as to each Accused Product made, used, sold, offered for sale, imported, or supported by or for the accused Defendant.

**1. Direct infringement of the '656 Patent (35 U.S.C. § 271(a)).** Artec asserts that each Defendant has directly and literally infringed, and continues to directly and literally infringe, each of claims 1–4, 6–15, and 17–22 of the '656 Patent. The Court construed the '656 "virtual lines" limitations as defined algorithmically in software, denied summary judgment of non-infringement of the '656 Patent (ECF No. 180 at 16), and excluded the contrary defense expert opinions premised on physical lines on the slide (id. at 32–33).

**(a) System claims 1–4 and 6–11.** Creality has directly and literally infringed each of these claims by importing into the United States, using, offering for sale, and selling the Creality Products, each of which embodies every limitation of those claims, and by using, testing, and demonstrating those products in the United States. Jimuyida has directly and literally infringed each of these claims by making the CR-Scan 01 and CR-Scan Lizard scanners supplied to Creality for sale in the United States, and by importing into the United States, using, offering for sale, and selling the Jimuyida Products, each of which embodies every limitation of those claims.

**(b) Method claims 12–15 and 17–22.** The asserted method claims of the ’656 Patent are directly infringed under 35 U.S.C. § 271(a) by the performance of every claimed step in the United States. Artec’s principal theory as to these claims is that United States customers, distributors, resellers, and end users perform the claimed steps when they operate the Accused Products with the CR Studio or JM Studio software, and that each Defendant is liable for that direct infringement under §§ 271(b) and 271(c) as set forth in paragraphs 4 and 5 below. Artec asserts direct infringement of these method claims against a Defendant only to the extent the evidence at trial establishes that the Defendant itself performed every claimed step in the United States, including through its own operation, testing, or demonstration of the Accused Products in the United States. Artec does not contend that the making, sale, offer for sale, or importation of a scanner, or the distribution of software, is by itself the performance of a method step.

**2. Direct infringement of the ’129 Patent (35 U.S.C. § 271(a)).** Artec asserts that each Defendant has directly and literally infringed, and continues to directly and literally infringe, each of claims 1, 3–5, 10, 12, and 13 of the ’129 Patent. The Court denied summary judgment of non-infringement of the ’129 Patent (ECF No. 180 at 21).

**(a) System claims 1 and 3–5.** Creality has directly and literally infringed each of these claims by importing into the United States, using, offering for sale, and selling the Creality Products, each of which embodies every limitation of those claims, and by using, testing, and demonstrating those products in the United States. Jimuyida has directly and literally infringed each of these claims by making the CR-Scan 01 and CR-Scan Lizard scanners supplied to Creality for sale in the United States, and by importing into the United States, using, offering for sale, and selling the Jimuyida Products.

**(b) Method claims 10, 12, and 13.** The asserted method claims of the ’129 Patent are directly infringed under 35 U.S.C. § 271(a) by the performance of every claimed step in the United States. Artec’s principal theory as to these claims is that United States customers, distributors, resellers, and end users perform the claimed steps when they operate the Accused Products with the CR Studio or JM Studio software, and that each Defendant is liable for that direct infringement under §§ 271(b) and 271(c) as set forth in paragraphs 4 and 5 below. Artec asserts direct infringement of these method claims against a Defendant only to the extent the evidence at trial establishes that the Defendant itself performed every claimed step in the United States, including through its own operation, testing, or demonstration of the Accused Products in the United States.

**3. Infringement of the ’357 Patent under the doctrine of equivalents (35 U.S.C. § 271(a)).** Artec asserts that each Defendant has infringed, and continues to infringe, claims 11–15 and 17 of the ’357 Patent under the doctrine of equivalents, in that any claim element not literally present in the Accused Products is satisfied by an equivalent that performs substantially the same function in substantially the same way to achieve substantially the same result, with only insubstantial differences. The Court granted summary judgment of no literal infringement of the ’357 Patent but expressly preserved Artec’s doctrine-of-equivalents theory for trial (ECF No. 180 at 26, 35 & n.6).

**Per Defendant:** The asserted claims of the ’357 Patent are method claims. Artec’s principal theory as to these claims is that United States customers, distributors, resellers, and end users perform the claimed steps, or their substantial equivalents, when they operate the Accused Products with the CR Studio or JM Studio software, and that each Defendant is liable for that direct infringement under §§ 271(b) and 271(c) as set forth in paragraphs 4 and 5 below.

Artec asserts direct infringement of these claims against a Defendant only to the extent the evidence at trial establishes that the Defendant itself performed every claimed step, or its substantial equivalent, in the United States.[1] Artec does not assert literal infringement of the ’357 Patent.

**4. Induced infringement (35 U.S.C. § 271(b)).** Artec asserts that each Defendant has induced, and continues to induce, infringement of each asserted claim of each Asserted Patent by United States customers, distributors, resellers, and end users, whose use of the Accused Products directly infringes those claims. The direct infringement induced is the use in the United States of the Creality Products with the CR Studio software and of the Jimuyida Products with the JM Studio software, which use practices every limitation of the asserted system claims and performs every step of the asserted method claims.

**(a) Claims as to which inducement is asserted.** Against Creality and against Jimuyida alike: ’656 Patent system claims 1–4 and 6–11 and method claims 12–15 and 17–22; ’129 Patent system claims 1 and 3–5 and method claims 10, 12, and 13; and ’357 Patent method claims 11–15 and 17 under the doctrine of equivalents.

**(b) Creality’s inducing acts.** With knowledge of the Asserted Patents and of the infringing nature of the Accused Products (see paragraph 6 below), Creality has actively and with specific intent encouraged that direct infringement by, among other acts: selling and importing the Creality Products into the United States; distributing, updating, and offering for download the CR Studio software, without which the Creality Products cannot operate;

[1] Plaintiff did not identify any evidence of direct infringement during discovery and has refused to identify any instances of such direct infringement of either the system claims or the method claims as the systems have not been made by Defendants in the United States and there is no evidence each element of the system claims were ever used in the United States.

publishing user guides, wikis, tutorials, and instructional and promotional materials directing customers to set up and operate the Creality Products in an infringing manner; training its sales channel and personnel on the operation and use of the Creality Products; and providing technical support directing infringing use.

**(c) Jimuyida's inducing acts.** With knowledge of the Asserted Patents and of the infringing nature of the Accused Products (see paragraph 6 below), Jimuyida has actively and with specific intent encouraged that direct infringement by, among other acts: designing, manufacturing, and supplying the CR-Scan 01 and CR-Scan Lizard scanners to Creality for sale into the United States; selling and importing the Jimuyida Products into the United States; developing, distributing, updating, and offering for download the JM Studio software, and the common accused codebase shared with CR Studio, without which the Accused Products cannot operate; publishing user guides, wikis, tutorials, and instructional and promotional materials directing customers to set up and operate the Accused Products in an infringing manner; and training Creality's marketing and sales personnel on how to use the accused scanners.

**(d) Continuing conduct.** Each Defendant's inducing conduct has continued after the filing of this action and continues through the present, including each Defendant's continued distribution of the accused software and operating instructions for both currently marketed and previously sold Accused Products.

**5. Contributory infringement (35 U.S.C. § 271(c)).** Artec asserts that each Defendant has contributed, and continues to contribute, to the direct infringement by United States customers, distributors, resellers, and end users of each asserted claim of each Asserted Patent — namely, '656 Patent system claims 1–4 and 6–11 and method claims 12–15 and 17–22; '129 Patent

system claims 1 and 3–5 and method claims 10, 12, and 13; and ’357 Patent method claims 11–15 and 17 under the doctrine of equivalents.

**(a) Creality.** Creality has sold, offered for sale, and imported into the United States the Creality Products and the CR Studio software, each of which constitutes a material component of the patented inventions and a material part thereof, is especially made and especially adapted for use in an infringement of the asserted claims, and is not a staple article or commodity of commerce suitable for substantial non-infringing use, with knowledge of the Asserted Patents and knowledge that those components were especially made and adapted for an infringing use.

**(b) Jimuyida.** Jimuyida has sold, offered for sale, and imported into the United States the Jimuyida Products and the JM Studio software, and has supplied the CR-Scan 01 and CR-Scan Lizard scanners and the common accused software codebase for sale into the United States, each of which constitutes a material component of the patented inventions and a material part thereof, is especially made and especially adapted for use in an infringement of the asserted claims, and is not a staple article or commodity of commerce suitable for substantial non-infringing use, with knowledge of the Asserted Patents and knowledge that those components were especially made and adapted for an infringing use.

**6. Willful infringement (35 U.S.C. § 284).** Artec asserts that each Defendant’s infringement of each Asserted Patent has been, and continues to be, willful, deliberate, and in conscious disregard of Artec’s patent rights, and that the character of that conduct supports enhancement of damages up to treble under 35 U.S.C. § 284.

**7. Damages period.** Artec does not seek damages for infringement occurring before this action was commenced against each Defendant, and does not seek pre-suit damages. Artec seeks

damages accruing from the date on which each Asserted Patent was first asserted against each Defendant in this action, through judgment, together with supplemental damages for any infringing sales not reflected in the trial record. As to the ’656 Patent, damages accrue at least from the filing of the Complaint on March 25, 2022. As to the ’129 and ’357 Patents, damages accrue at least from April 24, 2023, the date on which those patents were first asserted. As to Jimuyida, damages accrue no earlier than January 30, 2023, the date on which Jimuyida was first named as a defendant in this action. Mr. DeBaere’s Supplemental Expert Report dated June 6, 2025 presents reasonable royalty damages calculated using these damages start dates. Because Artec does not seek pre-suit damages, the marking provisions of 35 U.S.C. § 287 are not at issue, and Artec withdraws any contention that it is entitled to damages for any period preceding the dates set forth above.

**Relief sought.** Artec seeks: (1) an award of damages adequate to compensate for Defendants’ infringement, and in no event less than a reasonable royalty for the use made of the inventions, measured from the damages start date applicable to each Asserted Patent and each Defendant as set forth in paragraph 7 above through judgment, including supplemental damages for infringement not captured by the sales data presented at trial; (2) enhancement of damages up to treble under 35 U.S.C. § 284 in view of Defendants’ willful infringement; (3) a finding that this is an exceptional case and an award of Artec’s reasonable attorneys’ fees under 35 U.S.C. § 285; (4) an ongoing post-judgment royalty on Defendants’ continued making, using, selling, offering for sale, and importing of the Accused Products and products not colorably different therefrom, for the remaining terms of the Asserted Patents, at a rate enhanced to reflect the willful,

adjudicated character of any post-verdict infringement; (5) pre-judgment and post-judgment interest; and (6) costs and expenses as permitted by law.

**Statutes relied upon.** 35 U.S.C. §§ 271(a), 271(b), 271(c), 281, 284, 285; 28 U.S.C. §§ 1331, 1338(a).

**Defendants' Response and Statement of Allegations:** Defendants' statement of defenses that remain to be litigated is based on the arguments it expects to make to establish non-infringement and invalidity as well as its understanding of the arguments that Plaintiff is likely to make in support of its assertions. Defendants reserve the right to modify and/or supplement this statement should the Court issue any subsequent rulings. To the extent the factual arguments Plaintiff puts forth are different from or additional to Defendants' stated understanding above, Defendants reserve the right to modify and/or supplement this statement and contest those factual arguments and to present any and all rebuttal evidence in response to those arguments. By providing this statement, Defendants do not concede that all the recited issues are appropriate for trial. This statement is not exhaustive and Defendants reserve the right to prove or rebut any issues identified in the pleadings, discovery or expert reports.

Defendants further object to Plaintiff's failure to disclose a good faith basis for several of the issues Plaintiff intends to raise at trial, and that Plaintiff failed to plead in its Complaint and/or disclose during discovery. These include (i) claims of direct infringement by Defendants under 35 U.S.C. 271(a) and (ii) claims of willful infringement by Defendants under 35 U.S.C. § 284. Despite Defendants' repeated requests for Plaintiff to provide its positions in writing so that Defendants could provide responses, Plaintiff failed to articulate a basis for including its unpled and/or undisclosed theories in the Joint Pretrial Order. Defendants reserve the right to move the

Court to strike such issues from the Joint Pretrial Order, and/or supplement their defenses should Plaintiff provide such positions after the filing of this Joint Pretrial Order.

## Non-Infringement (35 U.S.C. § 271):

### 1. The ’656 Patent

Defendants do not infringe any asserted claim of the ’656 Patent (claims 1–4, 6–15, and 17–22), either directly or indirectly, literally or under the doctrine of equivalents, because the Accused Products do not include the following claim limitations as properly construed:

- “a device for capturing an image” (independent claims 1, 12)
- “at least a first slide virtual line and a second slide virtual line are defined on said slide surface” (independent claims 1, 12)
- “said coded elements of said first group are located along said first virtual line and said coded elements of said second group are located along said second virtual line” (independent claims 1, 12)
- “a line extending between the projector vertex and the device vertex is not perpendicular to either the projector optical axis or the device optical axis.” (dependent claims 6, 17)

Artec has not alleged that any limitation of the ’656 Patent is infringed under the doctrine of equivalents.

**Direct Infringement:** Claims 1–4, 6–7, and 9–11 of the ’656 Patent are system claims, and direct infringement requires Plaintiff to prove a Defendant imported, made, used, sold, or offered for sale a product embodying every limitation of an asserted claim in the United States. Claims 12–15, 17–18, and 20–22 of the ’656 Patent are method claims, and direct infringement requires proof that every step of the method claim is performed in the United States. Artec has not provided contentions of direct infringement with respect to the ’656 Patent. Specifically, the

Accused Products do not directly infringe any asserted claim of the ’656 Patent because they admittedly do not contain, inter alia, a “computing device” as required by system claims 1–4, 6–7, and 9–11, and are not capable of performing a step of “determining a measurement” as required by method claims 12–15, 17–18, and 20–22. As such, making, using, selling, offering for sale, and importing the Accused Products in the United States does not infringe the claims of the ’656 Patent in the absence of their use of additional devices, i.e., a computer, which are not sold by Defendants.

Further, Artec has not provided any credible allegation, let alone evidence, that Defendants perform any allegedly infringing acts in the United States, such as making, using, selling, offering for sale, or importing the Accused Products in combination with a computer. Artec failed to disclose any instance of direct infringement during discovery either as part of its infringement contentions or in response to a specific interrogatory seeking such contentions. Further, Artec has failed to articulate a good faith basis for contending that any Defendant has made, use, sold or offered for sale any patented invention including each limitation of the asserted system claims in the United States.

**Indirect Infringement:** To the extent Plaintiff alleges indirect infringement (either inducement or contributory), Plaintiff has not adduced any evidence to prove the requisite elements of indirect infringement, including (i) direct infringement by customers or other third parties in the United States, (ii) Defendants’ knowledge of the ’656 Patent prior to filing of the Complaint, and (iii) lack of substantial non-infringing uses (for contributory infringement). Further, Plaintiff has not adduced evidence of direct infringement by any end-users of the Accused Products in the United States, a necessary prerequisite for a claim of indirect infringement. In addition, Defendants do not have the requisite intent and/or knowledge of infringement required for

indirect infringement as evidenced by its Defenses in this litigation both at trial and throughout discovery as well as Artec's belated disclosures of its infringement theories and failure to articulate infringement throughout this action.

**2. The '129 Patent**

Defendants do not infringe any asserted claim of the '129 Patent (1, 3–5, 10, 12, and 13), either directly or indirectly, literally or under the doctrine of equivalents, because the Accused Products do not include the following claim limitations as properly construed:

- "at least one detection device" (independent claims 1, 10)
- "said display device provides a position and orientation for said object to take with respect to said at least one detection device prior to capturing the at least one image" (independent claims 1, 10)

Artec has not alleged that any limitation of the '129 Patent is infringed under the doctrine of equivalents.

**Direct Infringement:** Claims 1 and 3–5 of the '129 Patent are system claims, and direct infringement requires Plaintiff to prove a Defendant imported, made, used, sold, or offered for sale a product embodying every limitation of an asserted claim in the United States. Claims 10, 12, and 13 of the '129 Patent are method claims, and direct infringement requires proof that every step of the method claim is performed in the United States. Artec has not provided contentions of direct infringement with respect to the '129 Patent. Specifically, the Accused Products do not directly infringe any asserted claim of the '129 Patent because they admittedly do not contain, inter alia, a "display device" and a "computing device" as required by system claims 1 and 3–5, and are not capable of meeting the limitations of "said display device provides a position and orientation" and "determining a measurement" as required by method claims 10,

12, and 13. As such, making, using, selling, offering for sale, and importing the Accused Products in the United States does not infringe the claims of the ’129 Patent in the absence of their use of additional devices, i.e., a computer with a display, which are not sold by Defendants. Further, Artec has not provided any credible allegation, let alone evidence, that Defendants perform any allegedly infringing acts in the United States, such as making, using, selling, offering for sale, or importing the Accused Products in combination with a computer. Artec failed to disclose any instance of direct infringement during discovery either as part of its infringement contentions or in response to a specific interrogatory seeking such contentions. Further, Artec has failed to articulate a good faith basis for contending that any Defendant has made, use, sold or offered for sale any patented invention including each limitation of the asserted system claims in the United States.

**Indirect Infringement:** To the extent Plaintiff alleges indirect infringement (either inducement or contributory), Plaintiff has not adduced any evidence to prove the requisite elements of indirect infringement, including (i) direct infringement by customers or other third parties in the United States, (ii) Defendants’ knowledge of the ’129 Patent prior to filing of the Complaint, and (iii) lack of substantial non-infringing uses (for contributory infringement). Specifically, the limitation of a “display device” required by system claims 1 and 3–5 and “said display device provides a position and orientation” required by method claims 10, 12, and 13 can only be performed by an additional device (e.g., a user’s computer) separate from the Accused Products and not provided by Defendants. As such, there is no dispute that the Accused Products are capable of substantial non-infringing uses, e.g., performing 3D scanning without the claimed display functionality. Further, Plaintiff has not adduced evidence of direct infringement of any end-users of the Accused Products in the United States, a necessary prerequisite for a claim of

indirect infringement. In addition, Defendants do not have the requisite intent and/or knowledge of infringement required for indirect infringement as evidenced by its Defenses in this litigation both at trial and throughout discovery as well as Artec's belated disclosures of its infringement theories and failure to articulate infringement throughout this action.

**3. The '357 Patent**[2]

Defendants do not infringe any asserted claim of the '357 Patent (11–15 and 17), either directly or indirectly, literally or under the doctrine of equivalents, because the Accused Products do not include the following claim limitations as properly construed:

- "at a 3D scanner that includes one or more optical sensors" (independent claim 11)
- "for each of a plurality of respective portions of the surface of the object, determining whether a quantity of the first data meets a predefined threshold that corresponds to a quantity of data needed to reconstruct the 3D shape of the portion of the surface of the object to a predefined accuracy" (independent claim 11)
- "after determining, for each respective portion of the plurality of portions of the surface of the object, whether the quantity of the first data meets the predefined threshold that corresponds to a quantity of data needed to reconstruct the shape of the portion of the

---

[2] In addition to alleging defenses on the merits of the '357 Patent, Defendants object to Plaintiff's inclusion in this proposed pretrial order of infringement claims for the '357 Patent despite Defendants' successful motion for summary judgment directed to no infringement. Defendants will be moving to strike the relevant portions of this Order because (i) the Court has granted summary judgment of no literal infringement for the '357 Patent, (ii) Plaintiff did not oppose such motion based on any infringement theory under the doctrine of equivalents, (iii) Plaintiff failed to disclose any theory of infringement under the doctrine of equivalents during discovery and thus waived such theory, and (iv) at any rate, Plaintiff has not proffered sufficient evidence from which a jury could find infringement by equivalents. Detailed argument and supporting authority will be presented in Defendants' forthcoming motion to strike.

surface of the object to the predefined accuracy, further scanning the object using the one or more optical sensors, wherein the further scanning generates second data corresponding to the 3D shape of the surface of the object" (independent claim 11)

- "discarding at least a portion of the second data, wherein the discarded portion of the second data corresponds to respective portions of the surface of the object for which the quantity of the first data met the predefined threshold" (independent claim 11)
- "providing, to the display, for rendering with the preview of the 3D reconstruction of the shape of the surface of the object, an indication of the quantity of the first data corresponding to the 3D shape of the surface of the object, wherein the indication indicates whether the quantity of the first data meets the predefined threshold" (dependent claim 12)

**Direct Infringement:** Artec has not provided contentions of direct infringement with respect to the '129 Patent. Specifically, the Accused Products do not directly infringe any asserted claim of the '357 Patent because they admittedly are not capable of performing the steps of, e.g., "determining whether a quantity of the first data meets a predefined threshold" and "discarding at least a portion of the second data," as required by method claims 11–15 and 17. As such, making, using, selling, offering for sale, and importing the Accused Products in the United States does not infringe the claims of the '357 Patent in the absence of their use of additional devices, i.e., a computer, which are not sold by Defendants.

Further, Artec has not provided any credible allegation, let alone evidence, that Defendants perform any allegedly infringing acts in the United States, such as performing the steps of the asserted method claim in the United States. Artec failed to disclose any instance of direct infringement during discovery either as part of its infringement contentions or in response to a

specific interrogatory seeking such contentions. Further, Artec has failed to articulate a good faith basis for contending that any Defendant has made, use, sold or offered for sale any patented invention including each limitation of the asserted system claims in the United States.

**Indirect Infringement:** To the extent Plaintiff alleges indirect infringement (either inducement or contributory), Plaintiff has not adduced any evidence to prove the requisite elements of indirect infringement, including (i) direct infringement by customers or other third parties in the United States, (ii) Defendants' knowledge of the '357 Patent prior to filing of the Complaint, and (iii) lack of substantial non-infringing uses (for contributory infringement). Specifically, the steps of, e.g., "determining whether a quantity of the first data meets a predefined threshold" and "discarding at least a portion of the second data" can only be performed by software on an additional device (e.g., a user's computer) separate from the Accused Products and not provided by Defendants. As such, there is no dispute that the Accused Products are capable of substantial non-infringing uses, e.g., performing 3D scanning without the claimed software functionality. Further, Plaintiff has not adduced evidence of direct infringement of any end-users of the Accused Products in the United States, a necessary prerequisite for a claim of indirect infringement. In addition, Defendants do not have the requisite intent and/or knowledge of infringement required for indirect infringement as evidenced by its Defenses in this litigation both at trial and throughout discovery as well as Artec's belated disclosures of its infringement theories and failure to articulate infringement throughout this action.

**4. No Willful Infringement**

Defendants object to Plaintiff's assertion of willful infringement and its request for enhanced damages under 35 U.S.C. § 284, as Plaintiff did not plead or articulate a theory of willful infringement, and did not include a request for the relief of enhanced damages under 35 U.S.C. §

284 in its complaints, and did not disclose any such theories or request such relief during discovery.

**5. No Post Judgment Royalty**

Defendants object to Artec's request for a post judgment royalty as Artec made no such request in the Complaint, in its discovery responses and in its expert reports.

## Invalidity (35 U.S.C. §§ 101, 102, 103, 112):

**1. The '656 Patent**

Asserted claims 1–4, 6–15, and 17–22 of the '656 Patent are invalid as anticipated and/or obvious in view of the prior art, including the following references, alone or in combination with other references evidencing the knowledge of a person of ordinary skill in the art:

- U.S. Patent Appl. Publ. No. 2004/0005092 to Tomasi; and
- Le Moigne et al., Structured Light Patterns for Robot Mobility, IEEE J. Robotics and Automation, vol. 4, no. 5, pp. 541–548, Oct. 1988 ("Le Moigne").

All of the asserted claims of the '656 Patent are invalid under 35 U.S.C. §112 for lack of written description, enablement, and/or indefiniteness with respect to the following limitations:

- "at least a first slide virtual line and a second slide virtual line are defined on said slide surface, where said first slide virtual line is defined by an intersection between said slide surface and a first plane passing through said projector lens vertex and through said device lens vertex, and said second slide virtual line is defined by an intersection between said slide surface and a second plane passing through said projector lens vertex and through said device lens vertex" (independent claims 1, 12); and
- "said coded elements are assigned to one of at least first group or second group, each of which first group and second group comprising at least two of said coded elements";

"wherein said coded elements of said first group are located along said first virtual line and said coded elements of said second group are located along said second virtual line" (independent claims 1, 12).

All of the asserted claims of the '656 Patent are invalid under 35 U.S.C. §101 for lack of patent eligible subject matter.

**2. The '129 Patent**

Asserted claims 1, 3–5, 10, 12, and 13 of the '129 Patent are invalid as anticipated and/or obvious in view of the prior art, including the following references, alone or in combination with other references evidencing the knowledge of a person of ordinary skill in the art:

- Rusinkiewicz et al., "Real-Time 3D Model Acquisition," ACM Transactions on Graphics, vol. 21, no. 3, pp. 438–446 (July 2002); and
- U.S. Patent No. 8,224,064 to Hassebrook.

All of the asserted claims of the '129 Patent are invalid under 35 U.S.C. §112 for lack of written description, enablement, and/or indefiniteness with respect to the following limitations:

- "said display device provides a position and orientation for said object to take with respect to said at least one detection device prior to capturing the at least one image" (independent claims 1, 10).

All of the asserted claims of the '129 Patent are invalid under 35 U.S.C. §101 for lack of patent eligible subject matter.

**3. The '357 Patent**

Asserted claims 11–15 and 17 of the '357 Patent are invalid as anticipated and/or obvious in view of the prior art, including the following references, alone or in combination with other references evidencing the knowledge of a person of ordinary skill in the art:

- U.S. Patent No. 7,747,067 to Popescu et al.
- U.S. Patent No. 10,812,772 to Page et al.

**Patent Misuse (each Asserted Patent):**

Plaintiff's claims are barred, in whole or in part, by the doctrine of patent misuse. Plaintiff has impermissibly broadened the physical and/or temporal scope of its patent grant with anticompetitive effect, thereby rendering the Asserted Patents unenforceable. Specifically, Plaintiff has engaged in licensing and enforcement practices that extend beyond the scope of the Asserted Patents, with the goal and effect of stifling competition. In particular, Plaintiff sued Kickstarter, a party no longer in this action, knowing it lacked a good faith basis for its infringement allegations, and, after losing its request for a preliminary injunction, negotiated a settlement with Kickstarter under which Kickstarter agreed not to sell or offer for sale any products of Defendants without regard to whether any particular product implicates Plaintiff's asserted intellectual property. Specifically, the settlement agreement precludes Kickstarter from selling Defendants' products regardless of whether those products practice any claim of any Asserted Patent, and regardless of whether they have any relationship to the subject matter of Plaintiff's claims for infringement. This agreement extends the reach of Plaintiff's intellectual property rights well beyond the scope of what those rights actually cover, including with respect to products such as engravers and printers that are not related to Plaintiff's Asserted Patents.

## (e) Trial by Jury; Length of Trial

The parties estimate that trial will require approximately 5 - 7 trial days total split equally between Plaintiff and Defendants.

### (f) Witnesses

**Plaintiff's witnesses.** Artec expects to offer the testimony of the following fact and expert witnesses in its case-in-chief. Addresses and any additional witnesses are identified in the companion tracker and will be completed upon exchange. Only listed witnesses will be called except upon prompt notice and good cause shown.

**Expert witnesses:**

| Witness | Narrative of expected testimony |
|---|---|
| **Dr. Iman Sadeghi** | Plaintiff's technical expert. Expected to testify, consistent with his April 7, 2025 expert report, his rebuttal report on validity, and his deposition testimony, regarding: (i) the level of ordinary skill in the art and the technology of structured-light 3D scanning; (ii) the operation of the Accused Products, based on his review of Defendants' produced source code (iii) his opinion that the Accused Products satisfy each limitation of the asserted claims of the '656 Patent (iv) his opinion that the Accused Products satisfy each limitation of the asserted claims of the '129 Patent (v) his opinion regarding the data-handling and data-discarding routines in the accused source code as they relate to the asserted claims of the '357 Patent, (vi) the absence of acceptable non-infringing alternatives; and (vii) rebuttal of the opinions of Dr. Gortler and of Defendants' invalidity contentions under 35 U.S.C. §§ 102, 103, and 112, including indefiniteness, written description, and enablement, and secondary considerations of non-obviousness. Dr. Sadeghi is also expected to provide technical foundation for Mr. DeBaere's understanding of the technical benefits of the Asserted Patents. |
| **Christophe DeBaere** | Plaintiff's damages expert. Expected to testify regarding the reasonable royalty damages that would be due Artec for the use of the patents-in-suit. Mr. DeBaere's expected testimony would be consistent with his April 7, 2025 expert report, his June 6, 2025 supplemental report, and his May 28, 2025 deposition testimony. Mr. DeBaere's expected testimony would address the bases for his conclusions and would include: (i) the hypothetical negotiation framework and his application of the Georgia-Pacific factors; (ii) his opinion that the parties would have agreed to reasonable royalties of at least $130 per unit for the '656 Patent, $20 per unit for the '129 Patent, and $120 per unit for the '357 Patent; (iii) the royalty base, including his determination of the accused unit volumes sold by each Defendant in the United States and his estimates where Defendants produced revenue without corresponding quantities; (iv) the gaps, inconsistencies, and incompleteness in Defendants' |

| Witness | Narrative of expected testimony |
|---|---|
| | produced sales and financial records, and the effect of those deficiencies on his calculations; (v) prejudgment interest and an ongoing post-judgment royalty; and (vi) rebuttal of the opinions of Defendants' damages expert. Mr.DeBaere is expected to testify regarding the factual bases and assumptions underlying his opinions as presented in his reports and deposition testimony, including his review of the documents and testimony, his own research and analysis, and discussions with Artec personnel and Dr. Sadeghi. |
| **Dave Aikens** | Plaintiff's optics expert. Expected to testify, consistent with his April 7, 2025 expert report, his May 7, 2025 second expert report, and his deposition testimony, regarding: (i) the optical design and operation of the Accused Products, including the light source, the slide and the slide pattern, the projector lens and projector lens vertex, the image-capture device and its vertex, and the geometric relationship among those components; (ii) his measurement and imaging of the accused structured-light slide pattern and the coded elements it contains; (iii) his opinions concerning the hardware limitations of the asserted claims of the '656 Patent, including whether a line extending between the projector vertex and the device vertex is perpendicular to either optical axis; (iv) principles of structured-light projection, epipolar geometry, and optical calibration as they bear on the asserted claims; and (v) rebuttal of the opinions of Dr. Gortler concerning the optical characteristics of the Accused Products |

**<u>Fact witnesses:</u>**

| Witness | Narrative of expected testimony |
|---|---|
| **Gleb Gusev** | Artec's Chief Technology Officer and a named inventor of the '357 Patent. Expected to testify regarding: (i) Artec's history, business, organization, and products; (ii) the conception and development of the inventions claimed in the Asserted Patents, the problems those inventions were directed to solving, and the prior approaches then in use; (iii) the design, structure, and operation of Artec's commercial products that embody the claimed inventions; (iv) Artec's research and development investment and the commercial significance of the patented technology; (v) Artec's ownership of the Asserted Patents and the chain of title; (vi) Artec's discovery of the Accused Products, including Creality's Kickstarter campaign for the CR-Scan Lizard, his review and hands-on examination of the Accused Products and the CR Studio and JM Studio software, and the similarities he observed; (vii) Artec's pre-suit communications, including the cease-and-desist letter of on or about March 11, 2022; (viii) the competitive effects and damages Artec has experienced, including in the markets in which Artec and Defendants both sell; and (ix) other issues that arise based on testimony or evidence submitted and/or rulings by the Court. |

| Witness | Narrative of expected testimony |
|---|---|
| **Sergey Sukhovey** | Artec's Chief Experience Officer and a named inventor of the '357 Patent. Expected to testify regarding: (i) the conception and development of the inventions claimed in the '656 Patent, the '129 Patent, and the '357 Patent and the technical problems they address; (ii) the design and operation of Artec's commercial scanners and software, including the Leo scanner, including its Project Size Optimizer and HD Mode features, when those features were released, and how the Project Size Optimizer feature functions; (iii) the increase in the Leo's price, the timing of that increase relative to the release of those features, and Artec's internal reasons for it; (iv) the operation and commercial use of Artec's 3D scanning products in the field, including customer scanning workflows; (v) his percipient knowledge relating to testing and measuring the efficacy and benefits of and the time saved by 3D scanners when used to scan targetsand the scanning times he has observed for objects of varying size and complexity; (vi) Artec's marketing of 3D scanners and software and the features used to market the products and differentiate them from competing products; ; and (vii) other issues that arise based on testimony or evidence submitted and/or rulings by the Court. |
| **Alexander Osipov** | Artec Chief Information Officer and engineer. Expected to testify regarding: (i) the research, development, and engineering of Artec's 3D scanning hardware and software; (ii) the design and operation of the commercial embodiments of the Asserted Patents, including the structured-light projection and reconstruction functions of Artec's scanners and Artec Studio; (iii) Artec's records of sales and rentals of Artec products to Jimuyida and its affiliates, including that Jimuyida purchased fourteen Artec scanners and rented more than two hundred Artec scanners, and the identification of the specific transactions reflected in those records; (iv) his examination of the Accused Products and the CR Studio and JM Studio software and the similarities between those products and Artec's products and software; (v) Artec's software development practices and source code; (vi) other companies' development and marketing of competing 3D scanner products and software; and (vii) other issues that arise based on testimony or evidence submitted and/or rulings by the Court. |
| **Anastasia Khaytul** | Artec Chief Operating Officer. Expected to testify regarding: (i) Artec's business operations, corporate organization, and product lines; (ii) Artec's pricing, price lists, and price changes for its 3D scanning products during the relevant period, including the pricing of the Leo scanner; (iii) Artec's sales, distribution, and reseller channels, including in the United States; (iv) Artec's marketing and promotional materials, including materials describing scanning and the features of the Leo scanner; (v) the authenticity and ordinary-course creation and maintenance of Artec's business, financial, sales, and marketing records, |

| Witness | Narrative of expected testimony |
|---|---|
| | including records relied upon by Mr. DeBaere; (vi) Artec's ownership of the Asserted Patents and the chain of title; and (vii) the commercialization and value of the patented technologies and Artec's licensing practices; and (viii) other issues that arise based on testimony or evidence submitted and/or rulings by the Court.. |
| **Hailong Tang ("Harrison Tang") Seagon IP, Beijing, China** | Third-party investigator retained by Artec in 2018. Expected to testify regarding his investigation of Shenzhen Jimuyida Technology Co., Ltd. and its affiliates, including: his attendance at trade shows in Chengdu and Shanghai at which Jimuyida exhibited and demonstrated its 3D scanners and software; his June 8, 2018 purchase of two Jimuyida scanners; his visits to Jimuyida's office in Shenzhen, its 3D workshop in Dongguan, and the Wuhan office of Jimuyida's affiliate Wuhan Ruler Technology Co., Ltd. (also known as Chizi Technology); and his June 27, 2018 meeting at that Wuhan office with Jian Yao, then Chairman of the Board of Wuhan Ruler and Chief Technology Officer, Vice President, and a shareholder of Jimuyida, at which Mr. Yao discussed Jimuyida's purchase and acquisition of multiple scanners and software from Artec that it studied and analyzed in great detail so Jimuyida could use the information to design and build its own 3D products. Mr. Tang is also expected to testify regarding the results of his investigation into the roles and titles of Jimuyida personnel, including Luowei. Mr. Tang's testimony is offered as to Defendants' access to and copying of Artec's products and software and as to Defendants' knowledge, and is relevant to willfulness and enhanced damages. |

**Defendants' witnesses.** Defendants identify the following witnesses they may call at trial:

| Witness Name | Category | Nature of Expected Testimony |
|---|---|---|
| Wei Luo | Fact / May Call | Mr. Luo may testify regarding the design, development, and operation of the accused products. Such testimony may include (i)Jimuyida's history, business, organization, and products; (ii) the development of the accused products including the common approaches used at the time and the factual basis regarding the technology described in Defendants' technical expert report; (iii) the design, structure, and operation of Defendants' commercial products; (iv) Defendants' research and development investment and the lack of commercial significance related to the alleged inventions claimed by Artec; (vii) |

| Witness Name | Category | Nature of Expected Testimony |
|---|---|---|
| | | Defendants' good faith efforts to learn the bases of Artec's claims as well as Artec's delays in providing such basis; (viii) the effect on pricing on the market and the value of the alleged features accused of infringement from a competitive perspective; (ix) Artec's failure to provide software contentions during the pendency of the litigation; (x) Jimiyuda's knowledge and/or intent as it pertains to the patents-in-suit, non-infringement, and/or invalidity as relevant to indirect infringement and, if permitted, Artec's claim of willfulness. |
| Xun Luo | Fact / May Call | Mr. Luo may testify regarding Creality's relationship with Jimuyida as it pertains to the accused products, sales information concerning the accused products, and regarding cooperation between Creality and Jimuyida regarding sales of the accused products, Creality's knowledge, or lack thereof, of the operation of the accused products, Artec's failure to provide software contentions during the pendency of the litigation, Creality's knowledge and/or intent as it pertains to the patents-in-suit, non-infringement, and/or invalidity as relevant to indirect infringement and, if permitted, Artec's claim of willfulness. |
| Steven J. Gortler | Expert / Will Call | Mr. Gortler will offer opinions regarding non-infringement of the Asserted Claims and/or invalidity of the asserted claims in view of the prior art under 35 U.S.C. Sections 102 and 103, and under 35 U.S.C. Sections 101 and 112. |
| Adam J. Falconer | Expert / Will Call | Mr. Falconer will offer opinions regarding a rebuttal to the damages theory of Artec's damages expert, Mr. DeBaere. |

**Defendants' objections to Plaintiff's witnesses.**

Defendants object to Plaintiff's witness list and the descriptions of expected testimony set forth therein to the extent that any witness's testimony: (i) exceeds the scope of that witness's personal knowledge as established in discovery; (ii) is inconsistent with, or goes beyond, the opinions and bases disclosed in that witness's expert report, where applicable; (iii) constitutes inadmissible hearsay for which no exception applies; (iv) relates to any claim, theory, or damages calculation that was not timely and adequately disclosed during fact or expert discovery; (v) relates to any claim for willful infringement or enhanced damages, which Defendants contend was not properly pled in the operative complaint; (vi) has been excluded or limited by the Court's April 19, 2026 Memorandum and Order on summary judgment, or that Defendants intend to seek to exclude or limit through motions in limine or other pretrial motions; (vii) is cumulative of other testimony or evidence such that its probative value is substantially outweighed by the considerations set forth in Federal Rule of Evidence 403; or (viii) is otherwise inadmissible under the Federal Rules of Evidence or applicable law. Defendants reserve all rights to object to any witness's testimony at trial on any ground, whether or not specifically identified herein, and the absence of a specific objection to any witness or description of testimony in this submission shall not be construed as a waiver of any evidentiary objection. Defendants further reserve the right to supplement or modify these objections based on any supplementation of Plaintiff's witness list, any ruling by the Court on pretrial motions, and any other development prior to or during trial.

Without limiting the generality of the foregoing, Defendants raise the following specific objections to certain witnesses and anticipated testimony identified in Plaintiff's submission:

**Dr. Iman Sadeghi:**

Defendants object to the expected testimony of Dr. Sadeghi at least to the extent it relates to a theory of infringement of the ’357 Patent under the doctrine of equivalents, as Dr. Sadeghi disclosed no such regarding the doctrine of equivalents in his expert report, and Plaintiff’s claim regarding the ’357 Patent under the doctrine of equivalents is the subject of a forthcoming motion to strike.

**Christopher DeBaere:**

Defendants object to the expected testimony of Mr. DeBaere at least to the extent that it relates to purported deficiencies in Defendants’ produced sales and financial records, which is the subject of a motion in limine to be brought by Defendants. Mr. DeBaere has no personal knowledge of Defendants’ production in this case, and such testimony is highly prejudicial to Defendants.

**Gleb Gusev**:

Defendants object to the expected testimony of Mr. Gusev at least to the extent it constitutes expert opinions on technical issues, including issues of patent infringement and validity, which is the subject of another motion in limine to be brought by Defendants.

**Sergey Sukhovey:**

Defendants object to Plaintiff’s identification of Sergey Sukhovey as a witness to testify at least regarding the increase in the Leo’s price and regarding issues concerning target-free scanning, which relate solely to Plaintiff’s damages theories. Plaintiff did not identify Mr. Sukhovey in its initial disclosures as a witness with relevant knowledge to this case, let alone as a witness with factual knowledge regarding facts relevant to Plaintiff’s damages analysis. Moreover, such testimony is the subject of a motion in limine to be brought by Defendants seeking to preclude Plaintiff from offering any damages theories, methodologies, or evidentiary

bases first disclosed in expert discovery that were not timely disclosed in response to Defendants' Interrogatory No. 13, including but not limited to undisclosed royalty bases, apportionment analyses, and *Georgia-Pacific* factor analyses. Additionally, Defendants object to the expected testimony of Mr. Sukhovey to the extent it constitutes expert opinions on technical issues, including issues of patent infringement and validity, which is the subject of another motion in limine to be brought by Defendants.

**Alexander Osipov:**

Defendants object to Plaintiff's identification of Alexander Osipov as a witness to testify at least regarding "Artec's records of sales and rentals of Artec products to Jimuyida and its affiliates, including that Jimuyida purchased fourteen Artec scanners and rented more than two hundred Artec scanners, and the identification of the specific transactions reflected in those records" and "his examination of the Accused Products and the CR Studio and JM Studio software and the similarities between those products and Artec's products and software," as such testimony relates to Plaintiff's disputed claim for willfulness and enhanced damages, which is the subject of a forthcoming motion to strike and/or a motion in limine to be brought by Defendants. Additionally, Defendants object to the expected testimony of Mr. Osipov to the extent it constitutes expert opinions on technical issues, including issues of patent infringement and validity, which is the subject of another motion in limine to be brought by Defendants.

**Anastasia Khaytul:**

Defendants object to Plaintiff's identification of Anastasia Khaytul as a witness to testify at least regarding the pricing of the Leo scanner, as well as materials describing target-free scanning and the features of the Leo scanner, which relate solely to Plaintiff's damages theories. Plaintiff did not identify Ms. Khaytul in its initial disclosures as a witness with relevant

knowledge to this case, let alone as a witness with factual knowledge regarding facts relevant to Plaintiff's damages analysis. Moreover, such testimony is the subject of a motion in limine to be brought by Defendants seeking to preclude Plaintiff from offering any damages theories, methodologies, or evidentiary bases first disclosed in expert discovery that were not timely disclosed in response to Defendants' Interrogatory No. 13, including but not limited to undisclosed royalty bases, apportionment analyses, and *Georgia-Pacific* factor analyses.

**Hailong Tang:**

Defendants object to Plaintiff's identification of Hailong Tang as a witness to testify at least regarding the issues detailed by Plaintiff, which relate solely to willfulness and enhanced damages, and are the subject of a forthcoming motion to strike and/or a motion in limine to be brought by Defendants.

## (g) Deposition Designations

The parties designate their deposition testimony to be offered in their cases-in-chief in Exhibit A hereto. Each party also provides the objections and counter-designations within the Exhibit.

## (h) Stipulated Facts

**Artec's proposed stipulations.** Artec proposes the following stipulations, subject to Defendants' agreement:

1. Artec owns all right, title, and interest in U.S. Patent Nos. 7,768,656, 8,488,129, and 10,962,357 (the "Asserted Patents").
2. The '656 Patent issued on August 3, 2010; the '129 Patent issued on July 16, 2013; and the '357 Patent issued on March 30, 2021.
3. Plaintiff Artec filed a Complaint against Defendant Shenzhen Creality 3D Technology Co., Ltd. on March 25, 2022 (ECF 1).

4. Plaintiff Artec first filed a Complaint against Defendant Shenzhen Jimuyida Technology Co., Ltd. on January 30, 2023 (ECF 79).
5. The ’656 Patent is entitled “System and Method for Three-Dimensional Measurement of the Shape of Material Objects.”
6. The ’656 Patent issued on August 3, 2010 from U.S. Patent Application No. 11/846,494, to inventors Nikolay L. Lapa and Yury A. Brailov.
7. U.S. Patent Application No. 11/846,494 was filed on August 28, 2007. Accordingly, the effective filing date of the ’656 Patent is August 28, 2007.
8. The expiration date of the ’656 Patent is September 29, 2027.
9. The ’129 Patent is entitled “Combined Object Capturing System and Display Device and Associated Method.”
10. The ’129 Patent issued on July 16, 2013 from U.S. Patent Application No. 11/868,352, to inventor Yan. N. Lapa.
11. U.S. Patent Application No. 11/868,352 was filed on October 5, 2007. Accordingly, the effective filing date of the ’129 Patent is October 5, 2007.
12. The expiration date of the ’129 Patent is March 5, 2031.
13. Defendant Creality is a Chinese company with its headquarters located at 18F, JinXiuHongDu Building, Meilong Boulevard, Longhua Dist., Shenzhen, China 518131.
14. Defendant Jimuyida is a Chinese company with its headquarters located at 21CD, Songri Dingsheng Bldg, No. 9996, Shennan Avenue, in Shenzhen, China.
15. The Court issued a claim construction order on October 11, 2024 (ECF 129).
16. Each of the following U.S. patents and patent applications was filed in the United States before the invention dates of both the ’656 and ’129 Patents:

- U.S. Patent No. 3,866,078 to Norman et al.
- U.S. Patent No. 4,672,439 to Florence et al.
- U.S. Patent No. 7,050,177 to Tomasi
- U.S. Patent No. 8,224,064 to Hassebrook et al.
- U.S. Patent Appl. No. 2004/0005092A1 to Tomasi
- U.S. Patent Appl. No. 2004/0012861A1 Yamaguchi
- U.S. Patent Appl. No. 2005/0248724A1 Jones
- U.S. Patent Appl. No. 2008/0285056 to Blayvas

17. Each of the following non-U.S. patents and patent applications was published before the invention dates of both the ’656 and ’129 Patents:

- Japanese Patent No. 2005139593A to Sasano
- PCT Appl. No. WO2007059780A1 to Vinther et al.

18. Each of the following printed publications was publicly available before the invention dates of both the ’656 and ’129 Patents:

- B&H Professional Video SourceBook, Section 1 - CCD Cameras (Feb. 2007)
- El Gamal et al., “CMOS Image Sensors,” IEEE Circuits and Devices Magazine, vol. 21, issue 3 (May-June 2005), pp. 6–20
- Hall et al., “Measuring Curved Surfaces for Robot Vision,” IEEE Computer, vol. 15, issue 12, Dec. 1982
- Hartley and Zisserman, “Multiple View Geometry,” CVPR June 1999
- Le Moigne et al., “Structured Light Patterns for Robot Mobility,” IEEE J. Robotics and Automation, vol. 4, no. 5, pp. 541–548, Oct. 1988
- Rusinkiewicz et al., “Real-Time 3D Model Acquisition” (SIGGRAPH 2002 presentation)
- Rusinkiewicz et al., “Real-Time 3D Model Acquisition,” ACM Transactions on Graphics, vol. 21, no. 3, pp. 438–446 (July 2002)
- Toshiba IK-TU40A Instruction Manual

- User's Guide – Compaq MP1800 Microportable Projector (May 2000)
- Vuylsteke & Oosterlinck, "Range Image Acquisition with a Single Binary-Encoded Light Pattern" (1990)

19. Each of the following commercial products was known, used, and/or described in printed publications in the United States before the invention dates of both the '656 and '129 Patents, and/or was in public use and/or on sale within the United States more than one year before the filing dates of both the '656 and '129 Patents:
    - Compaq MP1800 Microportable Projector
    - Sony DXC-LS1 digital camera
    - Toshiba IK-TU40A digital camera
20. Each of the following U.S. patents and patent applications was filed in the United States before the invention date of the '357 Patent:
    - U.S. Patent No. 7,747,067 to Popescu et al.
    - U.S. Patent No. 10,812,772 to Page et al.
21. Structured-light scanning was known in the art prior to the '656 and '129 Patents.
22. It was well-known, routine and conventional in structured-light scanning prior to the '656 and '129 Patents to use a system including a projector, a camera, and a computer for performing triangulation.
23. It was well-known, routine and conventional in structured-light scanning prior to the '656 and '129 Patents to use a projector for projecting a structured light pattern onto a surface of an object, the projector comprising a light source, a slide with a slide pattern located on a slide surface, and a projector lens characterized by a projector lens vertex.
24. It was well-known, routine and conventional in structured-light scanning prior to the '656 and '129 Patents to use a camera for capturing an image of the structured light pattern

reflected on the object, the camera comprising a photographic lens having a vertex, a matrix radiation receiver, and a camera driver.

25. It was well-known, routine and conventional in structured-light scanning prior to the ’656 and ’129 Patents to use a computing device for determining a measurement relating to the captured image, such as a measurement of the shape of the object using a triangulation algorithm based on a correspondence between points in the slide pattern and in the captured image.

26. The “first/second virtual line” recited in the claims of the ’656 Patent correspond to the “projector meridians” of the specification, which are also known as “epipolar lines” in the technical literature.

27. Epipolar geometry was known in the art prior to the ’656 Patent.

28. It was well-known, routine and conventional in structured-light scanning prior to the ’656 Patent to use a slide pattern comprising a plurality of coded elements, where each of said coded elements is characterized by at least one parameter which defines a spatial or temporal distribution of an amplitude or a wavelength of the structured light.

29. It was well-known, routine and conventional in structured-light scanning prior to the ’129 Patent to use a display device.

30. It was well-known, routine and conventional in the field of image capture prior to the ’129 Patent to provide a preview of an image before capturing such image.

31. The specification and drawings of the ’129 Patent do not disclose any specific manner in which the display device provides a “position and orientation.”

### (i) Motions in Limine

**Plaintiff's motions in limine.** Artec anticipates filing the following motions in limine (descriptions are preliminary and subject to refinement):

1. To preclude Defendants and Dr. Gortler from offering testimony or argument that the '656 Patent's "virtual lines" must physically exist on the slide surface, consistent with the Court's exclusion of those opinions (ECF No. 180 at 32–33).
2. To preclude argument to the jury that the Asserted Patents are directed to ineligible "abstract ideas," patent-eligibility under 35 U.S.C. § 101 being a question of law already resolved (ECF No. 180 at 27–31).
3. To exclude any untimely or undisclosed prior-art invalidity theories under 35 U.S.C. §§ 102 and 103.
4. To preclude reference to the Court's denial of Artec's motion for a preliminary injunction (ECF No. 42) as bearing on infringement or validity (Fed. R. Evid. 403).
5. To limit references to the summary-judgment dismissal of Artec's claim of *literal* infringement of the '357 Patent, so as not to prejudice Artec's doctrine-of-equivalents theory.
6. To preclude evidence or argument concerning settlement communications under Fed. R. Evid. 408.

**Defendants' motions in limine.** Defendants anticipate filing the following motions in limine:

1. Motion in limine to preclude Plaintiff and its experts from referencing alleged discovery deficiencies by Defendants.

2. Motion in limine to preclude Plaintiff from presenting any theory of infringement based on the doctrine of equivalents that was not particularly disclosed during fact or expert discovery.
3. Motion in limine to preclude Plaintiff from offering any damages theories, methodologies, or evidentiary bases first disclosed in expert discovery that were not timely identified in response to Defendants' Interrogatory No. 13, including but not limited to undisclosed royalty bases, apportionment analyses, and Georgia-Pacific factor analyses.
4. Motion in limine to preclude Plaintiff from referencing the fact that the Patent Trial and Appeal Board did not institute Defendants' petition for inter partes review of the '656 Patent.
5. Motion in limine to preclude Plaintiff's principals and employees not disclosed as expert witnesses, including Gleb Gusev and Sergey Sukhovey, from providing expert opinions on technical issues, including issues of patent infringement and validity.
6. Motion in limine to preclude Plaintiff's technical expert, David Aikens, from providing opinions not disclosed in his expert report, including opinions regarding infringement by Defendants' CR-Scan 01, CR-Scan Lizard, Mole, Lynx, Seal, and Moose Lite products.
7. Motion in limine to preclude Plaintiff's technical experts, David Aikens and Iman Sadeghi, from providing opinions not disclosed in their respective expert report, including opinions regarding whether Defendants' products meet the "driver" requirement of the claims of the '656 and '129 Patents by other than so-called software "drivers."

8. Motion in limine to preclude Plaintiff's technical expert, David Aikens, from providing opinions on infringement of claims 6 and 17 of the '656 Patent which are inconsistent with the plain language of those claims.
9. Motion in limine to preclude Plaintiff's technical expert, Iman Sadeghi, from providing opinions not disclosed in his expert report, including opinions on technical matters that Plaintiff's damages expert, Christopher DeBaere, purported to rely on in forming his own opinions.
10. Motion in limine to preclude Artec from presenting arguments and evidence relating to induced infringement of the '656 Patent, and its related damages request, prior to April 19, 2026, when the Court changed the claim construction of the term "a slide pattern located on a slide surface." (ECF 180).
11. Motion in limine to preclude Plaintiff from offering evidence regarding enhanced damages under 35 U.S.C. § 284 and/or precluding Mr. Hailong Tang from testifying.

This list of motions in limine is preliminary and subject to refinement. Defendants reserve the right to supplement or modify this list.

***Note:*** Pursuant to Rule V.D, motions in limine must be filed at least 30 days before jury selection, and Daubert motions at least 45 days before jury selection.

## (j) Exhibit Schedule

**Plaintiff's exhibits.** Plaintiff provides a list of the exhibits they may offer at trial, including those that may be used for impeachment, in Exhibit B attached hereto. Plaintiff reserves the right to supplement this exhibit list.

**Defendants' exhibits.** Defendants provide a list of the exhibits they may offer at trial, including those that may be used for impeachment, in Exhibit B attached hereto. Defendants reserve the right to supplement this exhibit list.

**Defendants' objections to Plaintiff's exhibits.**

In addition to the specific objections to Plaintiff's proposed exhibits Defendants have identified in the chart attached to its initial responses to Plaintiff's contributions to the pretrial order, responding to Plaintiff's proposed exhibit list, Defendants note that approximately 170 of the purported exhibits (PX-70 through PX-239) are links to webpages, apparently copied from footnotes in Plaintiff's expert reports. None of these materials were produced during fact discovery, marked or examined as exhibits during any deposition, or otherwise captured in a fixed, dated form establishing their content as of the relevant time.

Defendants object to each of the foregoing exhibits on the grounds of failure to produce in discovery, lack of authentication (FRE 901), and the best evidence rule (FRE 1002). Simply put, a link to a webpage does not uniquely identify a "document" any more than the mere name of a newspaper (e.g., "The New York Times") uniquely identifies yesterday's, today's, or tomorrow's edition of that newspaper. This is especially problematic in a case where the links at issue refer to product features and prices that can, and will, change over time. No fixed, dated capture of these pages as they existed at any relevant time was produced during discovery, and a live hyperlink does not establish historical content, let alone permit Defendants to verify the substance of what is purportedly being offered.

Defendants further object to any exhibit relating to Plaintiff's purported damages theory for U.S. Patent No. 10,962,357 on the grounds set forth in Defendants' objection to Plaintiff's

summary of remaining claims, supra, and on the grounds that Defendants intend to move to strike Plaintiff's claims regarding the '357 Patent from the pretrial order. Defendants reserve the right to move to strike any such exhibit as irrelevant in the event that motion is granted.

Due to Plaintiff's improper bulk identification of webpages as exhibits, Defendants reserve the right to assert additional objections depending on Plaintiff's response to the objections set forth herein.

Respectfully submitted,

/s/ Richard de Bodo
Richard de Bodo
BARTON LLP
rdebodo@bartonesq.com

Douglas L. Bridges
ADAMS IP, LLC
453 Dauphin Street
Mobile, AL 36602
Tel: (251) 206-0379
doug@adamsiplaw.com

*Counsel for Plaintiff*
*Artec Europe S.à r.l.*

/s/ Charles Wizenfeld
Michael DeVincenzo
Charles Wizenfeld
KING & WOOD
600 Fifth Avenue, 27th Floor
New York, New York 10020
charles.wizenfeld@us.kingandwood.com

*Counsel for Defendants*
*Shenzhen Creality 3D Technology Co., Ltd.*
*and Shenzhen Jimuyida Technology Co., Ltd.*

SO ORDERED.

Dated: Brooklyn, New York

__________, 2026

______________________________

HON. ORELIA E. MERCHANT

UNITED STATES DISTRICT JUDGE