**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARTEC EUROPE S.À R.L.,<br><br>Plaintiff,<br><br>v.<br><br>SHENZHEN CREALITY 3D TECHNOLOGY CO., LTD., and SHENZHEN JIMUYIDA TECHNOLOGY CO., LTD.,<br><br>Defendants. | Case No. 1:22-cv-01676-OEM-CHK<br><br>Jury Trial Demanded |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S DOCTRINE OF EQUIVALENTS THEORY AS TO U.S. PATENT NO. 10,962,357 FROM THE JOINT PRETRIAL ORDER**

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. Plaintiff's Infringement Allegations and the '357 Patent ..... 3

B. Plaintiff's Infringement Contentions Disclose No Doctrine of Equivalents Theory ..... 3

C. Plaintiff's Expert Report Is Expressly Limited to Literal Infringement ..... 5

D. Plaintiff Failed to Raise Doctrine of Equivalents During Summary Judgment ..... 5

A. The July 1, 2026 Meet and Confer ..... 7

E. The Joint Pretrial Order ..... 7

III. ARGUMENT ..... 8

A. The Court Has Authority Under Rule 16 to Strike an Improperly Included Theory from the Pretrial Order ..... 8

B. Plaintiff Cannot Prove Infringement Under the Doctrine of Equivalents Without Particularized Expert Testimony, and None Exists ..... 12

C. Allowing a Brand New Theory to Proceed Would Prejudice Defendants and Waste the Court's and the Jury's Resources ..... 14

IV. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. F. Hoffman-La Roche Ltd.*,
580 F.3d 1340 (Fed. Cir. 2009)....................13

*AquaTex Indus., Inc. v. Techniche Solutions*,
479 F.3d 1320 (Fed. Cir. 2007)....................12

*Droplets, Inc. v. E*TRADE Fin. Corp.*,
No. 12-CV-2326 (CM), 2015 WL 1062670 (S.D.N.Y. Mar. 9, 2015)....................10

*Eli Lilly & Co. v. Hospira, Inc.*,
933 F.3d 1320 (Fed. Cir. 2019)....................3

*Malarkey v. Texaco, Inc.*,
No. 81 Civ. 5224, 1990 WL 241588 (S.D.N.Y. Dec. 28, 1990)....................8

*Missigman v. USI Northeast, Inc.*,
131 F.Supp.2d 495 (S.D.N.Y. 2001)....................8

*NexStep, Inc. v. Comcast Cable Communications, LLC*,
119 F.4th 1355 (Fed. Cir. 2024)....................2, 14

*Paone v. Microsoft Corp.*,
881 F.Supp.2d 386 (E.D.N.Y. 2012)....................10

*Realtime Data, LLC v. Morgan Stanley*,
No. 11-CV-6696 (KBF), 2012 WL 3158196 (S.D.N.Y. Aug. 2, 2012), *aff'd*,
554 F. App'x 923 (Fed. Cir. 2014)....................10

*Rockwell Int'l Corp. v. U.S.*,
549 U.S. 457 (2007)....................8

*Shafarman v. Ryder Truck Rental, Inc.*,
No. 83 Civ. 3000, 1984 WL 904 (S.D.N.Y. Sept. 24, 1984)....................8

*Sound Video Unlimited, Inc. v. Video Shack Inc.*,
700 F.Supp. 127 (S.D.N.Y. 1988)....................9

*Speedfit LLC v. Chapco Inc.*,
2:15-CV-1323, 2020 WL 758824 (E.D.N.Y. Feb. 14, 2020)....................10

*Strauss v. Credit Lyonnais, S.A.*,
379 F.Supp.3d 148 (E.D.N.Y. 2019)....................8

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
90 F.3d 1558 (Fed. Cir. 1996)....................12, 13

*Wilson v. Muckala*,
303 F.3d 1207 (10th Cir. 2002) ....................9

**Other Authorities**

Fed. R. Civ. P. 16....................8

## I. INTRODUCTION

Defendants Shenzhen Creality 3D Technology Co., Ltd. ("Creality") and Shenzhen Jimuyida Technology Co., Ltd. ("Jimuyida") (collectively, "Defendants") respectfully move to strike from the Joint Pretrial Order Plaintiff Artec Europe S.à.r.l.'s ("Artec" or "Plaintiff") assertion that the Accused Products infringe claims 11–15 and 17 of U.S. Patent No. 10,962,357 (the "'357 Patent") under the doctrine of equivalents.

The basis for this motion is straightforward. Despite this case being filed over four years ago, Plaintiff never pursued or disclosed a doctrine of equivalents theory. Plaintiff's contentions throughout this action have been ***solely*** based on literal infringement. Likewise, Plaintiff's technical expert prepared a report that was expressly limited to literal infringement opinions. Moreover, Plaintiff did not oppose Defendants' motion for summary judgment of no infringement of the '357 Patent by raising a doctrine of equivalents theory. Accordingly, Plaintiff should not be permitted to try to the jury a brand new doctrine of equivalents theory disclosed ***after*** this Court granted summary judgment.

Indeed, Plaintiff's new doctrine of equivalents theory, which was not addressed by the parties' respective experts, lacks any requisite evidentiary support. Plaintiff's counsel conceded that its expert cannot provide opinions on infringement by equivalents. Instead, Plaintiff intends to present the jury with the expert's ***literal*** infringement analysis, and ask the jury to apply the doctrine of equivalents test on its own. That is not a doctrine of equivalents case. It is a request to try to the jury a theory for which no admissible evidence exists. The doctrine of equivalents requires particularized expert testimony directed to the limitation at issue, establishing that differences between the accused step and the claimed step are insubstantial. It is undisputed that such testimony will not be offered at trial. A claim with no admissible evidentiary support does not go to the jury.

At bottom, Plaintiff's new theory of infringement by equivalents is an improper, eleventh-hour attempt to salvage an infringement case that this Court already rejected. At summary judgment, Defendants argued that the '357 Patent was not infringed because their products do not perform the step of "discarding … data" as required by the claims. The Court agreed. ECF 180 at 25–26. It was only after that adverse ruling that Plaintiff first alleged infringement by equivalents. Allowing Plaintiff to add a surprise infringement theory to the pretrial order, after Defendants successfully received summary judgment with respect to all disclosed theories of infringement with respect to the "discarding" limitation, will plainly prejudice Defendants, who did not have the opportunity to develop a defense to such theory during discovery. The Court should strike the '357 Patent doctrine of equivalents theory from the pretrial order and clarify that it will not be tried.

## II. BACKGROUND

Patent infringement is principally determined by examining whether the accused subject matter fails withing the scope of the claims as literally written. *NexStep, Inc. v. Comcast Cable Communications, LLC*, 119 F.4th 1355, 1370 (Fed. Cir. 2024) (citing *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1330 (Fed. Cir. 2019)). However, the doctrine of equivalents "provides a limited exception to the principle that claim meaning defines the scope of the exclusivity right in our patent system." *Id*. (citing *VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1341 (Fed. Cir. 2023). Typically, proving infringement under the doctrine of equivalents is accomplished in one of two ways. The first approach is referred to as the "function-way-result" test, and asks whether the accused product performs substantially the same function, in substantially the same way, to obtain the same result. *NexStep*, 119 F.4th at 1370. The other approach asks whether differences between the claimed invention and the accused device or process are "insubstantial." *Id*. A finding of infringement under the doctrine of equivalents is "exceptional." *Id*. (citing *Honeywell*

*International, Inc. v. Hamilton Sundstrand Corp.*, 523 F. 3d 1304, 1313 (Fed. Cir. 2008); *see also Eli Lilly*, 933 F.3d at 1330 (describing doctrine of equivalents as "the exception … not the rule").

As detailed below, Plaintiff never articulated a theory of infringement for any limitation of the claims of the '357 Patent under the exacting evidentiary standards of the doctrine of equivalents; not in its infringement contentions or interrogatory responses, not in its expert reports, and not in opposition to Defendants' successful motion for summary judgment of no infringement of the '357 Patent. Only now, after the Court granted summary judgment against it, has Plaintiff attempted to advance a doctrine of equivalents theory in the pretrial order to save its failed case on the '357 Patent. It is far too late in the day to disclose brand new infringement theories.

**A. Plaintiff's Infringement Allegations and the '357 Patent**

Plaintiff's operative Second Amended Complaint ("SAC," ECF 106), filed August 24, 2023, asserts infringement of three patents: U.S. Patent Nos. 7,768,656 (the "'656 Patent"), 8,488,129 (the "'129 Patent"), and 10,962,357 (the "'357 Patent") (collectively, the "Asserted Patents"). With respect to the '357 Patent, the SAC alleges that Defendants "have infringed and continue to infringe at least claim 11 of the '357 Patent by making, using, offering to sell, selling, and/or importing into the United States the Accused Products that practice the claimed inventions in the '357 Patent, either literally or under the doctrine of equivalents." SAC ¶ 113. Beyond this boilerplate statement, which is identical in structure to the corresponding allegations for the '656 and '129 Patents (*see* SAC ¶¶ 87, 100), Plaintiff never developed, disclosed, or pursued a doctrine of equivalents theory for the '357 Patent until after summary judgment was granted.

**B. Plaintiff's Infringement Contentions Disclose No Doctrine of Equivalents Theory**

Pursuant to Local Patent Rule 6, Plaintiff served infringement contentions identifying its infringement theories for the Asserted Patents on September 22, 2023. Ex. 1 (Infringement

Contentions).[1] With respect to each limitation of each Asserted Patent, including the '357 Patent, Plaintiff's contentions alleged literal infringement and failed to include any alternative infringement theory under the doctrine of equivalents. The cover pleading accompanying Plaintiff's infringement contentions expressly stated: "Artec ***currently asserts literal infringement*** to establish the presence of each claim limitation," and indicated Plaintiff merely reserved the right to later assert infringement under the doctrine of equivalents. Ex. 1 at 4 (emphasis added). Thereafter, throughout fact and expert discovery, Plaintiff only asserted literal infringement, and failed to ever disclose a theory of infringement under the doctrine of equivalents for any of the Asserted Patents, either through supplementing its infringement contentions or in response to Defendants' interrogatory requests seeking the basis for Plaintiff's infringement theories.

Consistent with these general allegations, Plaintiff's contentions contained no identification of which claim elements Plaintiff contended were met by equivalents rather than literally, no limitation-by-limitation equivalents analysis, and no explanation of how any accused product feature performed substantially the same function, in substantially the same way, to achieve substantially the same result as any claim limitation. Moreover, with respect to the "discarding" step of the '357 Patent claims on which the Court granted summary judgment of no infringement, Plaintiff's infringement contentions do not assert that such step can be satisfied under the doctrine of equivalents when no "discarding" takes place, either through insubstantial differences or the function-way-result test for proving infringement under the doctrine of equivalents.

---

[1] Exhibits 1-7 are attached to the accompanying Declaration of Charles Wizenfeld.

**C. Plaintiff's Expert Report Is Expressly Limited to Literal Infringement**

On April 7, 2025, Plaintiff served the Expert Report of Iman Sadeghi, Ph.D. addressing infringement of the Asserted Patents. Ex. 3 (Sadeghi Report Excerpts). The report addresses the '357 Patent on a literal infringement basis only. The report does not contain any function-way-result analysis for any element of any asserted claim of the '357 Patent, does not identify any claim elements Plaintiff contends are met by equivalents, and does not offer any opinion that differences between the accused products and the '357 Patent claims are insubstantial.

Critically, Dr. Sadeghi's report acknowledges the opinions disclosed therein are limited to literal infringement and not infringement under the doctrine of equivalents. In particular, the report states: "The opinions expressed herein state that the Accused Products literally meet each element of the Asserted Claims. I reserve the right to opine that the Accused Products also meet each of the claim limitations under the doctrine of equivalents." Ex. 3, ¶351. This language thus confirms that the report's opinions are limited to literal infringement and that Dr. Sadeghi recognized that doctrine of equivalents opinions are not disclosed.

On June 6, 2025 the parties certified the close of discovery (ECF 143) without Plaintiff ever disclosing a theory of infringement under the doctrine of equivalents in its contentions or interrogatory responses, and without Dr. Sadeghi ever disclosing any opinions concerning infringement under the doctrine of equivalents.

**D. Plaintiff Failed to Raise Doctrine of Equivalents During Summary Judgment**

Upon the close of fact discovery, Defendants moved for summary of judgment of no infringement. Defendants explained that Plaintiff had adduced no evidence that the method step of "discarding …" is performed in the ordinary use of the products at issue, and that Defendants had adduced evidence to the contrary. ECF 155 at 32–33. In response, Plaintiff argued that the ***capability*** of the accused products to discard information was sufficient to establish infringement.

ECF 163 at 38–39. Notably, Defendant's motion for summary judgment of no infringement was not limited to ***literal*** infringement. The parties' respective briefing did not present any doctrine of equivalents arguments with respect to the "discarding" limitation, simply because Plaintiffs had never disclosed a doctrine of equivalents theory with respect to this limitation. Indeed, Plaintiff did not even raise the doctrine of equivalents in opposition to Defendants' motion for summary judgment of no infringement.

On April 19, 2026, the Court issued its Memorandum and Order on the parties' summary judgment and Daubert motions. ECF 180. With respect to Defendants' motions, the Court granted summary judgment of no literal infringement of the '357 Patent. ECF No. 180 at 26, 35. In a footnote, the Court observed that "neither party addresses the doctrine of equivalents in their summary judgment papers," and noted that Plaintiff's complaint alleged infringement "literally or under the doctrine of equivalents." *Id*. at 7 n.6. The Court's order directed the parties to submit a joint letter indicating the number of trial days needed, including "to the extent Plaintiff asserts infringement under the doctrine of equivalents, the '357 Patent." *Id*. at 35. Shortly after the Court issued its summary judgment opinion, Defendants' counsel expressly asked Plaintiff's counsel to identify any "theories of infringement with respect to the '3[57] Patent that have been disclosed and were not been [sic] addressed by the district court," and Plaintiff's counsel could not do so. Ex. 4 (April 27, 2026 DeVincenzo Email).

Nevertheless, in connection with preparation of the pretrial order, Plaintiff asserted that it was not precluded from raising a doctrine of equivalents theory for the '357 Patent because "[t]he Court granted summary judgment of no *literal* infringement of the '357 Patent and expressly left the doctrine-of-equivalents theory for trial (ECF No. 180 at 26, 35 & n.6)." Ex. 5 (Artec's June 23, 2026 Initial Contributions to the Pretrial Order) at 3 (emphasis in original); *see also* Ex. 6 (Artec's

July 20, 2026 Draft of the Pretrial Order) at 4 (stating the Court's summary judgment order "expressly preserved Artec's doctrine-of-equivalents theory of infringement of the '357 Patent for trial"). On June 30, 2026, Plaintiff's counsel sent an email to Defendants' counsel which, for the first time, purported to articulate a theory for infringement of the '357 Patent under the doctrine of equivalents. Ex. 7 (June 30, 2026 Bridges Email).

**A. The July 1, 2026 Meet and Confer**

In connection with preparation of the Joint Pretrial Order, on July 1, 2026, counsel for the parties conferred by telephone regarding, among other issues, Plaintiff's attempt to include a previously undisclosed doctrine of equivalents theory for the '357 Patent. During that call, Plaintiff's counsel conceded that its expert Dr. Sadeghi will not (and cannot) offer testimony at trial that any differences between the Accused Products and the asserted claims of the '357 Patent are insubstantial, or as to the function-way-result test for proving infringement under the doctrine of equivalents, because no such opinion was disclosed in his expert report. Ex. 2 (July 1, 2026 Wizenfeld Email). Instead, Plaintiff's counsel stated that Plaintiff intends to present Dr. Sadeghi's testimony to the jury regarding how the accused software operates, as set forth in the literal infringement analysis in his report, and then ask the jury to determine on its own whether that testimony satisfies the doctrine of equivalents' insubstantial differences test. *Id.* Plaintiff's counsel further confirmed that Plaintiff's infringement contentions did not contain a theory of how any limitation of the '357 Patent is satisfied through either insubstantial differences or the function-way-result test for the doctrine of equivalents. *Id.*

**E. The Joint Pretrial Order**

Plaintiff included in its contribution to the Joint Pretrial Order the assertion that "the Accused Products infringe claims 11–15 and 17 of U.S. Patent No. 10,962,357 under the doctrine of equivalents, in that any element not literally present is satisfied by an equivalent that performs

substantially the same function in substantially the same way to achieve substantially the same result, with only insubstantial differences." Ex. 5 (Artec's June 23, 2026 Initial Contributions to the Pretrial Order) at 3. Defendants timely objected to this assertion in their response to Plaintiff's initial pretrial submission and at the July 1, 2026 meet and confer. Plaintiff declined to withdraw the theory. The Joint Pretrial Order was filed with the Court on August 5, 2026. ECF 190. Defendants now move to strike the '357 Patent doctrine of equivalents theory from the pretrial order and seek confirmation from the Court that the '357 Patent is no longer at issue in this case.

## III. ARGUMENT

### A. The Court Has Authority Under Rule 16 to Strike an Improperly Included Theory from the Pretrial Order

Federal Rule of Civil Procedure 16(d) provides that a pretrial order "controls the course of the action unless the court modifies it." Once entered, a final pretrial order may be modified only to prevent manifest injustice. Fed. R. Civ. P. 16(e). Consistent with Rule 16's purpose of defining the issues for trial, the final pretrial order supersedes the pleadings and controls the subsequent course of action. *Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457, 474 (2007). Accordingly, courts routinely refuse to permit parties to inject new claims and defenses into a pretrial order for the first time after the close of discovery. *Missigman v. USI Northeast, Inc.*, 131 F.Supp.2d 495, 517–18 (S.D.N.Y. 2001); *see also Strauss v. Credit Lyonnais, S.A.*, 379 F.Supp.3d 148, 162 (E.D.N.Y. 2019) ("[T]he Court normally does not expect to see claims or defenses not contained in the pleadings appearing for the first time in the pretrial order."); *Malarkey v. Texaco, Inc.*, No. 81 Civ. 5224, 1990 WL 241588, at *4 (S.D.N.Y. Dec. 28, 1990) (holding that new claims proposed by plaintiff added in the Joint Pretrial Order should have been asserted from the outset, particularly where they did not become apparent only after seeing defendant's files in discovery); *Shafarman v. Ryder Truck Rental, Inc.*, No. 83 Civ. 3000, 1984 WL 904, at *2–3 (S.D.N.Y. Sept. 24, 1984)

(precluding a claim for contractual indemnification raised for the first time in the joint pretrial order on the grounds that prejudice would result); *Sound Video Unlimited, Inc. v. Video Shack Inc.*, 700 F.Supp. 127, 150 (S.D.N.Y. 1988) (disallowing the inclusion of additional statutes of fraud theories raised by defendant in the Pretrial Order that were not raised in the answer).

Where a theory included in the pretrial order cannot be supported by admissible evidence at trial, striking it promotes the efficient use of judicial resources and prevents prejudice to the opposing party from having to prepare to defend a theory that is legally insufficient. *See Wilson v. Muckala*, 303 F.3d 1207, 1215–16 (10th Cir. 2002) (allowing new claims or defenses for the first time in pretrial order "deprives one's adversary of fair notice, possibly discovery, and the opportunity for motion practice, and is subject to abuse by those who employ a sporting theory of justice. The laudable purpose of Fed.R.Civ.P. 16 is to avoid surprise, not foment it.").

Here, there is no dispute that Plaintiff failed to disclose any specific theory of infringement of the '357 Patent under the doctrine of equivalents during fact or expert discovery. As detailed above, Plaintiff's September 22, 2023 Infringement Contentions included no doctrine of equivalents theory for the '357 Patent—expressly stating Plaintiff was "currently assert[ing] literal infringement"—and Plaintiff never supplemented its contentions to articulate a doctrine of equivalents theory. Ex. 1 at 4; Ex. 2 (July 1, 2026 Wizenfeld Email) (indicating counsel's recognition that Plaintiff's contentions did not articulate a doctrine of equivalents theory). Nor can it be disputed that Plaintiff's expert offered no opinions on infringement of the '357 Patent under the doctrine of equivalents. Ex. 3, ¶351 (stating "[t]he opinions expressed herein state that the Accused Products literally meet each element of the Asserted Claims" and merely purported to "reserve the right to opine" on doctrine of equivalents in the future); Ex. 2 (July 1, 2026 Wizenfeld Email) (memorializing Plaintiff's counsel's recognition that Plaintiff's expert report did

not articulate a doctrine of equivalents theory). There also is no dispute that when faced with Defendants' motion for summary judgment of no infringement of the '357 Patent, Plaintiff offered no opposition based on a theory of infringement under the doctrine of equivalents. *See* ECF 180 at 7 n.6.

In these circumstances, courts do not permit a patentee's belated attempt to disclose and try to the jury a doctrine of equivalents theory. *See Speedfit LLC v. Chapco Inc.*, 2:15-CV-1323, 2020 WL 758824, at *2 (E.D.N.Y. Feb. 14, 2020) (denying motion for reconsideration of order finding that plaintiffs failed to preserve doctrine of equivalents argument where plaintiffs "admit[ed] that they failed to include a theory of infringement under the doctrine of equivalents in their Infringement Contentions," and in case "which has been ongoing for almost five years, Plaintiffs have not once put forth a theory under the doctrine of equivalents."); *Droplets, Inc. v. E*TRADE Fin. Corp.*, No. 12-CV-2326 (CM), 2015 WL 1062670, at *3 (S.D.N.Y. Mar. 9, 2015) ("While Droplets asserts an alternative theory of infringement by equivalents in its February 23, 2015 letter to the Court, it did not assert any such theory in the revised infringement contentions at issue in this stipulated proceeding … As far as I am concerned, Droplets agreed that the Court could resolve the issue of infringement without considering infringement by equivalents, and it is bound by that stipulation. The Federal Circuit has recently held that infringement by equivalents is waived if not included in infringement contentions."); *Realtime Data, LLC v. Morgan Stanley*, No. 11-CV-6696 (KBF), 2012 WL 3158196, at *3 (S.D.N.Y. Aug. 2, 2012) (holding that plaintiff "failed to preserve infringement claims under the doctrine of equivalents" where the initial infringement contentions contained only a placeholder for the theory and the supplemental infringement contentions did not mention the theory at all), *aff'd*, 554 F. App'x 923 (Fed. Cir. 2014); *Paone v. Microsoft Corp.*, 881 F.Supp.2d 386, 418 (E.D.N.Y. 2012) (declining to consider

"surprise infringement theory" under the doctrine of equivalents first offered by Plaintiff in opposition to summary judgment motion, because Plaintiff's expert never offered such a doctrine of equivalents theory in any of his expert reports, and finding that "the Plaintiff may not be permitted at this late stage of the litigation to assert a new theory of liability").

Plaintiff's only response for its failure to disclose any doctrine of equivalents theory has been to suggest, paradoxically, that the Court's observation of Plaintiff's failure to address equivalents in response to Defendants' motion for summary judgment somehow granted Plaintiff the right to proceed with a new, undisclosed theory of infringement under the doctrine of equivalents at trial. Ex. 6 (Artec's July 20, 2026 Draft of the Pretrial Order) at 4 (stating the Court's summary judgment order "expressly preserved Artec's doctrine-of-equivalents theory of infringement of the '357 Patent for trial"). Plaintiff's position is baseless, and does not excuse its failure to ever disclose a theory of infringement under the doctrine of equivalents.[2]

Accordingly, the Court should exercise its authority to strike any such previously undisclosed claim of infringement of the '357 Patent under the doctrine of equivalents from the pretrial order and preclude Plaintiff from raising it at trial.

[2] On its face, the Court's order did not "expressly preserve" a doctrine of equivalents theory for trial. Instead, the Court correctly observed that neither party had addressed the doctrine of equivalents in the summary judgment papers. ECF No. 180 at 7 n.6. Yet, Plaintiff moved for summary judgment of "no infringement" without distinguishing literal infringement versus the doctrine of equivalents, simply because Plaintiff had failed to disclose any such theory of infringement either during discovery or in response to Defendants' motion. Plaintiff's suggestion that the Court's observation preserved an undisclosed theory of infringement with respect to the "discarding" limitation is inaccurate and misleading.

### B. Plaintiff Cannot Prove Infringement Under the Doctrine of Equivalents Without Particularized Expert Testimony, and None Exists

A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and an accused product or method was "insubstantial" or that the accused product or method "performs the substantially same function in substantially the same way with substantially the same result" as each claim limitation of the patented product or method. *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007). To carry its burden, a patentee must present "particularized testimony and linking argument" establishing equivalents on a "limitation-by-limitation" basis. *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996). The Federal Circuit has consistently held that generalized testimony unrelated to particular limitations cannot support a doctrine of equivalents finding. *Id*. In patent cases of any technical complexity, this particularized testimony must come from an expert witness, as the jury has no independent basis to evaluate whether differences between a complex software element and a claim limitation are or are not insubstantial. *AquaTex*, 479 F.3d at 1329 ("[W]hen the patent holder relies on the doctrine of equivalents, as opposed to literal infringement, the difficulties and complexities of the doctrine require that evidence be presented to the jury or other fact-finder through the particularized testimony of a person of ordinary skill in the art, typically a qualified expert, who (on a limitation-by-limitation basis) describes the claim limitations and establishes that those skilled in the art would recognize the equivalents.").

Here, consistent with Plaintiff's infringement contentions and interrogatory responses, Plaintiff's expert only addressed literal infringement and offered no opinions with respect to the "discarding" limitation under the doctrine of equivalents. Dr. Sadeghi's report states plainly that "[t]he opinions expressed herein state that the Accused Products ***literally*** meet each element of the

Asserted Claims." Ex. 3, ¶351 (emphasis added). At the parties' July 1, 2026 meet and confer, Plaintiff's counsel confirmed both that Plaintiff did not disclose a theory of infringement under doctrine of equivalents and that its expert did not offer opinions directed to any such theory. Ex. 2 (July 1, 2026 Wizenfeld Email). Notably, the report offers no function-way-result analysis, identifies no step performed by any user that is equivalent to the "discarding" step, and offers no opinions regarding any differences between any step actually performed by a user of the accused products in its normal operation and the "discarding" step.

During the parties' July 1, 2026 meet and confer in connection with this motion, Plaintiff's counsel confirmed that Dr. Sadeghi will not, and cannot, testify at trial that any differences between the accused products and the '357 Patent claims are insubstantial or satisfy the function, way, result test—the precise testimony required to support a doctrine of equivalents verdict—as such opinions were not disclosed in his expert report. Ex. 2 (July 1, 2026 Wizenfeld Email). Plaintiff should not be permitted to proceed with a theory under the doctrine of equivalents for which it has no expert support.

Nor should Plaintiff be permitted to proceed with its counsel's stated plan of presenting the jury with the expert's ***literal*** infringement analysis, and asking the jury itself to apply the doctrine of equivalents test without expert foundation. That is legally insufficient and does not constitute a triable doctrine of equivalents case. *See Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1382–83 (Fed. Cir. 2009) ("'[E]vidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement' … We fail to see how [expert's] statements relating to literal infringement of Amgen's process claims under § 271(g) are particularized testimony of equivalents of the therapeutic efficacy limitation in Amgen's pharmaceutical composition claim, and Amgen has not pointed to any argument at trial linking the two."); *Texas*

*Instruments*, 90 F.3d at 1567 (affirming grant of JMOL of no infringement under the doctrine of equivalents where, *inter alia*, "[t]he overwhelming majority of [expert's] testimony…was solicited for purposes of establishing literal infringement under TI's improper interpretation of the term "conductor"; ***it did not purport to and therefore was insufficient to establish infringement under the doctrine of equivalents***.") (emphasis added); *see also NexStep*, 119 F.4th at 1370 ("By finding no literal infringement, the jury rejected NexStep's position that 'several button presses' are the same as a single action, and instead necessarily concluded that several button presses by a user are multiple actions. For NexStep's back-up infringement theory under the doctrine of equivalents, then, NexStep had to pivot and explain, in the alternative, *why* those several button presses—if found to entail multiple actions—nevertheless perform substantially the same function in substantially the same way to obtain the same result as the claimed 'single action.' But NexStep never provided that why.").

Accordingly, even if Plaintiff had not abandoned any doctrine of equivalents theory by failing to disclose it during the discovery period, it should not be permitted to proceed with a doctrine of equivalents theory that is legally insufficient.

**C. Allowing a Brand New Theory to Proceed Would Prejudice Defendants and Waste the Court's and the Jury's Resources**

Permitting Plaintiff to try a previously undisclosed doctrine of equivalents theory for the '357 Patent would cause Defendants substantial and unfair prejudice. Defendants tailored their fact and expert discovery and summary judgment strategy to the theories Plaintiff actually disclosed, and were ultimately granted summary judgment of no infringement on the only theory Plaintiff ever raised. Had Plaintiff timely disclosed a doctrine of equivalents theory with the required particularized analysis, Defendants would have had the opportunity to conduct discovery

and move for summary judgment on the merits of that theory. None of those steps could have been taken because the theory was never disclosed.

Moreover, allowing this theory to proceed would waste the Court's and the jury's resources. Plaintiff has admitted its expert cannot testify as to insubstantial differences or the function-way-result test, and intends to ask the jury to apply the doctrine of equivalents test without such expert foundation. That presentation would be legally insufficient, and it would not survive a Rule 50(a) motion at the close of Plaintiff's case. Trying the issue serves no purpose other than consuming trial time and creating jury confusion around a legally defective theory. Striking the theory now serves the interests of efficiency, fairness, and judicial economy.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court strike Plaintiff's doctrine of equivalents theory as to U.S. Patent No. 10,962,357 from the Joint Pretrial Order and enter an order clarifying that no doctrine of equivalents theory, evidence, or argument relating to the '357 Patent will be permitted at trial.

Defendants further request that the Court hear and resolve this motion at or in connection with the pretrial conference currently scheduled for September 24, 2026.

Dated: August 6, 2026

*/s/ Charles Wizenfeld*
Michael DeVincenzo
Charles Wizenfeld
Andrea Pacelli
KING & WOOD LLP
600 Fifth Avenue, 27th Floor
New York, New York 10020
(212) 319-4755
michael.devincenzo@us.kingandwood.com
charles.wizenfeld@us.kingandwood.com
andrea.pacelli@us.kingandwood.com

*Counsel for Defendants Shenzhen Creality 3D Technology Co., Ltd. and Shenzhen Jimuyida Technology Co., Ltd.*