**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

ARTEC EUROPE S.À R.L.,

Plaintiff,

v.

SHENZHEN CREALITY 3D TECHNOLOGY CO., LTD., and SHENZHEN JIMUYIDA TECHNOLOGY CO., LTD.,

Defendants.

Case No. 1:22-cv-01676-OEM-CHK

Jury Trial Demanded

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S DOCTRINE OF EQUIVALENTS THEORY AS TO U.S. PATENT NO. 10,962,357 FROM THE JOINT PRETRIAL ORDER**

# TABLE OF CONTENTS


I. Introduction ..... 1

II. A Generic Reservation of DOE Does not Disclose Artec's Present Infringement Theory 2

III. Artec's Own Opposition Confirms That Its Present Theory Arose After Summary Judgment ..... 3

IV. The Court's Summary Judgment Order Did Not Authorize Artec To Assert An Undisclosed DOE Theory ..... 6

V. This Motion Concerns Disclosure And The Permissible Scope Of Trial, Not The Sufficiency Of Artec's Evidence Under Rules 50 Or 56 ..... 7

VI. Artec's Late Disclosure Is Neither Justified Nor Harmless ..... 8

VII. Artec's Authorities Do Not Authorize A Party To Create A Limitation-Specific DOE Theory After Discovery ..... 9

VIII. Conclusion ..... 10

## I. Introduction

Artec's opposition conflates two fundamentally different things—preserving the right to rely on the doctrine of equivalents ("DOE") and timely disclosing the particular infringement theory Artec intends to pursue under that doctrine. The relevant question at the center of Defendants' motion to strike is not whether Artec ever mentioned the DOE doctrine. It did. The central issue is whether Artec, before discovery closed, disclosed how the accused products satisfy by equivalence the "discarding" limitation that this Court subsequently held Defendants do not satisfy literally. Artec's identifies no such disclosure.

Instead, Artec points to three things: boilerplate DOE language in its pleading, a general reservation in its infringement contentions, and paragraphs of Dr. Sadeghi's report reciting general DOE principles. None disclose any theory concerning how the accused products supposedly constitutes the equivalent of "discarding," what difference between that feature and the claimed limitation is supposedly insubstantial, or how the accused functionality performs substantially the same function, in substantially the same way, to achieve substantially the same result.

Indeed, Artec's opposition highlights the problem. Artec acknowledges that the Court's summary judgment ruling caused it to "adjust its theory," and its own chronology identifies its June 2026 pretrial submissions, after fact discovery, expert discovery, and summary judgment, as the point at which its present theory emerged. Artec Opp'n. at 13. Artec cannot argue that the present theory was disclosed all along while simultaneously defending its post-summary-judgment articulation on the ground that the Court's ruling permitted it to "adjust" its theory.

The Court's summary judgment decision does not resolve this issue. The Court did not adjudicate DOE because the parties had not presented that issue for decision. Its reference to

U.S. Patent 10,962,357 patent (the "'357 patent") "to the extent Plaintiff asserts infringement under the doctrine of equivalents" left DOE unresolved; it did not determine that Artec had timely disclosed a limitation-specific DOE theory or authorize Artec to formulate one after discovery closed.

This motion therefore does not seek reconsideration of summary judgment or an advisory determination under Rule 50. It presents a conventional pretrial question: whether a party can assert a theory that was never disclosed during discovery and add it to the case through the Joint Pretrial Order. It may not. Artec's newly articulated DOE theory should be stricken.

## II. A Generic Reservation of DOE Does not Disclose Artec's Present Infringement Theory

Artec devotes substantial attention to establishing that DOE was mentioned during the litigation. Artec Opp'n. at 4-5, 12-13. That proposition is beside the point. Defendants do not dispute that Artec's complaint alleged infringement "literally or under the doctrine of equivalents." Nor do Defendants dispute that Artec included a generic DOE reservation in its infringement contentions. Artec relies heavily on those references in its opposition. But none of these reference disclosed any theory of how any particular limitation of the '357 patent allegedly is satisfied under the DOE.

That distinction matters. To defend against a DOE theory directed to the "discarding" limitation, Defendants needed to know, among other things, what accused functionality Artec contended was equivalent to "discarding" and the basis for that contention. Artec disclosed no limitation-specific insubstantial-differences analysis and no limitation-specific function-way-result analysis. *See* Ex. 6 to Defendants' Motion for Summary Judgment, Dr. Sadeghi's Report at ¶¶ 319-323, ECF 155-6 (redacted); ECF 161-6 (under seal). Artec's contrary position would effectively transform a generic DOE reservation into a blank check. A patentee could reserve

DOE in a sentence, litigate the case through fact discovery and expert discovery on literal infringement, pursue literal infringement through summary judgment, and, if literal infringement fails, reformulate the literal infringement theory into whatever DOE theory would avoid that ruling. That is not notice of an infringement theory. It is reservation of the ability to develop one later. That is improper. *NexStep, Inc. v. Comcast Cable Commc'ns, LLC* 119 F.4th 1355, 1373 (Fed. Cir. 2024), *cert. denied*, 145 S. Ct. 2794, 222 L. Ed. 2d 1087 (2025) (holding that a DOE theory must be articulated with particularity and tied to specific accused elements rather than left as a generalized fallback that can later be adapted to whichever literal-infringement theory proves unsuccessful).

Artec also relies heavily on its characterization of this Court's infringement-contention requirements. Artec Opp'n. at 3, 12. But Defendants' motion does not depend on the proposition that Local Patent Rule 6 expressly mandates a particular DOE claim-chart format. The problem is broader: nowhere in the disclosure record, contentions, discovery responses, expert reports, or depositions did Artec disclose the limitation-specific DOE theory it now proposes to present to the jury. A reservation of a doctrine is not disclosure of an infringement theory.

## III. Artec's Own Opposition Confirms That Its Present Theory Arose After Summary Judgment

Artec's chronology confirms rather than refutes Defendants' position. Artec argues that the Court's summary judgment ruling was a critical "paradigmatic occasion" on which a patentee may "adjust its theory." Artec Opp'n. at 13.[1] But that concession is difficult to reconcile with

[1] Artec's reliance on *O2 Micro* is misplaced. Far from permitting a patentee to unveil a new infringement theory on the eve of trial, *O2 Micro* affirmed the denial of leave to amend infringement contentions and the resulting summary judgment of non-infringement where the patentee failed to act diligently. The Federal Circuit emphasized that "[t]he burden is on the movant to establish diligence," and that a lack of diligence alone is sufficient to deny amendment, regardless of prejudice. *Id*. at 1366-67. Artec cannot satisfy that burden here.

Artec's insistence elsewhere that the theory it now seeks to try was consistently disclosed throughout the case. Either Artec disclosed this particular DOE theory before summary judgment or it adjusted its theory afterward. It cannot be both, and on this point, Artec's chronology is telling. Artec identifies the Court's April 19 ruling, followed by Artec's June 23 contribution to the proposed pretrial order and its June 30 correspondence articulating its DOE position. *Id* at 5, 13. Those are pretrial submissions, not infringement contentions, interrogatory responses, expert disclosures, or expert testimony developed during discovery.

That sequence makes clear that Artec is now positing a new theory of infringement. Until summary judgment, Artec's theory was that the accused products literally performed the claimed "discarding." Once the Court rejected that position, Artec scrambled to find a different theory to keep the '357 patent in the case. It then turned to DOE. But DOE is not a mechanism for repairing an unsuccessful literal-infringement case after discovery has closed.

If Artec believed the Court's ruling supplied good cause to alter its infringement theory, the proper course was to seek leave promptly to amend its infringement contentions and demonstrate diligence. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366-67 (Fed. Cir. 2006) (holding that amendment of infringement contentions requires a showing of good cause, that diligence is the primary consideration, and that a party must promptly seek leave after learning the basis for a revised infringement theory). It did not do so. It instead placed the changed theory into its pretrial submissions after the period for testing that theory through discovery and expert practice had passed. That is wrong.

Artec's reliance on Dr. Sadeghi's report illustrates the disclosure problem particularly clearly. Artec identifies paragraphs 39–42 of the report as setting forth DOE principles and paragraphs 300–323 as discussing the accused functionality. But Artec does not identify where

Dr. Sadeghi connects those two discussions. General statements explaining the doctrine of equivalents are not expert opinions applying DOE to a particular claim limitation. And Dr. Sadeghi's discussion of the purported literal infringement of the accused products (the very argument that Artec lost through summary judgment), does not set out any theories of DOE infringement.

Indeed, Dr. Sadeghi does not identify the accused feature that is supposedly equivalent to "discarding," does not identify the difference between that feature and literal "discarding," does not explain why that difference is insubstantial, " or identify the function performed by the claimed "discarding" limitation, the corresponding function of the accused feature, and explain why the two operate in substantially the same way to achieve substantially the same result. Artec's opposition identifies no such necessary disclosure.

These omission are particularly important because the Court rejected Artec's literal-infringement position as to the "discarding" limitation, the sole focus of Dr. Sadeghi's paragraphs 319-323. *See* Ex. 6 to Defendants' Motion for Summary Judgment, Dr. Sadeghi's Report at ¶¶ 319-323, ECF 155-6 (redacted); ECF 161-6 (under seal). Artec's citation to paragraphs 300 through 323 of Dr. Sadeghi's report asserts that these paragraphs "analyze the accused overlap and redundancy logic which are routines by which the accused software declines to retain second-frame data for surface portions already sufficiently covered and identified the parameters and functions that govern it." *See, e.g.*, Artec Opp'n. at 17 (emphasis added). This citation and characterization are incorrect. Paragraphs 319 through 323 of Dr. Sadeghi's are the ones directed to the "discarding" limitation at issue (not paragraphs 300 through 323), and paragraphs 319 through 323 make no mention of Artec's DOE arguments or how the software allegedly "declines to retain" data, as now asserted by Artec in its Opposition. Such attorney

argument serves only to highlight Artec's improper attempts to modify the record so that it can "adjust" its infringement theories. These efforts should be dismissed.

Artec's counsel's declaration does not cure the problem. Counsel states that Dr. Sadeghi may testify within the confines of his existing report and deposition testimony. Artec Opp'n at 18; *see also* Bridges Dec. at ¶ 4. Defendants agree. The question is precisely what those confines contain. The report contains no limitation-specific DOE opinion concerning "discarding" and as such, Artec cannot offer up that theory in the pretrial order.

## IV. The Court's Summary Judgment Order Did Not Authorize Artec To Assert An Undisclosed DOE Theory

Artec repeatedly invokes the Court's summary judgment order wherein the Court granted summary judgment as to no literal infringement and referred to the '357 patent "to the extent Plaintiff asserts infringement under the doctrine of equivalents." Artec Opp'n. at 1, 6, 7. Defendants do not dispute what the Court held. The Court decided literal infringement. It did not decide DOE because DOE had not been presented for decision. That does not answer the issue now before the Court. The summary judgment order did not determine whether Artec had disclosed a limitation-specific DOE theory during discovery; provided an expert opinion applying DOE to the "discarding" limitation; preserved that particular theory for trial; or complied with its disclosure obligations in attempting to introduce that theory after discovery. The Court's conditional phrase, "to the extent Plaintiff asserts," cannot reasonably be read as an adjudication of those issues. It merely left an issue not presented on summary judgment unresolved.

Nor are Defendants seeking reconsideration. They do not ask the Court to alter its conclusion concerning literal infringement. They ask the Court to determine the permissible scope of the theories to be presented at trial. That question became concrete only when Artec

articulated its newly minted, post-summary-judgment DOE theory in its June pretrial submissions. Artec therefore gains nothing from arguing that Defendants should have sought reconsideration before Artec had even articulated the theory Defendants now challenge.

## V. This Motion Concerns Disclosure And The Permissible Scope Of Trial, Not The Sufficiency Of Artec's Evidence Under Rules 50 Or 56

Artec attempts to characterize Defendants' motion as an untimely summary judgment motion or premature Rule 50 motion. That characterization should be rejected. The Court need not decide whether some properly disclosed DOE theory could generate sufficient evidence for a jury. The antecedent question is whether this DOE theory was properly disclosed at all.[2]

Rule 16 exists to define and narrow the issues for trial, not to permit parties to introduce new theories after discovery. The same principle underlies Defendants' separate motion concerning Artec's attempt to add an undisclosed willfulness theory through the Joint Pretrial Order. *See* Defendants' Letter to the Court regarding Motion to Strike Plaintiff's Willful Infringement Theories, ECF 194; Court's Order granting Defendants' request for briefing on the Motion to Strike Plaintiff's Willful Infringement Theories, dated August 24, 2026. The pretrial process cannot be used to expand the case to encompass theories that were never litigated during discovery.

Rule 37 provides an independent basis for the same result. Artec was required to disclose the substance of its infringement theory during discovery and failed to do so. It may not introduce that theory at trial absent substantial justification or harmlessness. *Design Strategy,*

[2] Throughout fact discovery, expert discovery, and summary-judgment briefing, Artec has proceeded on its disclosed literal infringement theories and never identified any limitation-by-limitation DOE theory for the '357 Patent, much less supplied the particularized expert analysis necessary to support one. A party is not required to move against an undisclosed theory, and Rule 37 exists precisely because litigation cannot proceed on theories first revealed after discovery has closed.

*Inc. v. Davis*, 469 F.3d 284, 297-298 (2d Cir. 2006) (a party that fails to make required disclosures under Rule 26 has the burden of showing substantial justification or harmlessness of such failure); *see also*, *O2 Micro*, 467 F.3d at 1369 (upholding exclusion of untimely infringement theory where patentee failed to disclose the theory in its expert reports and failed to show diligence in its late disclosure). Artec establishes neither substantial justification nor harmlessness, and as such, cannot pursue its new theory at trial.

**VI. Artec's Late Disclosure Is Neither Justified Nor Harmless**

Artec argues that Defendants cannot identify any discovery or litigation conduct that would have differed had its DOE theory been disclosed earlier. Artec Opp'n. at 16. The record demonstrates otherwise. Had Artec disclosed the actual theory during expert discovery Defendants could have deposed Dr. Sadeghi regarding his specific insubstantial-differences or function-way-result analysis; Dr. Gortler could have responded specifically to the asserted equivalent; Defendants could have developed technical evidence concerning the differences between the accused functionality and the claimed "discarding" step; Defendants could have developed DOE-specific defenses, including prosecution-history estoppel, the all-elements rule/vitiation, and prior-art ensnarement; and Defendants could have sought summary judgment against the actual DOE theory.

Artec's contrary argument is circular. It faults Defendants for failing to seek summary judgment on DOE while simultaneously failing to identify where it disclosed the particular DOE theory against which Defendants supposedly should have moved. Artec cannot rely on its own nondisclosure to criticize Defendants for failing to attack the undisclosed theory sooner.

Nor does the time remaining before trial cure that prejudice. Fact and expert discovery have closed, expert depositions have occurred, and summary judgment has been completed.

Curing the prejudice would require reopening substantial portions of the litigation. The fact that such reopening would be necessary demonstrates the prejudice; it does not eliminate it.

Artec's explanation for the delay fares no better. Its contention that the theory became important only after literal infringement failed is not substantial justification. *See* Artec Opp'n. at 13. DOE is, by definition, an alternative theory available where a limitation is not literally satisfied. A patentee cannot defer disclosing its alternative theory until it learns whether its preferred literal-infringement theory succeeds. *NexStep, Inc*. 119 F.4th at 1377-1378 (after a finding of no literal infringement, the Court held that the patentee's DOE theory failed because it lacked the required particularized identification of what accused elements were allegedly equivalent to the claim limitation, demonstrating that DOE cannot serve as an unspecified fallback once literal infringement is unsuccessful). And Artec's insistence that DOE is now critically important because it represents the remaining path for the '357 patent does not excuse its nondisclosure. The purported importance of the theory to Artec magnifies the need for Artec to have timely disclosed its DOE theory and the prejudice resulting from Artec's failure to do so.

## VII. Artec's Authorities Do Not Authorize A Party To Create A Limitation-Specific DOE Theory After Discovery

Artec's authorities establish propositions Defendants do not dispute: DOE is an alternative means of proving infringement rather than an independent cause of action, and a court may consider a properly preserved DOE theory even where literal infringement fails. Artec Opp'n. at 13. Neither proposition resolves this motion. The question here is not whether DOE exists as a matter of patent law. It is whether Artec timely disclosed the particular factual and expert theory by which it now proposes to establish equivalence of the "discarding" limitation.

Artec's reliance on authority concerning adjustment of infringement theories following an intervening ruling likewise does not help it. Artec Opp'n. at 13. If the Court's summary

judgment ruling created a legitimate basis to modify Artec's infringement theory, Artec was required to proceed diligently and seek whatever amendment or additional disclosure was appropriate. It could not seek that change by merely dropping it into the pretrial order.[3]

## VIII. Conclusion

After pages of opposition, Artec never answers the central question: Where, before discovery closed, did Artec disclose the particular theory by which the accused products allegedly satisfy the "discarding" limitation under the doctrine of equivalents? A reference to DOE in a complaint is not the answer. A generic reservation in infringement contentions is not the answer. A recitation of DOE law in an expert report is not the answer. And the Court's decision not to adjudicate an issue that was not presented on summary judgment is not the answer. Artec preserved a label. It did not disclose the theory it now seeks to try.

Defendants therefore respectfully request that the Court strike Artec's doctrine-of-equivalents theory concerning the '357 patent from the Joint Pretrial Order and preclude Artec from presenting that theory, evidence, or argument at trial.

[3] The caselaw cited by Artec does not support its positions. Artec's reliance on *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997) is misplaced. That decision addresses the substantive standards governing a properly preserved doctrine-of-equivalents theory at trial; it does not address pleading requirements, infringement-contention disclosures, expert-report obligations, forfeiture, or the inclusion of new theories in a pretrial order. Indeed, while reaffirming that equivalence must be proven on a limitation-by-limitation basis, *Warner-Jenkinson* presupposes that the patentee has actually disclosed and supported those element-by-element equivalence theories, which Artec never did.

Dated: August 28, 2026

/s/ Paul B. Keller
Paul B. Keller
James N. Reed
BROWNSTEIN HYATT FARBER SCHRECK, LLP
75 Rockefeller Plaza, Suite 2600B
New York, New York 10019
(212) 576-1213
pkeller@bhfs.com
jnreed@bhfs.com

Counsel for Defendants
Shenzhen Creality 3D Technology Co., Ltd. and Shenzhen Jimuyida Technology Co., Ltd.